## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Heidi Seekamp, On Behalf of Herself and All Others Similarly Situated, | : <br> : <br> : |
| Plaintiff, | Civil Action No.: _____ <br><br> **CLASS ACTION COMPLAINT** |
| v. | : <br> **Plaintiff Demands Trial by Jury** |
| Fuccillo Automotive Group, Inc. <br> Fuccillo Lincoln Mercury Hyundai, Inc., <br> Universal Automotive Services, Inc. | : <br> : <br> : |
| Defendants. | : <br> : <br> : |

Heidi Seekamp (hereafter referred to as "Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, Lemberg & Associates, LLC, brings this class action seeking damages, injunctive relief, as well as attorney's fees and costs against Defendants, and upon information and belief, and in connection therewith, alleges as follows:

## INTRODUCTION

1.     This action is based upon a violation of the Insurance Law of the State of New York, Federal Magnuson-Moss Warranty Act ("MMWA"), the federal Truth In Lending Act ("TILA"), New York General Business Law §349(a) and common law.  In the course of selling automobiles to consumers, the Defendants deliberately and illegally, for their own profit, sold an insurance policy to class members without (i) that policy being approved by the New York

Department of Insurance, (ii) being underwritten by a New York-licensed insurance carrier, and (iii) without the seller/defendants being licensed as insurance agents or brokers.

2.     The Auto Theft Security Discount Guarantee ("ATSD") is a form of "window etching," a means of permanently engraving the vehicle's identification number ("VIN"), or other decal, onto the windows of a vehicle.  It is sold as a purported "theft deterrent" because the VIN is traceable by law enforcement agencies to a specific vehicle, making it more difficult to sell off car parts etched with the VIN. [1]

3.     The ATSD consists of the permanent installation of warning decals affixed to the driver and passenger windows of the plaintiff's vehicle and an indemnity benefit payable to the plaintiff upon the theft of the vehicle that results in the vehicle being deemed a total loss or unrecoverable.

4.     The New York Insurance Department has opined that the sale of such window etching programs violates New York insurance law, unless the group insurance policy is underwritten by a New York licensed insurer.  Universal, the purported issuer of the policy sold to the Plaintiff, is not now nor has it ever been an issuer licensed to do business in New York.

5.     To avoid the appearance that ATSD is insurance, Defendants marketed the ATSD and sold it to consumers as a "warranty."  If the ATSD were a warranty, its sale to the Plaintiff and others similarly situated members of the proposed Classes violated the provisions of the MMWA and the regulations of the Federal Trade Commission ("FTC") interpreting that law.  In addition, upon information and belief, most of the sales made by the Fuccillo defendants,

---

[1]     The theft-deterrent value of etch products is questionable.  Every car sold in the United States must have its VIN permanently installed on eighteen specific locations.  49 C.F.R. § 541.5.  The VIN is then registered with the state, the consumer's insurer, and in the event of a vehicle theft, the National Crime Information center ("NCIC"), maintained by the Federal Bureau of Investigations.  Furthermore, many automobile dealerships, if requested by the consumer, will etch the windows of a vehicle with the VIN at a cost of approximately $20.00-$30.00.

including the sale to the plaintiff, were made by use of the Fuccillo defendants' standard Retail Installment Sales Contract ("RISC"). Those contracts violated TILA.

6.      The underhanded methods by which Defendants sold the ATSD to consumers constitute deceptive sales practices in violation of the N.Y. GBL § 349.

7.      Defendants knew that the sale of the ATSD was deceptive, yet Defendants conspired to sell the ATSD to consumers with the intent of profiting from their deception.

8.      The Defendants are liable whether the ATSD is insurance or a warranty.    This cause of action seeks to terminate the practices complained of herein and refund to Plaintiff and Class members all premiums and charges paid in connection with the sale of the ATSD, and all profits and benefits unlawfully obtained by Defendants from the unauthorized sale of insurance, together with treble damages under GBL §349, and all attorneys' fees and costs.

