UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**HEIDI SEEKAMP, On Behalf of Herself and All Others Similarly Situated,**

　　　　　　*Plaintiff,*

　　*-against-*

**FUCCILLO AUTOMOTIVE GROUP, INC., FUCCILLO LINCOLN MERCURY HYUNDAI, INC., and UNIVERSAL AUTOMOTIVE SERVICES, INC.,**

　　　　　　*Defendants.*

---

Civil Action No.

1:09-CV-00018

(LEK/DRH)

 

**DEFENDANTS FUCCILLO AUTOMOTIVE INC.'S
AND FUCCILLO LINCOLN MERCURY HYUNDAI, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT
PURSUANT TO *FED. R. CIV. P.* 12(b)(6)**

 

**HISCOCK & BARCLAY, LLP**
Office and Post Office Address
50 Beaver Street
Albany, New York  12207-2830
Telephone: (518) 429-4293

William A. Hurst, Esq.
Gabriel M. Nugent, Esq.
*of Counsel*

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................2

      A.    The Parties. ...............................................................................................2

      B.    The Auto Theft Security Discount Guarantee ("ATSD"). ..........................2

      C.    The Complaint. ..........................................................................................6

ARGUMENT...........................................................................................................................7

    POINT I

             THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT
             FAILS TO STATE ANY CAUSE OF ACTION AGAINST
             THE FUCCILLO DEFENDANTS UPON WHICH RELIEF
             CAN BE GRANTED ..................................................................................7

      A.    Applicable Legal Standard. .......................................................................7

          1.    The Court May Consider the New York State Insurance
               Department's Opinion Letters Interpreting the ATSD Without
               Converting the Instant Motion to Dismiss into a Motion for
               Summary Judgment. .........................................................................9

    POINT II

             PLAINTIFF'S FIRST, SECOND, THIRD, FIFTH, SIXTH
             AND SEVENTH CAUSES OF ACTION FAIL TO STATE
             ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED
             BECAUSE THE ATSD CONSTITUTES A VALID
             WARRANTY AND NOT INSURANCE..................................................12

      A.    The New York State Insurance Department Has Opined that
          the Etch Program Previously Administered by Fuccillo
          Hyundai "Does Not Violate the Insurance Law"......................................12

      B.    Plaintiff is Bound by the ATSD Terms and Conditions Which
          Appropriately Condition the Program's Availability on
          Fuccillo Hyundai's Ability to Earn a Profit on the Sale of the
          Replacement Vehicle.................................................................................15

      C.    District Courts in Other Jurisdictions Have Considered and
          Rejected the Claim That Automobile Theft Deterrent System
          Discount Guarantees Constitute Insurance. ..............................................18

POINT III

THE COMPLAINT FAILS TO STATE A CAUSE OF
ACTION FOR VIOLATION OF THE MAGNUSON-MOSS
WARRANTY ACT ...................................................................................21

A.      Plaintiff's Fourth Cause of Action Should be Dismissed Based
on Plaintiff's Failure to Comply with the Statutory
Prerequisites. ........................................................................................21

1.      Plaintiff Cannot Prove any Injury Proximately Caused by the
Alleged Violation ..........................................................................23

CONCLUSION ...................................................................................................................25

# TABLE OF AUTHORITIES

**Federal Cases**

*Atchole v. Silver Spring Imports, Inc.*, 379 F. Supp. 2d 797 (D. Md. 2005)..................................23

*Banner Aircraft Resales, Inc. v. Aspen Jet Sales, Inc.*, No. 87-6606, 1991 U.S. Dist. LEXIS 14703 (N.D. Ill. Oct. 15, 1991).............................................................................. 17\

*Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 ....................................................................8

*Chevron U.S.A., Inc. v. N.R.D.C.*, 467 U.S. 837 (1984) ....................................................14

*Cortec Indus. Inc. v. Sum Holding, L.P.*, 949 F.2d 42 (2d Cir. 1991) .........................................10

*Cunningham v. Fleetwood Homes of Ga.*, 253 F.3d 611 (11th Cir. 2001) ..................................23

*Falkenberg v. Alexico Corp.*, No. 07-4149, 2008 U.S. Dist. LEXIS 46821 (D. N.J. June 17, 2008)........................................................................................................*passim*

*GAF Corp v. County School Bd.*, 629 F.2d 981 (4th Cir 1980)...............................................19

*Global Network Comms., Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006)........................10

*Heller v. Shaw Indus.*, No. 95-7657, 1997 U.S. Dist. LEXIS 12399 (E.D. Pa. Aug. 18, 1997)...................................................................................................................23

*I. Meyer Pincus and Assoc. v. Oppenheimer & Co., Inc.*, 936 F.2d 759 (2d Cir. 1991) ..............10

*Lee v. Sony BMG Ent. Inc.*, 557 F. Supp. 2d 418 (S.D.N.Y. 2008) ..................................................7

*Matter of Pubs. Inc. v. Bank of Illinois in Champaign*, 618 F.2d 434 (7th Cir. 1980) .................17

*Moroz v. Alexico Corp.*, No. 07-3188, 2008 U.S. Dist. LEXIS 1166 (E.D. Pa. Jan 8, 2008)..........................................................................................................*passim*

*N&D Fashions, Inc. v. DHJ Indus., Inc.*, 548 F.2d 722 (8th Cir. 1976).......................................15

*Ocor Prods. Corp. v. Walt Disney Products, Inc.*, 682 F. Supp. 90 (D. N.H. 1988)....................16

*Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192 (3d Cir. 1993) .....................10

*Pope v. TT of Lake Norman, LLC d/b/a Lake Norman Dodge*, 505 F. Supp. 2d 309 (W.D.N.C. 2007) ...............................................................................................*passim*

*Stoebner Motors, Inc. v. Automobil Lamborghini S.P.A.*, No. 06-00446, 2007 U.S. Dist. LEXIS 47095 (D. Hi. June 28, 2007) .............................................................................23

*Walton v. Rose Mobile Homes, LLC*, 298 F.3d 470 (5th Cir. 2002) ...........................................23

**State Cases**

*Gates v. Chrysler Corp.*, 397 So. 2d 1187 (Fla. Dist. Ct. 1981) ....................................................24

**Federal Statutes**

15 U.S.C. § 1601 ........................................................................................... 7, 17, 25

15 U.S.C. § 2301 .................................................................................................. *passim*

15 U.S.C. § 2310 ............................................................................................... 22, 23

**State Statutes**

New York *Insurance Law* § 1101 ............................................................................20

**Rules**

*Fed. R. Civ. P.* 12 ................................................................................................. *passim*

## INTRODUCTION

Stripped of its rhetoric, the Complaint in the above-captioned case reduces to the legally insupportable claim that the Auto Theft Security Discount Guarantee ("ATSD") sold by Fuccillo Hyundai to plaintiff to warrant the effectiveness of an automobile theft deterrent device she purchased constitutes a contract of insurance, which can only be issued by an insurance company licensed to do business in the State of New York.  From this demonstrably false legal premise, plaintiff claims that Fuccillo Hyundai engaged in deceptive business practices and other wrongful conduct when it promoted the ATSD for what it is – a performance guarantee warranting the effectiveness of the automobile theft deterrent device known as a window "Etch."