## JURISDICTION AND VENUE

9.      This action arises under the Federal Truth in Lending Act, 15 U.S.C. §1601, *et seq.*, Magnuson-Moss Act, 15 U.S.C.§2301, *et seq.*, the regulations of the Federal Trade Commission interpreting that law, 16 C.F.R. Part 700, *et seq.*,  with supplemental jurisdiction over the state law claims.  This action is brought as a class action based upon both federal and state law claims.  As to the state law claims, this Court has jurisdiction both as supplemental jurisdiction and under 28 U.S.C. §1332(d).  The ATSD was sold by Defendants for at least $295.00 per transaction and the amount in controversy exceeds  $5,000,000.00.   Upon information and belief, Fuccillo Hyundai sold at least 6,500 Hyundai vehicles in 2004.  Based on these numbers, at a minimum, there need have been only 16,950 transactions over the past 3 years to satisfy the threshold requirement of $5,000,000.00.  The  Plaintiff believes that Fuccillo

Automotive and Fuccillo Hyundai have sold over 16,950 ATSD's to consumers during the proposed class periods. Universal Automotive Services, Inc., is a New Jersey corporation with its principal place of business in that state, and consequently is a citizen of a state other than the state of citizenship of the plaintiff, New York.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District, Defendants Fuccillo Automotive and Fuccillo Hyundai conduct regular business in this District, Universal Automotive Services, Inc. transacts business in New York, and the events giving rise to this action occurred here.

## PARTIES

11.    Plaintiff Heidi Seekamp, resides in Latham, New York.

12.    Defendant, Fuccillo Automotive Group, Inc. ("Fuccillo Automotive") is a New York corporation. Upon information and belief its principal place of business is located in Adams, New York.

13.    Defendant Fuccillo Lincoln Mercury, Inc., doing business as "Fuccillo Hyundai," ("Fuccillo Hyundai"), is an automotive dealership incorporated in New York. Upon information and belief its principal place of business is in Adams, New York.

14.    Fuccillo Automotive owns and controls the operations of Fuccillo Hyundai and its other subsidiaries who, upon information and belief, also sold policies issued by Universal. Fuccillo Automotive made the corporate decision to sell the ATSD to consumers through Fuccillo Hyundai and its other subsidiaries.

15.    Universal Automotive Services, Inc. ("Universal"), a New Jersey corporation, purports to issue policies such as the ATSD, which are then illegally sold to consumers through

their agents, servants, contractors and/or employees,  Upon information and belief its principal place of business is in New Jersey.

## NATURE OF THE ACTION

16.     On or about June 12, 2007, Plaintiff Seekamp entered into a purchase and sales agreement ("PSA"), with Fuccillo Hyundai, for the purchase of a 2007 Hyundai Elantra. <u>Exhibit A.</u>  As shown on the PSA, Plaintiff was charged $295.00 for the ATSD, referred to as "Etch." As part of the transaction, Plaintiff Seekamp was required to enroll into the ATSD program. <u>Exhibit B</u>.  Plaintiff was told that all Fuccillo vehicles come with window etching and that she must purchase the program as part of the sale.

17.     The Plaintiff purchased the vehicle on credit and signed a Retail Installment Sales Contract ("RISC").

18.     Fuccillo Hyundai and Fuccillo Automotive illegally sold the ATSD, a product administered, distributed and sold by Universal to consumers.

19.     Universal is not licensed as an insurance carrier in New York.  Universal is not even qualified to do business in the State of New York.

*Violations of Law*

20.     Under New York law, the ATSD is a written insurance agreement whereby the consumer pays a one-time premium at purchase which provides that Universal will pay a $2,000.00 benefit to the consumer should the vehicle be stolen and declared a total loss.

21.     "Insurance contract" is defined by statute in N.Y. Ins. § 1101(a) (1) as an:

"...agreement or other transaction whereby one party, the "insurer", is obligated to confer benefit or pecuniary value upon another party, the "insured" or "beneficiary", dependent upon the happening of a fortuitous event in which the

insured or beneficiary has, or is expected to have at the time of such happening, a material interest which will be adversely affected by the happening of such event."

22.    The ATSD is an agreement ("Registration Form") whereby one party (Universal) agrees to indemnify another (Plaintiff) upon the occurrence of an event adversely affecting the consumer (theft of consumer's vehicle).

23.    New York law imposes licensing and registration obligations on insurance carriers, and on individuals and entities acting as insurance brokers and insurance agents.

24.    The New York Department of Insurance has consistently determined that the sale of products such as the ATSD are insurance.