As detailed below, plaintiff's Complaint suffers from multiple, fatal flaws and should be dismissed.  First, the New York State Insurance Department and several District Courts in other jurisdictions have already opined that similar automobile theft deterrent system discount programs do not constitute insurance and do not violate state insurance laws.  Consequently, plaintiff's contention  that the ATSD constitutes insurance (which plaintiff relies upon to prop up her first, second, third, fifth, sixth and seventh causes of action) should also be rejected here.  Second, the sole count in the Complaint which does not rely on the ATSD being deemed insurance (fourth cause of action) fails because plaintiff has pleaded, at worst, a mere technical violation of the disclosure requirements contained in the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, *et seq.* ("MMWA").  Settled law discussed *infra* establishes that claims for technical violations of the MMWA are not actionable unless plaintiff pleads and can prove actual damages proximately caused by the warrantor's omission – pleading requirements not satisfied here and which cannot be cured by repleading, since plaintiff's 2007 Hyundai Elantra was never stolen and she has had no opportunity to test the warranty's value and effectiveness.

# FACTUAL BACKGROUND

## A.      The Parties.

Plaintiff Heidi Seekamp is an individual who resides in the hamlet of Latham, County of Albany, State of New York.  (Complaint, ¶ 11)

Defendant Fuccillo Automotive Group, Inc. ("Fuccillo Automotive") is a New York corporation with its principal place of business located in the Town of Adams, County of Jefferson, State of New York.  (Complaint, ¶ 12)  Defendant Fuccillo Lincoln Mercury Hyundai, Inc., is also a New York corporation with its principal place of business located in the Town of Adams, County of Jefferson, State of New York.   It is one of approximately 17 qualified subsidiaries of non-party parent corporation "It's Huge, Inc.," and does business as an automotive dealership from its retail location at 4101 State Street, City of Schenectady, State of New York, under the trade name "Fuccillo Hyundai." (Testone Affidavit, ¶ "3"; Complaint, ¶ 13 and Exhibit "A") (Fuccillo Lincoln Mercury Hyundai, Inc. and Fuccillo Hyundai are collectively referred to herein as "Fuccillo Hyundai").

Defendant Universal Automotive Services, Inc. ("Universal"), is a New Jersey corporation which, as pertinent herein, indemnifies Fuccillo Hyundai in the event that Fuccillo Hyundai is required to issue a credit towards a new vehicle purchase pursuant to the terms of the ATSD described, *infra*.  (Complaint, ¶ 15)

## B.      The Auto Theft Security Discount Guarantee ("ATSD").

In or about June of 2007, plaintiff Heidi Seekamp contracted with Fuccillo Hyundai for the purchase of a new 2007 Hyundai Elantra.   (Complaint, ¶ 16)  In connection with that transaction, plaintiff signed a purchase and sale agreement ("PSA"), which identified the new

vehicle and set forth the terms of the transaction, including the various charges and taxes associated therewith. (Complaint, Exhibit "A") As shown on the PSA, which is attached to and incorporated by reference into the Complaint, plaintiff paid the disclosed sum of $295.00 for an auto theft deterrent system to be installed on the new vehicle consisting of an "Etch" of the vehicle identification number ("VIN") on the vehicle's windscreens and placement of warning decals on the driver's and passenger side windows. (Complaint, ¶¶ 2, 3, 16 and Exhibit "A") Fuccillo Hyundai marketed and sold the Etch as a potential theft deterrent because vehicles with the VIN number permanently etched in various locations are believed to be more difficult to dismantle and sell off piecemeal.[1] (Complaint, ¶ 2)

The document annexed as Exhibit "B" to Complaint titled "Auto Theft Security Discount" purports to be a true and correct copy of the ATSD Registration Form distributed to plaintiff by Fuccillo Hyundai.[2] The document accurately describes the ATSD, *inter alia,* as follows:

> The AUTO THEFT SECURITY DISCOUNT, permanently installed on the Vehicle windows, includes two (2) warning decals affixed to the driver and passenger windows. ***It guarantees*** to the above named purchaser/lessee of the described Vehicle ***that the system installed will be effective [sic] deterrent against Vehicle theft. AUTO THEFT SECURITY DISCOUNT is not insurance and does not provide general liability coverage*** or fulfill the requirements of financial responsibility laws. Such coverages are usually provided by the customer's personal automobile insurance carrier.

(Complaint, Exhibit "B") (emphasis supplied).

---

[1] The Fuccillo defendants ceased marketing the ATSD on or about August of 2007. It is no longer available at any Fuccillo dealership in the State of New York. (Testone Affidavit, ¶ 4) Consequently, plaintiff's claims for prospective relief on her own behalf and on behalf of the putative class are moot.

[2] The Fuccillo defendants do not dispute that Exhibit "B" is a true and correct copy of the first page of the ATSD Registration Form. However, it is an incomplete copy. (*See infra,* pp. 4, 15)

As evidenced by Exhibit "B" to the Complaint, or about June 13, 2007, plaintiff Seekamp signed an acknowledgement form, portions of which are reproduced below, indicating her consent to participate in the ATSD:[3]

**THIS GUARANTEE IS SUBJECT TO THE TERMS AND
CONDITIONS PROVIDED ON THE REVERSE SIDE**

I do choose to register my **VEHICLE** under the **AUTO THEFT SECURITY DISCOUNT**.  By my signature below, I request to purchase the **AUTO THEFT SECURITY DISCOUNT** and acknowledge that I have read and fully understand both sides of this agreement.

_____          _____
Applicant Signature                                        Date

(Complaint, Exhibit "A")

The ATSD Registration Form includes numerous terms and conditions on the reverse side, which are not referenced in the Complaint, but which may be considered by the Court.  (*See infra*, p. 15)  The substantive terms of the ATSD, which are accurately summarized in the Complaint, are as follows:

If your Vehicle as described on the reverse side of this page is declared a Total Loss due to unrecovered theft or recovered and is declared a Total Loss which occurred as a direct result of the original theft by Your primary insurance company within three (3) years of the date of purchase, finance or lease, then, subject to the conditions and limitations set forth below, the Authorized Dealer will discount the following:  if the original motor Vehicle was a NEW motor Vehicle as of the date of purchase,

---

[3]      Seekamp also alleges that participation in the ATSD was mandatory in connection with the purchase or lease of any new vehicle from Fuccillo Hyundai. (Complaint, ¶ 16)  Although the issue is not relevant to the instant motion to dismiss, the ATSD Registration Form plaintiff signed states as follows immediately following her signature:

I do NOT choose to register my VEHICLE under the AUTO THEFT SECURITY DISCOUNT.  I understand that by not accepting this registration, and in the event my VEHICLE is stolen and recovered, I am not entitled to any of the AUTO THEFT SECURITY DISCOUNT benefits provided.

_____          _____
Applicant Signature                                        Date

(Complaint, Exhibit "A")

finance or lease, the Authorized dealer will provide You with 10% discount towards the purchase of a Replacement Vehicle in the amount of up to $2,000.  Replacement Vehicle shall be amount equal to or greater than the value of the original Vehicle.

If your Vehicle as described on the reverse side of this page is declared a Total Loss due to unrecovered theft or recovered and is declared a Total Loss which occurred as a direct result of the original theft by Your primary insurance company within three (3) years of the date of purchase, finance or lease, then, subject to the conditions and limitations set forth below, the Authorized Dealer will discount the following: If the original motor Vehicle was a USED motor vehicle as of the date of purchase, finance or lease, the Authorized Dealer will provide You with 10% discount towards the purchase of a Replacement Vehicle in the amount of up to $2,000, but not to exceed 50% of the original N.A.D.A. value as of the date of purchase, finance or lease.