25.    Upon information and belief, Universal entered into a contract with Fuccillo Automotive and Fuccillo Hyundai to sell the ATSD theft insurance policy to customers. Universal, in agreement with the dealership Defendants, conspired to affirmatively misrepresent the ATSD to consumers as a "warranty" and "not an insurance policy."  Defendants agreed to use this affirmative and deceptive misrepresentation to describe the product to avoid registering, obtaining proper licenses and providing basic rights as required by the New York State Insurance Laws and Regulations.

26.    Defendants knew that the sale of the ATSD was deceptive, yet Defendants conspired to sell the ATSD to consumers with the intent of profiting from their actions.

27.    These representations were made with the intent of inducing Plaintiff into drastically overpaying for a 3 year/$2,000.00 insurance policy and to further conceal the existence of the ATSD in order to avoid proper licensing and regulation of the product by the New York State Insurance Department.

28.     If the ATSD were a warranty, its sale to the Plaintiff violated the MMWA and the FTC's Regulations interpreting that law.

29.     The Defendants are liable whether the ATSD is insurance or a warranty.  This action seeks to terminate the practices complained of herein and refund to Plaintiff and Class members all premiums and charges paid in connection with the sale of the ATSD, all profits and benefits unlawfully obtained by Defendants from the unauthorized sale of insurance, together with treble damages, and all attorneys' fees and costs.

30.     No relationship between the payment rates and charges has been disclosed by any of the Defendants to any authority; rather the ATSD simply provides a cash payment contingent upon theft of the vehicle, with no explanation.

31.     Upon information and belief, the actual charge of "window etching" is between $20.00 and $30.00.  Therefore, the charge of $295.00 represents a mark-up at the expense of the consumer.

32.     The Defendants have unlawfully profited from charges associates with the sale of an unregulated and unlicensed product by persons not licensed as insurance companies, brokers or agents within New York State.

33.     Upon information and belief, few, if any, of consumers' claims have been paid in connection with the purchase of the ATSD.

34.     If the ATSD had been properly identified as insurance by the Defendants, any premium for the ATSD would have been required to be filed with the Insurance Department and approved by it.

35.     If the Insurance Department approved the ATSD for sale as insurance, the premium charges for the coverage provided (3 year coverage period/one-time $2,000.00 benefit) would be well below the charges of $295.00.

36.     Since Defendants illegally sold the ATSD and did not register it as insurance with the Insurance Department, they have denied Plaintiff and Class members the mandatory protections afforded other purchasers of insurance in New York while charging them a grossly inflated premium.

37.     Defendants knew that they would be unable to sell the ATSD to New York consumers if they were subject to the oversight of the Insurance Department for at least three reasons: a) none of the Defendants is licensed by the Insurance Department to sell insurance in New York; b) the ATSD is not underwritten by an insurance carrier licensed in New York; and c) the ATSD premium has not been filed or approved by the New York State Insurance Department.

38.     The conduct of the defendants also violated the federal Truth In Lending Act ("TILA"). The charge for the ATSD appears only on the dealership Defendants' purchase and sales agreement, not on the retail installment contract or the ATSD's Registration Form. In fact, the ATSD Registration Form does not even contain a blank for the charge to the consumer. The line item on the retail installment contract for "Service Contract" is intentionally filled in with "N/A" where the charge would be entered. The Registration Form for the ATSD does not disclose the affiliation with the "Service Contract" section of the retail installment contract. Along with multiple other forms, this form is submitted to the consumer for signature in order to complete the sales transaction.

<u>**PLAINTIFF'S CLASS ACTION ALLEGATIONS**</u>

39.    Plaintiff brings this as a class action under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated. The Classes are defined as:

> <u>Class A.</u> All people who purchased the ATSD from Fuccillo Hyundai since the ATSD's inception until present.
>
> <u>Class B.</u> All people who purchased the ATSD from Fuccillo Automotive or its subsidiary dealerships other than Fuccillo Hyundai, since the ATSD's inception until present.
>
> <u>Class C.</u> All people who purchased the ATSD issued by Universal in New York since the ATSD's inception until present.
>
> Excluded from the Classes are any defendants, their respective parents, employees, subsidiaries and affiliates, their alleged co-conspirators and all government entities.