(Testone Affidavit, Exhibit "A"; Complaint, ¶¶ 3, 20, 27, 52, 53, 62, 63, 64 and Exhibit "B")

The ATSD terms and conditions also contain certain sate "Limitations":

1.  You must purchase and maintain for the full term of the [ATSD], automobile physical damage insurance on the Vehicle for limits at least equal to the cash value of the covered vehicle.  Failure to do so will VOID this [ATSD].

* * * *

5.  This discount is for the sole benefit of You, may not be assigned or transferred to another person, is non-cancelable, may only be used at the Authorized Dealer, and may not be redeemed for cash.  ***No discount will be given that will eliminate dealer profit on replacement vehicle***.

(Testone Affidavit, Exhibit "A")  (emphasis supplied)  The Complaint alleges that the ATSD Registration Form "fails to specify . . . the terms of the warranty" and that it contains "no obvious terms or conditions."  (Complaint, ¶ 69)

Plaintiff Seekamp signed the ATSD Registration Form on June 13, 2007, and thereafter accepted delivery of a new 2007 Hyundai Elantra, which she presumably still owns.  The Complaint does not allege that it was stolen at any time during the three-year warranty period (or

at any other time), or that she has ever attempted to obtain the discount available under the warranty from any defendant.  (Complaint, Exhibit "B")

## C.    The Complaint.

Plaintiff's principal contention in the Complaint is that "Defendants" marketed and sold the ATSD as a warranty of performance when it is actually an insurance contract.[4]  Plaintiff further alleges that "Defendants" have engaged in the business of insurance in New York without obtaining a license from the New York State Insurance Department.  (Complaint, ¶¶ 49-50)  Plaintiff claims that the Fuccillo defendants misled consumers into believing that Universal is licensed to write insurance policies in New York, and misrepresented the "worth and value" of the ATSD.  (Complaint, ¶ 56)

Plaintiff also alleges that the defendants participated in a "Conspiracy to Commit Consumer Fraud," *i.e.*, engaged in a conspiracy to mislead consumers into believing that the ATSD was a warranty of performance and/or that defendants were licensed insurance companies authorized to issue insurance policies in the State of New York.  (Complaint, ¶ 60)

Plaintiff further alleges "Breach of Contract," although plaintiff does not allege that her 2007 Hyundai Elantra was stolen, or that she made a demand for the discount under the ATSD, or that Fuccillo Hyundai failed to authorize a credit towards the purchase of a new vehicle after the ATSD was triggered.  (Complaint, ¶ 64)

Plaintiff also claims that if the ATSD is a warranty, then Fuccillo Hyundai's alleged failure to disclose the terms and conditions of the program at the time of purchase constitutes a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.  ("MMWA").

---

[4]         *See*, *e.g.*, Complaint, ¶¶ 1, 4, 5, 14, 15, 19, 20-25, 27, 32, 34, 35-38, 41, 48-56, 59-60, 62-64, 72-73, 82-86.

Plaintiff's fifth cause of action contends that Fuccillo Hyundai is an "insurance agent" and plaintiff Seekamp a "purchaser of insurance" to whom Fuccillo Hyundai allegedly owed a fiduciary duty, and that Fuccillo Hyundai breached its fiduciary duty to plaintiff "by accepting payment for an unlicensed insurance product." (Complaint, ¶ 73)

Similarly, plaintiff alleges that the ATSD qualifies as "property insurance" under the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), and claims that the $295.00 charge therefore should have been identified as a "finance charge" in the applicable loan documentation. (Complaint, ¶ 82)  Plaintiff further alleges that because the charge for the ATSD was not identified as "property insurance" in the loan documentation, the disclosed APR was inaccurate, in violation of the TILA.[5]  (Complaint, ¶ 84)

## ARGUMENT

## POINT I

## THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE ANY CAUSE OF ACTION AGAINST THE FUCCILLO DEFENDANTS UPON WHICH RELIEF CAN BE GRANTED

### A.      Applicable Legal Standard.

"In ruling on a [Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." *Lee v. Sony BMG Music Ent., Inc.*, 557 F. Supp. 2d 418 (S.D.N.Y. 2008) (citing *Frasier v. General Elec., Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991)).  The court must draw all reasonable

---

[5]      Although difficult to discern, plaintiff's sixth cause of action, styled "Unjust Enrichment" appears to allege that the defendants' have been unjustly enriched by the alleged misrepresentations, *supra.* (Complaint, ¶¶ 76-78)

inferences from those facts in plaintiff's favor.  *Id.* (citing *California Motor Transp., Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972)).  Nevertheless, to avoid dismissal under Rule 12(b)(6), the Complaint must allege facts in sufficient detail to "raise a right to relief above the speculative level," and must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

As detailed below, plaintiff's allegations against the Fuccillo defendants here are legally insufficient, even when measured against the liberal standards applied on a Rule 12(b)(6) motion to dismiss.[6]  First, the Court is not compelled to accept as true plaintiff's legal conclusion that the ATSD described in the Complaint qualifies as "insurance" or an "insurance policy."  (Complaint, ¶ 1, 5)  Instead, this Court should make a *sui generis* inquiry, taking into account the terms under which Fuccillo Hyundai administers the ATSD program, as well as the numerous advisory opinions issued by the New York State Insurance Department, Office of General Counsel, on the same or similar theft deterrent discount programs and should conclude, as the Insurance Department and several District Courts have, that the ATSD as administered by Fuccillo Hyundai here and described in the Complaint *is not insurance*.  When the Complaint is stripped

---

[6]     As a threshold matter, the Court should dismiss the Complaint as against Fuccillo Automotive because plaintiff's sole allegation that Fuccillo Automotive "owns and controls the operations of Fuccillo Hyundai" (Complaint, ¶ 14) is completely inadequate as a matter of law:

> Plaintiff fails to allege facts or make arguments supporting either theory of liability as to [parent corporation].  Plaintiff claims that he has "demonstrated the parent exercised control over the activities of the subsidiary."  However, the Complaint only makes the conclusory statements that [parent] had knowledge of [subsidiary's] tortious action and exercised direction and control over [subsidiary].  Mere conclusory statements alleging the exercise of such control are insufficient to survive a motion to dismiss.  Triemer v. Bobsan Corp., 70 F. Supp. 2d 375, 377 (S.D.N.Y. 1999).  Plaintiff cannot rehabilitate his inadequately pleaded Complaint by repeating his assertion that [parent corporation] exercised direction and control over [subsidiary] . . . without factual allegations of complete control.  See, e.g., Achtziger v. Fuji Copian Corp., 750 N.Y.S.2d 413, 415-16, 299 A.D.2d 946, 948 (App. Div. 2002) (noting that complaint must allege the parent had "complete dominion and control over [the subsidiary's] daily operations"). . . Thus, there is no support in the Complaint for a derivative claim against [parent corporation].

of that erroneous and legally insupportable *characterization* of the ATSD, all but one of

plaintiff's claims fail to state any cause of action upon which relief may be granted, as described,

*infra*.  Second, plaintiff's remaining claim that the Fuccillo defendants allegedly violated the

MMWA by failing to disclose the terms and conditions of the ATSD  (fourth cause of action)

fails - not only because all the terms were disclosed, as plaintiff acknowledged by her signature

on the document - but for the independent and sufficient reason that plaintiff cannot satisfy the

statutory prerequisites for bringing suit under 15 U.S.C. 2310(e), including proving damages.