40.    **Numerosity**.  The proposed Classes consist of thousands of consumers.  The membership of these Classes is so numerous that individual joinder is impractical.  Although the exact numbers and identities of Class members are unknown at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes that there are thousands of Class members.  Bringing the action on behalf of the Classes will fairly insure the adequate representation of all who may sue.

41.    **Common Questions of Law and Fact**.  This matter presents common questions of law and fact.  These common questions predominate over any individual questions.  Among the numerous questions of law and fact common to the Classes are:

> ***Insurance Law Issues***
> > a)  Whether the ATSD is an insurance policy sold illegally to the Class members;

9

b) Whether Universal was required to qualify and register with the New York State Insurance Department in order to issue the ATSD and make it available for sale;

c) Whether the ATSD policy had to be filed with and approved by the NYS Department of Insurance;

d) Whether the rate charged for the policy had to be approved by the NYS Department of Insurance;

e) Whether Fuccillo Automotive and Fuccillo Hyundai sold insurance without being licensed as insurance agents or brokers;

f) Whether Universal was or is authorized to offer the ATSD for sale to New York consumers through its agents, Fuccillo Automotive and Fuccillo Hyundai;

g) Whether the unlawful sale of the ATSD by the Defendants is a deceptive act or practice that violates the N.Y. Ins. § 2401;

h) Whether Plaintiff and the Class suffered an ascertainable loss in their purchase of the ATSD by paying for an illegally sold 3-year / $2,000.00 automobile theft insurance policy, or paying a rate that was never approved by the Insurance Department pursuant to its rate-making procedures.

### N.Y. GBL §349 Issues

a) Whether the unlawful sale of the ATSD by the Defendants is a deceptive practice violating N.Y. GBL § 349;

b)  Whether the Defendants' misrepresentation that the ATSD was "not an insurance policy" constitutes a deceptive practice prohibited by N.Y. GBL § 349.

*MMWA, 15 U.S.C. § 2301, et seq. Issues*

a)  Whether the ATSD is a warranty subject to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.,* and the FTC regulatory interpretations.

*TILA Issues*

a)  Whether the disclosures in the RISC violated the Federal Truth in Lending Act.

*Common Law Issues*

a)  Whether Defendants were unjustly enriched by retaining a portion or the entire fee charged for the ATSD;

b)  Whether the misrepresentation that the contract entered into by the defendants with the plaintiff and each Class member constituted a breach of contract;

c)  Whether the conduct of the defendants constitutes a constructive fraud as a result of which a trust should be imposed on all proceeds of the sales of the contracts.

42.     **Typicality**.  Plaintiff Seekamp's claims are typical of the Classes as required by Federal Rule of Civil Procedure 23(a)(3).  Plaintiff and all Class members sustained damages arising out of the Defendants' common course of conduct. The claim of the Plaintiff is typical of the claims of the members of the Classes, as all members sustained the same injuries and

11

sustained the same damages.  Proceeding by way of class action is the only economical and sensible manner in which to vindicate the injuries sustained by Plaintiff and members of the Classes.

43.    **Fair And Adequate Representation**    Plaintiff will fairly and adequately protect the interests of the members of the Classes, all of whom are victims of the Defendants' unfair and deceptive practices.  She has no interest antagonistic to the interests of the Class members.  Plaintiff has retained attorneys experienced in civil litigation and consumer fraud.

44.    **Predominance and Superiority**    Plaintiff and members of the Classes have suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy under Federal Rule of Civil Procedure 23(b)(3).  Absent a class action, most members of the Classes would find the cost of litigating these claims to be prohibitive, and therefore, would have no effective remedy at law.  The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the court and the litigants and promotes consistency and efficiency of adjudication.

## SUBSTANTIVE ALLEGATIONS

45.    In each Count the Plaintiff alleges all the allegations contained herein.

## COUNT I

## VIOLATION OF N.Y. GBL § 349

46.    N.Y. GBL § 349(a) deems unlawful "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state…"

47.    Defendants violated N.Y. GBL § 349(a) "willfully or knowingly."

48.    New York law provides:   "No person, firm, association, corporation or joint-stock company shall do an insurance business in this state unless authorized by a license…" N.Y. Ins. Law § 1102.

49.    Insurance agents and brokers must also be licensed.

50.    Not one Defendant is now or has ever been a licensed insurance company, broker or agent in New York, and therefore is not authorized to underwrite or engage in the business of insurance in New York.