**1.     The Court May Consider the New York State Insurance Department's Opinion Letters Interpreting the ATSD Without Converting the Instant Motion to Dismiss into a Motion for Summary Judgment.**

Settled principles detailed below authorize the Court to consider the Insurance

Department correspondence annexed to the Testone Affidavit without converting the Fuccillo

defendants' motion to dismiss into a motion for summary judgment under *Fed. R. Civ. P.* 12(d).

"Indeed, the Insurance Department's opinion is especially significant here, given that Plaintiffs

have premised most of their Complaint on the allegation that Defendants [sale of an Etch product

and associated discount guarantee] ha[s] impermissibly evaded the Department's regulation and

review."  *Moroz v. Alexico Corp.*, No. 07-3188, 2008 U.S. Dist. LEXIS 1166, at *7-8 (E.D. Pa.

Jan. 8, 2008) (considering Insurance Department opinion letters but declining to convert

defendant's motion to dismiss to a motion for summary judgment under *Fed. R. Civ. P.* 12(d)).

Generally, submitting matters to the Court outside the pleadings transforms a Rule

12(b)(6) motion to dismiss into a motion for summary judgment.  *See Fed. R. Civ. P.* 12(d).[7]

(..continued)
*Henneberry v. Sumitomo Corp. of Am.*, No. 04-2128, 2005 U.S. Dist. LEXIS 8023, at *8-9 (S.D.N.Y. May 3, 2005) (additional internal citations omitted) (Testone Affidavit, ¶ 3)

[7]     Rule 12(d) states:  "If on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All

There are, however, exceptions to the general rule, as recognized by the United States Court of

Appeals for the Second Circuit in *Cortec Indus., Inc. v. Sum Holding, L.P.*:

> [W]hen a plaintiff chooses not to attach to the complaint or incorporate by
> reference a [document] upon which it solely relies and which is integral to
> the complaint, the defendant may produce the [document] when attacking
> the complaint for its failure to state a claim, because plaintiff should not so
> easily be allowed to escape the consequences of its own failure.

949 F.2d 42, 47 (2d Cir. 1991) (citing *I. Meyer Pincus and Assoc. v. Oppenheimer & Co., Inc.*,

936 F.2d 759, 762 (2d Cir. 1991)).   Accord *Pension Ben. Guar. Corp. v. White Consol. Indus.*,

998 F.2d 1192, 1197 (3d Cir. 1993).  The exception may be invoked by the court whenever

> [T]he incorporated material is a contract or other legal document
> containing obligations upon which the plaintiff's complaint stands or falls,
> but which for some reason – usually because the document, read in its
> entirety, would undermine the legitimacy of the plaintiff's claim – was not
> attached to the complaint.  The exception thus prevents plaintiffs from
> generating complaints invulnerable to Rule 12(b)(6) simply by clever
> drafting.[8]

*Global Network Comms., Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (citations

omitted).

  Here, plaintiff having chosen to make purported violations of the *Insurance Law* the

centerpiece of her Complaint, she should not be allowed to "escape the consequences of [her]

own failure" to annex relevant and applicable Insurance Department opinions or correspondence

thereto.   *Cortec Indus., Inc. v. Sum Holding, L.P.*, *supra*, at 47.   The Complaint's central

allegation, repeated numerous times and in various forms, is that:

> The New York Insurance Department has opined that the sale of such
> window etching programs violates New York insurance law, unless the

(..continued)

parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  *Fed. R. Civ. P*. 12(d).

[8]    *See also Cortec Indus., Inc.*, *supra*, 949 F.2d at 48 (affirming consideration of extrinsic evidence on Rule 12(b)(6) motion to dismiss where "[P]laintiff did not lack notice of those documents; these papers were integral to their complaint").

> group insurance policy is underwritten by a New York licensed insurer. Universal, the purported issuer of the policy sold to the Plaintiff, is not now nor has it ever been an issuer licensed to do business in New York.

(Complaint, ¶ 4, 24)   Based on that erroneous premise, the Complaint contains multiple, misguided allegations which merely assume that the ATSD is insurance and not a warranty.[9] Tellingly, plaintiff failed to attach to the Complaint any of the Insurance Department's purported opinion(s) on window etching programs.[10]

Recently, several District Courts considering the question of whether anti-theft and security guarantees similar to the ATSD constitute insurance have received letter-opinions from administrative agencies without converting the motions to dismiss into motions for summary judgment.  *See*, *e.g.*, *See Moroz*, *supra*, 2008 U.S. Dist. LEXIS 1166, at *3 ("Finally, I may consider undisputedly authentic documents of public record – including letter decisions of government agencies – without converting a Rule 12 motion to dismiss into a motion for summary judgment") (citations omitted); *Falkenberg v. Alexico Corp.*, *supra*, 2008 U.S. Dist. LEXIS 46821, at *5 ("The Court may consider documents of public record, such as transcripts of proceedings of other courts and records of government agencies, without converting the pending motions into motions for summary judgment") (citations omitted); *Pope v. TT of Lake Norman, LLC*, *supra*, 505 F. Supp. 2d at 312 fn 2 ("The Etch forms are properly considered by the court on a motion to dismiss because they are explicitly referenced in Plaintiff's Complaint") (citation

---

[9]        *See* footnote 4, *supra*.

[10]        As detailed below, the reason for plaintiff's omission is clear:  the Insurance Department opinion letters, together with the Insurance Department's formal opinions on the subject (and the decisions of several District Courts, described, *infra*), eviscerate the conclusory claim set forth in paragraph 4 of the Complaint and elsewhere that the ATSD is insurance.  *See Pope v. TT of Lake Norman, LLC d/b/a Lake Norman Dodge*, 505 F. Supp. 2d 309 (W.D. N.C. 2007) (holding that Etch program is a warranty and not insurance); *Falkenberg v. Alexico Corp.*, No. 07-4149, 2008 U.S. Dist. LEXIS 46821, at *7 (D. N.J. June 17, 2008) ("The Court finds that Theft-Guard cannot be considered insurance"); *Moroz v. Alexico Corp.*, No. 07-3188, 2008 U.S. Dist. LEXIS 1166, at *11 (E.D. Pa. Jan. 8, 2008) ("In sum, I conclude that [Premium Car Theft Guard] is not insurance").

omitted).  As set forth in Point II, *infra*, the District Courts in each of the above cases dismissed the Complaint, relying in part on the applicable state Insurance Department or Attorney General determination that the window etch program was *not* insurance.