51.    New York law provides that no policy of insurance may be issued or sold in New York unless:

   a)  It is underwritten by a duly licensed insurance carrier;

   b)  The terms of the policy and the premium are approved by the New York Department of Insurance;

   c)  No policy of insurance can be sold unless sold by a duly licensed insurance broker or agent.

52.    If the Insurance Department approved the ATSD for sale as insurance, the premium charged for the coverage provided (3 year coverage period/ one-time $2,000.00 benefit) would be well below the Defendant's charges of $295.00.

53.    Since Defendants illegally sold the ATSD as alleged, they have denied Plaintiff and members of the Class the mandatory protections afforded other purchasers of insurance in New York while charging them a grossly inflated premium for a 3 year / $2,000.00 auto-theft insurance policy.

13

54.     Defendants' sale of the ATSD was consumer-oriented and affected the public because the majority of consumers that bought the ATSD from Defendants were deceived in a material way into purchasing the ATSD, and were directly impacted as a result of its exorbitant cost.

55.     A significant public interest is contemplated, as reflected in N.Y. Ins.. § 2401, whose purpose is to prevent unfair or deceptive practices in the business of insurance.

56.     Defendants misrepresented the ATSD as a warranty, when it is, in fact, a contract of insurance.  Defendants misled Class members into believing that Universal is licensed to write insurance policies in New York.  Defendants mislead consumers into purchasing the ATSD, paying a price well in excess of the product's cost, and relying upon actual misrepresentations as to the product's worth and value, causing them actual harm.

57.     Plaintiff suffered an injury as a result of the deceptive acts.  Defendants willfully and knowingly violated the law, misrepresented the value of the ATSD, and induced Plaintiff and Class members into purchasing the product without further apprising Plaintiff of alternate methods and costs of obtaining such a product elsewhere.

58.     By failing to comply with the New York Insurance Law, the defendants violated N.Y. GBL §349(a).

## COUNT II

### CONSPIRACY TO COMMIT CONSUMER FRAUD

59.     Defendants  engaged in deceptive consumer practices by misrepresenting facts about the ATSD and by making statements that Defendants knew to be misleading.

14

60.     Universal, Fuccillo Automotive and Fuccillo Hyundai acted in concert and thus conspired and engaged in  these deceptive consumer practices:

        a)     Selling the ATSD without being licensed to do so;

        b)     Failing to submit the ATSD to the Insurance Department for approval;

        c)     Installing the "Etch Number" on all vehicles prior to the sale of the ATSD;

        d)     Failing to state the charge for the ATSD on the Registration Form;

        e)     Failing to submit the rate for the ATSD to the Insurance Department for approval;

        f)     Failing to obtain a license as insurance carriers from the Department of Insurance to sell the ATSD;

        g)     Failing to obtain a license as insurance brokers or agents from the Department of Insurance, and

        h)     As to Fuccillo Hyundai and Fuccillo Automotive, receiving a commission from Universal on sales of the ATSD.

61.     The sales practices described herein are deceptive acts requiring a refund and resulting in an ascertainable loss by Plaintiff and the Class members.

## COUNT III

### BREACH OF CONTRACT

62.     In selling the ATSD to Class members, Defendants affirmatively and deceptively misrepresented the ATSD as "not an insurance policy" but instead a "$2,000.00 Guarantee" of an anti-theft system in order to avoid the New York Insurance Department regulations.

63.     The fee Defendants charged is not for window etching, but for the $2,000.00 insurance benefit.  The sole consideration exchanged is the consumer's payment in exchange for right to coverage under the ATSD.  Payment for the ATSD tendered by the Plaintiff is therefore a one-time premium for insurance.

64.     Defendants breached the contract with the plaintiff and Class members by: (1) representing that the ATSD is an "anti-theft system" when, in fact, it is an illegal insurance policy; (2) representing that the $2,000.00 indemnity benefit provided for by the terms of the ATSD Registration Form is not a "guarantee" of the "anti-theft system" but, in fact, an indemnity benefit payable contingent on the consumer's loss of the vehicle; (3) affirmatively misrepresenting and deceptively printing on the face of the agreement that the ATSD is "not an insurance policy"; (4) failing to include the premium for the ATSD on the consumer's retail installment contracts under amounts "Paid to insurance companies" and (5) overcharging the Plaintiff and others similarly situated for an illegal insurance contract.