Unquestionably, substantially all of plaintiff's claims against the Fuccillo defendants rise or fall on the determination of whether the ATSD constitutes insurance.  In other words, plaintiff's allegations incorporate the Insurance Department's opinions on that topic by reference, or have otherwise made the Insurance Department's stated positions on anti-theft security discounts integral to the claims asserted against the Fuccillo defendants in the Complaint.  Therefore, the Court may consider the Insurance Department's formal and informal opinions bearing directly on the issues *sub judice*, including as expressed to co-defendant Universal Automotive Services, Inc., on June 22, 1999, and January 26, 2000, respectively, without converting the instant motion to dismiss into a motion for summary judgment.  (Testone Affidavit, Exhibits "B" and "C")

### POINT II

**PLAINTIFF'S FIRST, SECOND, THIRD, FIFTH, SIXTH
AND SEVENTH CAUSES OF ACTION FAIL TO STATE
ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED
BECAUSE THE ATSD CONSTITUTES A VALID
WARRANTY AND NOT INSURANCE**

**A.     The New York State Insurance Department Has Opined that the Etch
Program Previously Administered by Fuccillo Hyundai "Does Not Violate
the Insurance Law".**

On or about June 22, 1999, the New York State Insurance Department issued the agency's response to a June 21, 1999, inquiry from co-defendant Universal Automotive Services regarding an automobile theft deterrent system discount program similar to the ATSD.  The agency concluded, "*[T]he discount in your proposal does not appear to violate the Insurance*

*Law*, based upon the assumption that the discount would not eliminate the dealer's profit margin on each vehicle."[11]   (Testone Affidavit, Exhibit "C") (emphasis supplied)   The Insurance Department's June 22, 1999, letter-opinion described the "proposal" upon which it opined as follows:

> Under the program, a dealer that sells or leases a new motor vehicle with a properly installed security system promises that, in the event of a total loss to the vehicle from collision or its unrecovered theft, the dealer will provide a credit toward the purchase of a replacement vehicle.   The replacement vehicle value shall be equal to or greater than the value of the original vehicle.   The value of the credit will be 10% of the cost of the replacement vehicle, not to exceed $5,000.   Additionally, if the vehicle is not totaled, and the vehicle is returned to the dealer for repairs, the dealer will provide a discount of 10% of the repair cost, up to a maximum of $500 or the deductible, whichever is less.   By deductible, we assume the term refers to the deductible on the physical damage automobile policy maintained on the vehicle.
>
> * * * *
>
> The contract provides that "[n]o discount will be given that will eliminate dealer profit on replacement vehicle."

(*Id*, Exhibit "C", p. 1)   The ATSD *sub judice* is not materially different than the program the Insurance Department opined on and approved as fully compliant with the *Insurance Law* in 1999 and 2000.[12]   (Complaint, Exhibit "B")

The Insurance Department's rationale for concluding that the above-described program "does not appear to violate the Insurance Law" was as follows,

---

[11]   Apparently ignorant of these rulings, plaintiff avers the exact opposite without offering so much as a single citation to any authority supporting her legal conclusion.   (Complaint, ¶¶ 4, 24)   Indeed, plaintiff goes so far as to allege, albeit incredibly, that the Insurance Department "has consistently determined that the sale of products such as the ATSD are insurance."   (Complaint, ¶ 24)   Based on these and other affirmative misrepresentations in the Complaint, the Fuccillo defendants reserve all of their rights to seek affirmative relief against the plaintiff under *Fed. R. Civ. P.* 11.

[12]   As evidenced by the Insurance Department's January 26, 2000, letter-opinion, the program remains compliant even if the percentage portion of the discount is increased to thirty percent, provided "the dealer may not accept a loss on even one vehicle in the expectation that tit would make a profit through the volume of sales." (Testone Affidavit, Exhibit "B")

> if a seller provides a discount on a replacement purchase dependent upon the destruction or loss of a prior purchase, *that seller would not be doing an insurance business so long as the discount price of the new purchase (including any other discounts that the seller may provide) covers the cost of the purchase to the seller, plus any labor or material cost borne by the seller and reasonable overhead expenses*.  In other words, a seller may agree in the discount to reduce its profit margin on the new item, but may not agree to sell the item at a break even or lower point.  Similarly, a dealer may agree to provide a discount on the cost of repairs, so long as the dealer does not eliminate its profit on the repair.

*Id*. (emphasis supplied)   Significantly, the Complaint here does *not* allege that Fuccillo Hyundai's agreement to grant a credit towards the purchase of a new automobile in the amount of the lesser of $2,000 or 10% of the purchase price in the event of a theft would deprive the dealership of all profit on the second sale.  Indeed, the Complaint is completely silent as to Fuccillo Hyundai's putative profit.[13]

Plaintiff's Complaint does acknowledge, at least implicitly, that the Insurance Department is the administrative agency in the State of New York charged with regulating the ATSD, if it is deemed to qualify as insurance.  As evidenced by its letter-opinions issued in 1999 and 2000, the Insurance Department has considered – and flatly rejected – the very claim raised by plaintiff here, *i.e*., that the ATSD or similar automobile theft deterrent system discount programs always constitute contracts of insurance.  The administrative agency's determination in that regard is entitled to substantial deference, particularly since it is in harmony with the opinions of equivalent agencies in several other states, and with the weight of case law authority.  *Chevron U.S.A., Inc. v. N.R.D.C.*, 467 U.S. 837 (1984) (holding that courts should defer to agency's interpretation of a statute it is charged with administering).

---

[13]    As described *infra*, the ATSD's terms and conditions clearly state "No discount will be given that will eliminate dealer profit on replacement vehicle."

**B.**     **Plaintiff is Bound by the ATSD Terms and Conditions Which Appropriately Condition the Program's Availability on Fuccillo Hyundai's Ability to Earn a Profit on the Sale of the Replacement Vehicle.**

The ATSD Registration Form used by Fuccillo Hyundai here (as did the example opined on by the Insurance Department in 1999 and 2000), expressly states in the "Limitations" section that "[N]o discount will be given that will eliminate dealer profit on replacement vehicle." (Testone Affidavit, Exhibit "A")   Thus, Fuccillo Hyundai has designed and administers the ATSD in strict conformity with the Insurance Department's caveat above, *i.e.*, the dealership will always earn a profit on the sale or lease of the replacement vehicle, or else the discount is unavailable by its express terms.  (Testone Affidavit, Exhibit "A")

The Fuccillo defendants anticipate that plaintiff will seek to avoid the plain language of the terms and conditions based on her allegation that, "[T]he Registration Form fails to specify . . . the terms of the warranty."  (Complaint, ¶ 69) That claim, however, is belied by plaintiff's signature on the ATSD Registration Form in which she explicitly acknowledged that she "ha[s] read and fully understand[s] both sides of this agreement."  (Complaint, Exhibit "A")  And to the extent plaintiff may have harbored some doubt as to the significance of what was contained on the other "side[] of this agreement", the immediately preceding subject heading, written in bold type and in capital letters just above plaintiff's signature states, "**THIS GUARANTEE IS SUBJECT TO THE TERMS AND CONDITIONS PROVIDED ON THE REVERSE SIDE**."  (*Id*.)  Without question, the above language – at all times clear and conspicuous – placed plaintiff on explicit notice to read the "reverse side" of the document before signing up for the ATSD.

The case *N&D  Fashions, Inc. v. DHJ Indus., Inc*. is instructive.  In that case, a fabric supplier sent a written confirmation of a purchase order from plaintiff which contained a

contractual arbitration provision on the reverse side.  As here, the confirmation stated "**THE CONTRACT IS SUBJECT TO ALL THE TERMS AND CONDITIONS PRINTED ON THE REVERSE SIDE**."  A representative of plaintiff signed the confirmation without reading the reverse side of the document.  The Court refused to relieve plaintiff of the contractual obligation to arbitrate:

> While a party may not be subjected to a provision which materially alters the contract by failing to object to it, *he cannot avoid the effect of his written acceptance of a contract which expressly, above his signature on the face of the contract, incorporates the provisions on the reverse side of the document*.  There being no evidence of fraud, misrepresentation or deceit in the execution of the acceptance, it follows that the agreement to arbitrate became a part of the agreement and must govern the resolution of the dispute between the parties which produced this litigation.