**COUNT IV**

**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT,**

**15 U.S.C. § 2301, *et seq.***

65.     The Magnuson Moss Warranty Act, 15 U.S.C. §2301(6)(B), defines a warranty

as:

> "Any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purpose other than resale of such product.

66.     The Magnuson-Moss Warranty Act ("the Act"), 15 U.S.C. § 2301, *et seq.,*
imposes civil liability on warrantors for failure to comply, and authorizes, "a suit for damages
and other legal and equitable relief," including attorneys' fees and class action suits.

67.     A "consumer" is defined as, "a buyer…of any consumer product," a definition in
which the Plaintiff and Class members clearly fit.  A "consumer product" is, "any tangible
personal property which is distributed in commerce and which is normally used for personal,
family or household purposes," such as the ATSD.  Defendants fall within the definitions of
"supplier," "any person engaged in the business of making a consumer product directly or
indirectly available to consumers," and "warrantors," "any supplier or other person who gives or
offers to give a written warranty."

68.     The Registration Form provided to Plaintiff and Class members at the time of the
vehicle purchase constitutes a "written warranty," "…a written promise made in connection with
the sale of a consumer product," and/or "service contract," "a contract in writing to perform, over
a fixed period of time or for a specified duration, services relating to the maintenance or
repair…"

69.     The Registration Form fails to specify, however, the terms of the warranty,
although it several times refers the consumer to "both sides of the agreement" for the "terms and
conditions," only one side exists, with no obvious terms or conditions.  Under the Act, warranties
must disclose, fully and conspicuously, the terms and conditions as required by the Federal Trade
Commission, 16 C.F.R. Part 700.

70.     The amount in controversy of each Plaintiff's individual claim meets or exceeds
the sum or value of $25.00, as required by the Act, and meets or exceeds the sum of $15.00, as
required by the FTC.

71.     As a direct and proximate result of Defendants' violations of the Act, Plaintiff and Class members sustained damages and other losses in the amount of the charges imposed or paid for the ATSD.  Defendants' common course of conduct caused Plaintiff and Class members' damages and accordingly Plaintiff and Class members are entitled to recover damages, costs, attorneys' fees, rescission, and/or other equitable relief as appropriate.

**COUNT V**

**BREACH OF FIDUCIARY DUTY AGAINST
FUCCILLO AUTOMOTIVE AND FUCCILLO HYUNDAI**

72.     Plaintiff agreed to pay money to Fuccillo Hyundai to purchase an ATSD, and Fuccillo Hyundai agreed to deliver that premium to Defendant Universal.  The relationship between a purchaser of insurance and an insurance agent is a fiduciary relationship.  A fiduciary relationship was thus created between Fuccillo Hyundai and Plaintiff, a promise was rendered, money was transferred in reliance of the promise, and Defendants were unjustly enriched as a result.

73.     Defendants knowingly breached their fiduciary duties by accepting payment for an unlicensed insurance product and failing to disclose the commission earned by Defendant upon sale of the ATSD.

74.     Plaintiff and the Class members have suffered damages as a result of dealership Defendants' breaches of their fiduciary duties from which Universal and the dealership Defendants derived a monetary benefit.

75.     A trust should be imposed upon all proceeds of the sales made by Defendants to Class members.

## COUNT VI

## UNJUST ENRICHMENT

76.     Defendants consciously intended the result of their wrongdoing as set forth in this Complaint, and have profited from the unlawful and unlicensed sale of the ATSD.

77.     Defendants were at all times fully aware that the monies paid by the Plaintiff and the Class members were as a result of Defendants' deception and that Defendants were not entitled to retain these benefits.

78.     As a result, Defendants have been unjustly enriched at the expense of the Plaintiff and the Class, who should receive restitution from the unfair profits, revenue and benefits gained by the Defendants, along with such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

## COUNT VII

## VIOLATION OF TRUTH IN LENDING ACT ("TILA"), 15 U.S.C. § 1601, *et seq.*

79.     The Plaintiff purchased the vehicle on credit, signing the PSA and RISC. Plaintiff paid $295.00 for the ATSD, which was listed on the PSA under "The Selling Price," and was added into the "Total Selling Price."

80.     The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, was enacted for the purpose of providing informed use of credit, with fully disclosed credit terms for consumer credit.