548 F.2d 722, 727-28 (8th Cir. 1976).  *See also Ocor Prods. Corp. v. Walt Disney Products., Inc*., 682 F. Supp. 90, 93 (D. N.H. 1988) ("…it is a well-settled principle of law that, in the absence of fraud, misrepresentation, or deceit, a party 'expressly agrees' to terms in a contract by signing that contract, even if the party did not read the terms") (citation omitted).

The Complaint here is completely devoid of *any* allegations of coercion or duress in connection with plaintiff's signing of the ATSD Registration Form.  On the contrary, the record demonstrates that plaintiff was fully informed as to the nature and scope of the ATSD and the price she was being charged to participate in the program, which was separately listed on the PSA as "$295.00".  (Complaint, Exhibit "A")  Nor does the Complaint allege that any part of the document was drafted using small or inconspicuous text, or that the directive to read the reverse side was buried in boilerplate fine print (it was in fact printed in all capital letters and in bold type).  Consequently, settled principles compel finding that plaintiff is "estopped to deny the recitals contained in the agreement," including the terms and conditions contained on the reverse side of the Form, which plaintiff acknowledges having read and understood.  *Banner Aircraft*

*Resales, Inc. v. Aspen Jet Sales, Inc.*, No. 87-6606, 1991 U.S. Dist. LEXIS 14703, at *20 (N.D. Ill. Oct. 15, 1991) (citing *Matter of Pubs. Inc. v. Bank of Illinois in Champaign*, 618 F.2d 434, 438 (7th Cir. 1980). Accord *Ocor, supra*, 682 F. Supp. at 93 ("In the instant case, Ms. Hickman purportedly signed the PAK 2000 forms, which stated next to her signature that the buyer agreed to the conditions on the back of the form. . . Thus, § K [printed on the reverse side of the document] constitutes part of the agreement between the parties even if Ms. Hickman was not aware of the § K provision . . .").

Under the above circumstances, where the discount being offered by Fuccillo Hyundai after a theft is actually *less* than the discount offered in the example opined upon and approved by the Insurance Department in 1999, and where the program's availability *explicitly depends* on Fuccillo Hyundai's ability to earn a profit on the sale of the replacement vehicle, plaintiff's conclusory claim that the program is insurance and that the Fuccillo defendants therefore violated the *Insurance Law* should be rejected.  Put simply, the ATSD fully comports with applicable regulatory standards as deemed by the administrative agency with primary jurisdiction over such questions and plaintiff's first, second, third, fifth, sixth and seventh causes of action – *the legal viability of which necessarily depends on a finding that the ATSD is insurance and not a warranty*[14] – should be dismissed.

---

[14]      *See*, *e.g.*, Complaint, ¶¶ 53 (first cause of action; alleging that the Fuccillo defendants' conduct has "denied Plaintiff and members of the Class the mandatory protections afforded other purchasers of *insurance* in New York . . .") (emphasis supplied); 60 (second cause of action); 62 (third cause of action; "In selling the ATSD to Class members, Defendants affirmatively and deceptively misrepresented the ATSD as 'not an *insurance* policy". . . ) (emphasis supplied); 72 (fifth cause of action; "The relationship between a purchaser of *insurance* and an *insurance* agent is a fiduciary relationship") (emphasis supplied); 82 ("Under the TILA, any *property insurance like the ATSD* must be included in the 'finance charge,' not the 'amount financed'. . . ) (emphasis supplied).

C.     **District Courts in Other Jurisdictions Have Considered and Rejected the Claim That Automobile Theft Deterrent System Discount Guarantees Constitute Insurance.**

Since on or about 2007, numerous District Courts have rejected the very claim asserted by plaintiff here – that automobile theft deterrent discount programs constitute insurance.  On each occasion, the District Courts held that the discount programs were merely performance guarantees furnishing some remedy to the purchasers in the event that the Etch or its equivalent did not function as promised, *i.e.*, failed to deter theft of the vehicle.

For example, in *Pope v. TT of Lake Norman, LLC*, *supra*,

> [T]he Etch product . . . consists of a small number applied to the windshield and other windows of a vehicle with a kit . . . Etch also includes a guarantee by Fidelity to pay $5,000 to any customer whose car is stolen and not recovered within 30 days.  Because of this, Plaintiffs allege that Etch constitutes "insurance" and was sold by Lake Norman without a license from the state insurance department.

505 F. Supp. 2d at 310.  In *Pope*, moreover, as is alleged here, "customers do not have the option to purchase a vehicle from the Defendant that does not contain Etch."  *Id*.  (Complaint, ¶ 16)

Relying on an advisory letter-opinion issued by the North Carolina Attorney General, the District Court concluded that Etch was a warranty and not insurance.  *Id*. at 312.  In so holding, the District Court enumerated several dispositive factors.  First, "[T]here [was] no allegation of an additional, dedicated price for the guarantee," *i.e.*, it was included in the purchase price of the Etch product (*id*. at 312), which is exactly the case here, where the $295.00 charge covers the cost of the Etch and participation in the ATSD program.  (Complaint, Exhibit "B")  Second, the payment to the purchaser under the program in the event of vehicle theft came from Fidelity, "which Plaintiffs allege is also the seller of Etch."  *Id*.  Similarly here, the credit to a purchaser whose vehicle is stolen is given by Fuccillo Hyundai, from whom the new vehicle must be purchased, and from whom the ATSD was purchased in the first instance.  Indeed, there is no

allegation whatsoever that plaintiff Seekamp had any direct dealings with co-defendant Universal, whose sole obligation is to indemnify Fuccillo Hyundai if it is called upon to grant a new vehicle credit to a consumer after a theft.  Third, the District Court adopted the distinction drawn by the North Carolina Attorney General, that "a warranty covers defects in the article sold while insurance indemnifies against damage from perils outside the article."[15]  *Id.*  (citing *GAF Corp. v. County School Bd.*, 629 F.2d 981, 983 (4th Cir. 1980).   That is the case here.  The ATSD does little more than back-up -- *i.e.*, guarantee -- the performance of the Etch and decals. It cannot by any reasonable definition be considered theft insurance, as held by the District Court in *Pope*, *supra*.

At least two other District Courts have dismissed Complaints raising allegations identical to those asserted by plaintiff here.  For example, the District Court in *Moroz v. Alexico Corp.*, *supra*, rejected plaintiff's claim that defendants engaged in deceptive business practices when they marketed and sold "'Premium Care Theft Gard' – a product intended to deter car theft and aid in the recovery of stolen vehicles" as a guarantee rather than as insurance.  2008 U.S. Dist. LEXIS 1166, at *4-5.  The District Court determined that "Theft Gard" was not insurance, in part because there was no fortuitous event triggering payment under the Etch product contract:

> [T]he arrangement only seeks to recompense a consumer because the VIN [vehicle identification number] etching has failed to perform as expected and the vehicle could not be recovered.  Therefore, incidents of non-recovery of a vehicle essentially indicate that there has been a manufacture

---

[15]     The district court in *Pope*, *supra*, also rejected plaintiff's claim that selling the Etch as a non-optional product was actionable, holding:

> [T]he RIC clearly showed a charge of $349 for Etch, and the Plaintiffs were told by the Defendant's salespersons that Etch was not optional, but was included on every vehicle. Defendant's decision to include Etch on every vehicle was a business decision and any customer who insisted on purchasing a vehicle without Etch was free to buy from another dealership.