81.     Defendants Fuccillo Hyundai and Fuccillo Automotive, during the pertinent times, were creditors under TILA, see 15 U.S.C. § 1602(f), "a person who both regularly extends…consumer credit…and is the person to whom the debt arising from the consumer credit

transaction is initially payable…on the evidence of indebtedness or…by agreement," and Regulation Z.

82.     Under TILA, any property insurance like the ATSD must be included in the "finance charge," not the "amount financed."  The ATSD was not included in the "finance charge."  The ATSD was improperly included in the "amount financed" instead of the "finance charge."

83.     Treas. Regulation Z states that the premiums for insurance against loss or damage may be excluded from the disclosure requirements if the consumer is informed (1) that the insurance coverage may be obtained from a person of the consumer's choice; and, for insurance obtained through the creditor, the consumer is notified of (2) the amount of the premium, and (3) the term of the insurance. 12 C.F.R. § 226.4(d)(2).  Defendant violated these requirements because Defendant misrepresented the ATSD to be a warranty, not insurance; did not tell the buyer that they could obtain the product from a company of the buyer's choice; and otherwise engaged in improper disclosures.

84.     Defendants improperly put the required ATSD charge in the "amount financed" not the "finance charge."  Thus, the amount financed was too high and the finance charge was too low. Therefore, the stated APR was inaccurate and Defendant failed to disclose accurately the finance charge, in violation of 15 U.S.C. § 1638(a)(3) and 12 C.F.R. § 226.18(d) and 226.4; failed to disclose accurately the APR, in violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 226.18(e); and failed to disclose accurately the amount financed, in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 226.18(b).

85.     12 C.F.R. § 226.17(a) states that the required disclosures shall be grouped together and be segregated from everything else, but indicates that the disclosures under §

226.18(n) "may be made together or separately from other required disclosures." 12 C.F.R. § 226.17 n.38. The § 226.18(n) disclosures are those required in order to exclude insurance premiums from the finance charge, including the disclosures that insurance may be obtained from other persons, and the amount of the premium and term of the insurance. Defendant violated this regulation because the § 226.18(n) disclosures must themselves be grouped together even though they may be separate from the other disclosures required by § 226.18. Defendant did not make the required § 226.18(n) disclosures at all, nor group those disclosures together in a clear and conspicuous fashion.

86.     As a direct and proximate result of Defendant's violations of the TILA, Plaintiff and Class members are entitled to actual and statutory damages under TILA, and a reasonable attorney's fee as determined by the court. 15 U.S.C. § 1640(a)(3).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following:

a)         An order certifying this action as a class action under Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, appointing the named Plaintiff as the Class Representative and designating Plaintiff' counsel as Class Counsel;

b)         An order declaring the conduct alleged herein to be a deceptive sales practice within the meaning of the New York Consumer Protection from Deceptive Acts and Practices, N.Y. GBL § 349 and the common law of unjust enrichment;

c)      A judgment awarding Plaintiff and each Class member a full refund of all monies paid for the ATSD, interest thereon and any amount by which Defendants have been unjustly enriched, plus treble damages;

d)      A judgment awarding Plaintiff and each Class member the greater of compensatory or statutory damages;

e)      An order enjoining the sale of the ATSD unless and until the policy and its premiums are approved by the Department of Insurance, and Defendants become properly licensed under the NY Insurance laws;

f)      An order imposing a trust on all proceeds of the ATSD sales made by Defendants;

g)      An order awarding Plaintiff and the Classes their costs of suit, including reasonable attorneys' fees and expenses as provided by law; and

h)      An award of such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, or proper by this Court.

Respectfully submitted,

By:

Sergei Lemberg
Lemberg & Associates, L.L.C.
1100 Summer Street, 3rd Floor
Stamford, CT 06905
Telephone: (203) 653-2250
Facsimile: (877) 795-3666
N.D.N.Y.  No. Bar 514922

New York Office
75 South Broadway, 4th Floor
White Plains, NY 10601

Co-Counsel
Martin Mushkin, Esq.
Law Offices of Martin Mushkin
1100 Summer Street, 3rd Floor
Stamford, CT 06905
Telephone: (203) 252-2357
Facsimile:  (203) 547-7540

New York Office
53 Burd Street
Nyack, NY 10960