*Id.* at 313.  Here, as in *Pope*, "there is no allegation that the Defendant did not disclose the inclusion of Etch, or misrepresented that it was required for financing."  *Id.*  Consequently, the fact that the ATSD may or may not have been a mandatory purchase is legally irrelevant to the Complaint's sufficiency.

> or design defect with the VIN etching and no fortuitous event has occurred.  For these reasons, the VIN etching warranties . . . do not appear to constitute insurance products under the . . . insurance laws."

*Id*. at *9-10.  After reviewing the program as alleged in the Complaint, the District Court concluded that the "'overall objective' of the arrangement is simply to warrant PCTG's performance."  *Id*. at *10-11 (citing *Pope v. TT of Lake Norman, LLC*, *supra*, 505 F. Supp. 2d 309).  Accord *Falkenberg v. Alexico Corp*., *supra*, 2008 U.S. Dist. LEXIS 46821, at *8 ("The fact that there may be some shifting of the risk of loss from the customer to the manufacturer is not enough to transform the essential nature of the product.  Because Defendants' guarantee is based on Theft-Gard's performance and not merely the happening of a future occurrence, it constitutes a warranty and not insurance").

The decisions summarized, *supra*, which arose in factual settings nearly identical to those alleged in the instant Complaint, should control here and should compel the Court to find that plaintiff cannot prevail on her claim that the ATSD qualifies as insurance.   Among other requirements not met here, New York *Insurance Law* § 1101(a)(1) requires that indemnification under an insurance policy be "dependent upon the happening of a fortuitous event" – a requirement that cannot be met here for the reasons stated by the District Courts in *Pope*, *Moroz* and *Falkenberg*, *supra*.  A finding here that the ATSD is not insurance is fully consonant with the weight of case law authority on the issue, and should completely extinguish plaintiff's first, second, third, fifth, sixth and seventh causes of action, all of which depend *entirely* on the erroneous predicate claim that the ATSD constitutes insurance and not a mere warranty of performance.[16]

---

[16]      *See*, *e.g.*, Complaint, ¶¶ 48-56 (first cause of action); 60 (second cause of action); 62-64 (third cause of action); 72-75 (fifth cause of action); 77-78 (sixth cause of action); 82-86 (seventh cause of action).  Indeed, an independent and sufficient basis for dismissing plaintiff's second cause of action, styled "Conspiracy to Commit Consumer Fraud," is that New York State does not recognize a separate cause of action for conspiracy of any kind.

POINT III

**THE COMPLAINT FAILS TO STATE A CAUSE OF
ACTION FOR VIOLATION OF THE MAGNUSON-MOSS
WARRANTY ACT**

Plaintiff's fourth cause of action, which claims that the ATSD was presented to plaintiff without any "obvious terms or conditions" (Complaint, ¶ 69), suffers from at least two fatal defects. First, for the reasons set forth in Point II, supra, plaintiff cannot avoid the consequences of her own signed acknowledgement indicating that she had "read and fully understand[s] both sides of this agreement" – an acknowledgment which appears immediately beneath the heading **"THIS GUARANTEE IS SUBJECT TO THE TERMS AND CONDITIONS PROVIDED ON THE REVERSE SIDE."** (Complaint, Exhibit "A") Obviously, if the Court finds, as it should for the reasons previously stated, that plaintiff is bound by her signature, freely given under the circumstances, then plaintiff's MMWA claim is completely baseless.

More fundamentally, plaintiff's failure to suffer any injury proximately caused by the Fuccillo defendants alleged failure to disclose the terms and conditions of the ATSD before plaintiff signed the Registration Form constitutes an independent and sufficient basis for dismissal of the MMWA claim.

A.    **Plaintiff's Fourth Cause of Action Should be Dismissed Based on Plaintiff's Failure to Comply with the Statutory Prerequisites.**

The Magnuson-Moss Warranty Act defines a written warranty as:

Any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action

(..continued)
*See, e.g., Papworth v. Steel Hector & Davis,* No. 06-1237, 2007 U.S. Dist. LEXIS 72864 (N.D.N.Y. Sept. 30, 2007) (dismissing civil conspiracy case because "New York does not recognize an independent tort to recover for civil conspiracy.") (citations omitted).

> with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise or undertaking becomes part of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6)  The Fuccillo defendants do not dispute plaintiff's contention that the ATSD qualifies as a warranty.  (Complaint, ¶ 65) Accord *Moroz v. Alexico Corp.*, *supra*, 2008 U.S. Dist. LEXIS 1166, at *14 ("Included in their sale of [Etch] is Defendant's promise to take remedial action if the product fails to work.  [Etch] thus meets the definition of a warranty under federal law").

Section 2310 of the Act, which controls here,[17] authorizes suit by "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation of this chapter."  15 U.S.C. § 2310.  However, no action for breach of an express or implied warranty may be brought under the Act "unless the person obligated under the warranty . . . is afforded a reasonable opportunity to cure such failure to comply."  15 U.S.C. 2310(e). Numerous courts have strictly construed the statutory requirement that before bringing suit for breach of warranty, the consumer must give persons obligated under the warranty a reasonable opportunity to cure their alleged failure to comply with the obligations at issue.  *See, e.g.*, *Walton v. Rose Mobile Homes*, LLC, 298 F.3d 470, 474 (5th Cir. 2002); *Cunningham v. Fleetwood Homes of Ga.*, 253 F.3d 611, 618 (11th Cir. 2001); *Heller v. Shaw Indus.*, No. 95-7657, 1997

---

[17]     In *Atchole v. Silver Springs Imports, Inc.*, 379 F. Supp. 2d 797, 802 (D. Md. 2005), the District Court observed:

> It is important to note that, while the [MMWA] provides a set of binding requirements governing the contents and disclosure of warranties, § 2302 does not expressly contain an independent private right of action or provision for statutory damages.  **Plaintiff has not cited to any case law to support the proposition that a violation of § 2302 or its accompanying regulations should automatically entitle a buyer to exemplary or other damages.**  Rather, private enforcement of this and all other provisions of the MMWA is governed by § 2310(d) . . . .**Thus, in order to claim monetary relief under this section, Plaintiff is required to show that [s]he has sustained actual damage, proximately caused by Defendant SSI's failure to disclose the terms of the warranty in accordance with the MMWA.** (emphasis supplied)

U.S. Dist. LEXIS 12399, at *18 (E.D. Pa. Aug. 18, 1997) ("[A] plaintiff may not maintain a
Magnuson-Moss Act claim unless plaintiffs have given defendant an opportunity to cure the
alleged breach") (citing 15 U.S.C. § 2310(e)).  *See also Stoebner Motors, Inc. v. Automobil
Lamborghini S.P.A.*, 2007 U.S. Dist. LEXIS 47095 (D. Hi. June 28, 2007); *Atchole v. Silver
Spring Imports, Inc.*, 379 F. Supp. 2d 797, 802 (D. Md. 2005).

By contrast here, plaintiff cannot satisfy the demand requirement because there is no
allegation in the Complaint that plaintiff's 2007 Hyundai Elantra was ever stolen – the
fundamental prerequisite to exercising any rights or making any demands under the ATSD.  Put
simply, because her vehicle has not been stolen, plaintiff's rights under the very warranty she
complains of have not ripened.  Absent a demand for compliance, the Fuccillo defendants have
not been given any opportunity to cure the alleged violation of the MMWA, which cure would
constitute little more than furnishing plaintiff with the terms and conditions of the ATSD that she
failed to read in the first instance.  As the District Court stated in dismissing plaintiff's claims in
*Moroz*, *supra*:

> In the instant case, however, where the warranty was never breached or
> even implicated, there is no way for the warrantor to "cure" any violation.
> Moreover, ***requiring that a warrantor be allowed to cure a breach
> necessarily means that the type of damages recoverable under § 2310(d)
> are those resulting from an uncured breach – damages that simply do
> not exist in the instant case***.

2008 U.S. Dist. LEXIS 1166, at *18.  (Emphasis supplied).

**1.   Plaintiff Cannot Prove any Injury Proximately Caused by the Alleged
        Violation.**

To state a cause of action for violation of section 2302 of the MMWA, plaintiff must
plead the she has sustained actual damages, proximately caused by the Fuccillo defendants'
alleged failure to disclose the terms of the ATSD.  *Atchole*, *supra*, 379 F. Supp. 2d at 802.

Indeed, as recognized by the District Court in *Moroz*, *supra*, "courts have rejected attempts to base a MMWA claim solely on the defendant's failure to comply with § 2302's disclosure requirements." 2008 U.S. Dist. LEXIS 1166, at *16. Plaintiff's fourth cause of action here, which reduces to little more than a discredited claim for an alleged technical violation of § 2302 of the MMWA, should be dismissed because "those courts that have addressed the question have held that in the absence of a breach [of warranty], ***the failure to describe a warranty adequately does not cause "damages" within the meaning of the MMWA***." *Id*., at *16-17 (emphasis supplied) (citing *Atchole*, *supra*, 379 F. Supp. 2d at 802; *Gates v. Chrysler Corp*., 397 So. 2d 1187, 1188 (Fla. Dist. Ct. 1981)).[18] In other words, plaintiff's allegations which amount to a mere "technical" violation of § 2302 are insufficient to avoid dismissal on a Rule 12(b)(6) motion to dismiss.

Indeed, the case for dismissal of plaintiff's MMWA claim is even more compelling here, since plaintiff has not yet attempted to exercise any rights under the ATSD. Therefore, plaintiff does not know if the allegedly missing terms and conditions would have any adverse impact or hers, or, for that matter, any other putative class plaintiff's ability to obtain the full benefits of the program, much less whether she has sustained actual damages as a result of the Fuccillo defendants' conduct. Instead, she predicates her statutory claim under the MMWA on the legally insufficient fact of mere nondisclosure: "[B]ecause it is not clear if a cause of action exists solely based on nondisclosure of required elements, and Plaintiff has alleged neither a breach of

---

[18]    In *Gates*, *supra*, the court held that the failure to include required terms in the warranty was a "technical" violation of the MMWA and did not contribute to plaintiff's damages. 397 So. 2d at 1188.

the warranty nor actual damages, this claim under the Magnuson-Moss Act fails." *Falkenberg v. Alexico Corp., supra*, 2008 U.S. Dist. LEXIS 46821, at *13.[19]  The same reasoning applies here.

## CONCLUSION

For the reasons stated in this Memorandum of Law, Fuccillo Automotive, Inc. and Fuccillo Lincoln Mercury Hyundai, Inc., d/b/a Fuccillo Hyundai, respectfully submit that plaintiff's Complaint fails to state any cause of action upon which relief may be granted, and that this Court should therefore dismiss each and every count in the Complaint with prejudice. Alternatively, the Court should dismiss plaintiff's counts arising under federal law (fourth and seventh causes of action), and decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims.[20]

**DATED:**  February 17, 2009                      **HISCOCK & BARCLAY, LLP**

                                                  /s *William A. Hurst*
                                    By: _____
                                                  William A. Hurst
                                                  Bar Roll No. 510271
                                                  Gabriel M. Nugent
                                                  Bar Roll No. 513947

                                    *Attorneys for Defendants*
                                    Fuccillo Automotive, Inc. and
                                    Fuccillo Lincoln Mercury Hyundai, Inc.,
                                    d/b/a Fuccillo Hyundai
                                    Office and Post Office Address
                                    50 Beaver Street
                                    Albany, New York 12207
                                    Telephone: (518) 429-4293

---

[19]     The same actual harm requirement applies to plaintiff's TILA claim (seventh cause of action), but cannot be satisfied here.  *See Picht v. Stillwater Ford-Lincoln-Mercury, Inc.*, No. 97-1839, 1998 U.S. Dist. LEXIS 22766, at *11-12 (D. Minn. Aug. 17, 1998) ("Although Defendant's conduct may arguably amount to a per se violation of TILA, Plaintiff has not made a sufficient showing of actual damages.  Actual damages under the TILA are awarded 'in compensation for actual or real loss or injury.'") (internal citation omitted)

[20]     *See, e.g., Grondahl v. Merritt & Harris, Inc.*, 964 F.2d 1290, 1294 (2d Cir. 1992) (holding that retention of supplemental jurisdiction over pendent state-law claims after dismissal of foundational federal claims from suit would constitute an abuse of discretion.)

## CERTIFICATE OF SERVICE

I, William A. Hurst, certify,  that on February 17, 2009, I filed a copy of Fuccillo Automotive, Inc.'s and Fuccillo Lincoln Mercury, Inc.'s Motion to Dismiss the Complaint Pursuant to *Fed. R. Civ. P.* 12(b)(6), Memorandum of Law in Support and Affidavit of John Testone with exhibits with the Clerk of the Court via the CM/ECF system which gave notice to the following attorneys:

> LEMBERG & ASSOCIATES, LLC
> SERGEI LEMBERG, ESQ.
> 1100 SUMMER STREET, 3RD FLOOR
> STAMFORD, CT 06905
>
> LAW OFFICES OF MARTIN MUSHKIN
> MARTIN MUSHKIN, ESQ.
> 1100 SUMMER STREET, 3RD FLOOR
> STAMFORD, CT 06905

/s *William A. Hurst*
_____
William A. Hurst

## CERTIFICATE OF SERVICE

I, William A. Hurst, certify, as counsel for Fuccillo Automotive, Inc. and Fuccillo Lincoln-Mercury, Inc., d/b/a Fuccillo Hyundai, that on February 17, 2009, a true and correct copy of Fuccillo Automotive, Inc.'s and Fuccillo Lincoln Mercury, Inc.'s Motion to Dismiss the Complaint Pursuant to *Fed. R. Civ. P.* 12(b)(6), Memorandum of Law in Support and Affidavit of John Testone with exhibits were served on co-defendant Universal Automotive Services, Inc., by regular first-class mail, in accordance with the Federal Rules of Civil Procedure.

/s *William A. Hurst*
_____
William A. Hurst