UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Heidi Seekamp, *On Behalf of Herself and All Others Similarly Situated,*

                   *Plaintiff,*

   v.

Fuccillo Automotive Group, Inc.
Fuccillo Lincoln Mercury Hyundai, Inc.,
Universal Automotive Services, Inc.

               *Defendants.*

Civil Action No.: 1:09-CV-0018 (LEK/DRH)

**PLAINTIFF'S OPPOSITION TO DEFENDANT FUCCILLO
AUTOMOTIVE INC.'S AND FUCCILLO
LINCOLN MERCURY HYUNDAI, INC.'S
MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**LEMBERG & ASSOCIATES LLC**
1100 Summer Street
Stamford, Connecticut 06905
Telephone 203.653.2250

**Of Counsel**

**LAW OFFICES OF MARTIN
MUSHKIN**
1100 Summer Street
Stamford, Connecticut 06905
Telephone 203.653.2250

Sergei Lemberg, Esq.
Martin Mushkin, Esq. (of-counsel)

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................. 1

RELEVANT FACTUAL BACKGROUND ......................................................... 4

    A.  The Parties ................................................................................................ 4

ARGUMENT ...................................................................................................... 5

  POINT I – THE COURT CANNOT NOW MAKE A DETERMINATION WHETHER ATSD IS INSURANCE ..................................................................... 5

    A.  Legal Standard for a 12(b)(6) Motion to Dismiss ...................................... 5

    B.  The Court Cannot Make a *Sue Generis* Determination that ATSD is Not Insurance Without Prematurely Converting This Motion Into a Motion for Summary Judgment........................... 6

  POINT II – THE COMPLAINT ADEQUATELY PLEADS THAT ATSD IS ILLEGAL INSURANCE ...................................................................................................... 9

    A.  Under a Plain Meaning Reading of the Relevant Statutes, the Complaint Adequately Pleads ATSD is an Insurance Contract ................................................ 9

    B.  Defendants Do Not Fall Within Group Policy Exception ........................... 11

    C.  The Insurance Department Has Uniformly Held Programs Similar to ATSD to Be Insurance 12

    D.  Fuccillo Defendants Have No Defense ...................................................... 16

        1.  Defendants Flunk the Replacement Cost Exception ...................... 16

        2.  June 22, 1999, Letter Is Old News .............................................. 17

    E.  Cases from Other Jurisdictions Are Irrelevant ........................................... 18

<u>POINT III</u> – COMPLAINT'S FIRST, SECOND, THIRD, FIFTH, SIXTH AND SEVENTH CAUSES OF ACTION STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED ................................. 19

    A.   Count I of the Complaint Sufficiently Alleges a Violation of N.Y. GBL § 349...................... 19

    B.   Count II of the Complaint Sufficiently Alleges a Conspiracy to Commit Consumer Fraud .... 21

    C.   Count III of the Complaint Sufficiently Alleges a Breach of Contract..................................... 22

    D.   Count V of the Complaint Sufficiently Alleges a Breach of Fiduciary Duty Against Fuccillo Automotive and Fuccillo Hyundai........................................................................................... 23

    E.   Count VI of the Complaint Sufficiently Alleges Unjust Enrichment ....................................... 24

    F.   Count VII of the Complaint Sufficiently Alleges a Violation of the Truth in Lending Act ..... 25

CONCLUSION ................................................................................................................................. 25

**TABLE OF AUTHORITIES**

**Cases**

40 Gardenville, LLC v. Travelers Property Cas. of America, 387 F. Supp. 2d 205, 211 (W.D.N.Y. 2005) ................................................................................................................................10

80 Broad St. Co. v. United States Fire Ins. Co., 88 Misc. 2d 706, 389 N.Y.S.2d 214, 215 (1975) .10

Alexandra Rest. v. New Hampshire Ins. Co. of Manchester, 272 A.D. 346, 351 (1st Dept. 1947)...3

Amaker v. Weiner, 179 F.3d 48, 50 (2d Cir. 1999)..........................................................................6

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ....4

Best Cellars Inc. v. Grape Finds at Dupont, Inc., 90 F. Supp. 2d 431, 446 (S.D.N.Y. 1980)..........21

Brentwood Pain & Rehabilitation Services, P.C. v. Allstate Ins. Co., 508 F. Supp. 2d 278, 290 (S.D.N.Y. 2007)...........................................................................................................................12

Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008) ........................................................6

Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust, No. 1:06-CV-871, 2007 WL 951565, *8 (N.D.N.Y. March 27, 2007) ......................................................................................20

Cortec Indus., v. Sum Holding, L.P., 949 F.2d 42, 48 (2d Cir. 1991)...............................................9

Diesel Motors Co., Inc. v. Kaye, 345 N.Y.S.2d 870, 874 (N.Y. Co. Ct. 1973) ...............................23

East Coast Mgmt. Ltd. V. Genatt Assocs., Inc., 9 Misc. 3d 440, 445 (N.Y. Sup. Ct. 2005) ...........24

Falkenberg v. Alexico Corp., 2008 WL 2478384 (D.N.J. June 17, 2008) .......................................19

Global Network Commc'ns., Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006).........6, 8

Goshen v. Mutual Life Ins. Co. of New York, 98 N.Y.2d 314, 323 (2002)......................................19

Henneberry v. Sumitomo Corp. of Am., 415 F. Supp. 2d 423, 459 (S.D.N.Y. 2006) ....................23

Insurance Co. of North America v. Dayton Tool & Die Works, Inc., 57 N.Y.2d 489, 498-99 (N.Y.

   App. Div. 1982) ....................................................................................................................3

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164,

   122 L. Ed. 2d 517 (1993)....................................................................................................5

Lewis v. Rosenfeld, 138 F. Supp. 2d 466, 479 (S.D.N.Y. 2001) ......................................................21

Lifanda v. Elmhurst Dodge, Inc., 237 F.3d 803, 805 (7th Cir.  2001) ..............................................25

Moroz v. Alexico Corp., 2008 WL 109675 (E.D. Pa. Jan. 7, 2008) ..................................................18

Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Maryland, 763 F. Supp. 28, 32-33 (S.D.N.Y. 1991)

   ..............................................................................................................................................8

Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank, 392 F.3d 520, 525 (2d Cir.  2004) ............................22

NY State Elec. & Gas Corp. v. Lexington Ins. Co., 204 A.D.2d 226, 617 N.Y.S.2d 43 (1st Dept.

   1994) ..................................................................................................................................10

Petro Inc. v. Serio, 9 Misc. 3d 805, 804 N.Y.S. 598, 2005 N.Y. Slip Op. 25310 (Sup. Ct. N.Y.

   County 2005) .....................................................................................................................19

Pope v. TT of Lake Norman, LLC d/b/a Lake Norman Dodge, 505 F. Supp. 2d 309 (W.D.N.C.

   2007) .................................................................................................................................18

Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir.  2007)..............6

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 375 F. Supp. 2d 141, 154 (E.D.N.Y.

   2005) .................................................................................................................................24

State Farm Mut. Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313, 321, 794 N.Y.S.2d 700, 827 N.E.2d 758 (2005) ........................................................................................................................12

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 152 L. Ed. 2d 1 (2002) .......................................5

**Statutes**

N.Y. Ins. Law § 1101(a)(1) ...................................................................................................10

N.Y. Ins. Law § 1101(a)(2) ...................................................................................................10

NY BCL § 304...........................................................................................................................3

**Other Authorities**

Ins. Dep't, Opinions of the Office of Gen. Counsel, *Anti-theft program*, No. 02-03-22, issued March 25, 2002 ...........................................................................................2, 13, 16, 17

Ins. Dep't, Opinions of the Office of Gen. Counsel, *Automobile Tire and Wheel Road Hazard and Other Aftermarket Programs*, No. 04-02-22, issued February 20, 2004 ...........................2, 14, 15

Ins. Dep't, Opinions of the Office of Gen. Counsel, *Non-admitted Insurer's Premium Quotes and Broker of Record Letters*, No. 03-12-01, issued December 01, 2003...........................................14

Ins. Dep't, Opinions of the Office of Gen. Counsel, *Paintless Dent Repair and other Aftermarket Programs*, No. 08-04-18, issued April 09, 2008..........................................................................13

Ins. Dep't, Opinions of the Office of Gen. Counsel, *Procurement of Product or System Group Insurance by Excess Line Broker*, No. 04-10-09, issued October 13, 2004. ...............................15

Ins. Dep't, Opinions of the Office of Gen. Counsel, *Risk Retention and Theft Protection Program*, No. 03-05-18, issued May 20, 2003 ......................................................................................13

Ins. Dep't, Opinions of the Office of Gen. Counsel, *Sale of Etching Program with Insurance*, No. 02-04-24, issued April 23, 2002 ..................................................................................................14

Ins. Dep't, Opinions of the Office of Gen. Counsel, *Theft deterrent discount program*, No. 01-08-18, issued August 29, 2001 ..................................................................................................2, 3, 16

Letter from Gregory V. Serio, First Deputy Superintendent, N.Y. Ins. Dep't, dated July 01, 1999, Bill Jacket, L. 1999, Ch 187 ..................................................................................................11

Letter from Senator James S. Alesi, Chairman, Commerce, Econ. Dev. & Small Bus., dated June 25, 1999, Bill Jacket, L. 1999, Ch 187 ..................................................................................................11

## INTRODUCTION

The Complaint adequately alleges that the Defendants engaged in the sale of an unlicensed and illegal product and otherwise deceived the Plaintiff and other New York consumers.

Fuccillo Automotive Group, Inc. ("Fuccillo Auto") and/or Fuccillo Lincoln Mercury Hyundai, Inc. ("Fuccillo Hyundai," and together with Fuccillo Auto, the "Fuccillo Defendants") contracted with Universal Automotive Services Inc. ("Universal") to sell Universal's Automotive Theft and Security Discount ("ATSD") program to purchasers of Fuccillo Defendants' vehicles. (Compl. ¶¶ 18, 25.) (Def.s' Mem. Mot. Dismiss at 2.)[1] The Fuccillo Defendants then sold the ATSD program to the Plaintiff and each member of the plaintiff class for $295.00. (Compl. ¶ 16.)[2] At no time did Universal obtain a license from the State of New York to act as an insurer. (Compl. ¶ 32.)

For $295.00, the Defendants etched the vehicle's VIN number or another decal onto its windows. (Compl. ¶ 3.) By law the vehicle had already had its VIN permanently installed on eighteen specific locations prior to being sold. 49 C.F.R. § 541.5. The fee was an overcharge because it avoided the Insurance Department's regulations. (Compl. ¶ 52.) The Theft-deterrent claim of the ATSD is itself disputed (Compl. ¶ 2 n.1.) and it is unclear where, if anywhere, the VIN or other decal numbers were registered once they were etched onto the vehicles.

The ATSD was a great deal for the Defendants.  In the unlikely event that within three years, the vehicle was stolen or declared a total loss because of theft, the Plaintiff would be entitled to a discount of up to $2,000.00 on the purchase of a replacement vehicle from Fuccillo. (Compl. ¶¶ 20, 27, 53.) Most consumers, such as the Plaintiff, had no idea what they had purchased. (Compl. ¶¶ 25, 27.) It is now clear that the Fuccillo Defendants would then be indemnified by

---

[1]     Plaintiff has filed a Request for Entry of Default Judgment against Universal. (*filed* Req. for Entry of Default, April 10, 2009,  Docket No. 11)

[2]     Plaintiff's counsel has reason to believe that the price of the ATSD program varied from sale to sale, though the certificates remained the same.  The variation in pricing will be reflected in an amendment to the complaint.

Universal for any discount provided under the ATSD.  (Def.s' Mem. Mot. Dismiss at 2, 19.) The Complaint alleges that this arrangement is an illegal insurance contract in New York State. (Compl. ¶¶ 20, 64.)

The Fuccillo Defendants base their 12(b)(6) motion on a misreading of the relevant law and of the very documents attached in the moving papers.  They attach two Department of Insurance private letters, but one is irrelevant, and the other they ignore.  They omit the many truly public opinions of the Insurance Department that say repeatedly, explicitly and clearly that VIN etching products and similar schemes constitute regulated insurance under New York law. *See* Ins. Dep't, Opinions of the Office of Gen. Counsel, *Theft deterrent discount program*, No. 01-08-18, issued August 29, 2001; Ins. Dep't, Opinions of the Office of Gen. Counsel, *Anti-theft program*, No. 02-03-22, issued March 25, 2002; Ins. Dep't, Opinions of the Office of Gen. Counsel, *Automobile Tire and Wheel Road Hazard and Other Aftermarket Programs*, No. 04-02-22, issued February 20, 2004.

A VIN etch product can only be sold in two limited circumstances in New York.  First it can be sold as a group policy insurance program issued by a licensed insurer under Section 3446 of the New York Insurance Law.  There is no claim by Defendants that a properly approved group policy was in place here.  There is not even a legitimate insurer, as Universal has defaulted in this case. (*filed* Req. for Entry of Default, April 10, 2009,  Docket No. 11)

Second, an ATSD program can be sold as a discount program, under the so-called "Cost of Replacement" exception.  A dealer may sell etch products so long as the discount it provides leaves the dealer with a profit on the sale of the replacement vehicle.  But the dealer may not be indemnified for the amount of the discount:

2

> It must be noted that insurance that would indemnify the dealer or the administrator for the amount of the discount is not included among the kinds of insurance authorized in New York under N.Y. Ins. Law § 1113.[3] Ins. Dep't, Opinions of the Office of Gen. Counsel, *Theft Protection Program*, No. 01-08-18, issued August 29, 2001.[4]

The private letters supplied by Fuccillo Defendants in the moving papers similarly warned

Universal:

> It must also be noted that there is no kind of insurance that may be sold in New York that would indemnify the dealer for the amount of the discount. *Letter of the Dept. of Ins. D. 06-22-99 to Universal.* (Def.s' Mot. Dismiss, Exhibit C.)

The Fuccillo Defendants admit to violating this exception to the insurance laws:

> ... Universal ... as pertinent herein, indemnifies Fuccillo Hyundai in the event that Fuccillo Hyundai is required to issue a credit toward a new vehicle purchase pursuant to the terms of the ATSD described *infra*. (Def.s' Mem. Mot. Dismiss at 2.)

And again the Fuccillo Defendants state:

> ...co-defendant Universal, whose sole obligation is to indemnify Fuccillo Hyundai if it is called upon to grant a new vehicle credit to a consumer after a theft. (Def.s' Mem. Mot. Dismiss p. 19.)

The reason for the Insurance Department's prohibition against the dealer being indemnified

is clear – to indemnify means to insure. "To indemnify" means "that the party insured is entitled to

be compensated for such loss as is occasioned by the perils insured against . . . " <u>Alexandra Rest.</u>

<u>v. New Hampshire Ins. Co. of Manchester</u>, 272 A.D. 346, 351 (1st Dept. 1947); <u>Insurance Co. of</u>

<u>North America v. Dayton Tool & Die Works, Inc.</u>, 57 N.Y.2d 489, 498-99 (N.Y. App. Div. 1982).

It is noteworthy that the very use of "indemnity" in the name of a business entity in New York is

prohibited without a license from the Department of Insurance. NY BCL § 304.

Incongruously, the Fuccillo Defendants ask the Court to dismiss the complaint against

them, while openly admitting violating the very exception to the insurance laws on which they

---

[3]   N.Y. Ins. L. § 1113 is entitled "Kinds of Insurance Authorized".

[4]   This is a public document.  It, and other such opinions cited in this brief by the Plaintiff, are available on the New York Department of Insurance's website.

rely. The Fuccillo Defendants' motion to dismiss as to all Counts (other than Magnuson-Moss discussed *infra*) must therefore fail because there is no grounds for dismissal.  They have failed to show that a claim and consistent facts have not been adequately stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Indeed, their papers squarely admit that the program, as administered, violates the New York Insurance Law.

Moreover, while Defendants' sale of insurance without a license serves as a major lynch pin of the Complaint, the Complaint alleges more.  The Complaint alleges that the Plaintiff was overcharged for the ATSD (Compl. ¶ 31, 52.), that she was misled into buying it (Compl. ¶ 25, 56.), that Defendants' practices violated the New York General Business Law § 349(a), that the Defendants conspired to commit consumer fraud (Compl. ¶ 60.), that Defendants are in breach of contract (Compl. ¶ 62.), that the Defendants breached their duties as fiduciaries (Compl. ¶ 73.), that the Defendants were unjustly enriched (Compl. ¶ 78.), and that the Defendants violated the Federal Truth in Lending Act (Compl. ¶ 84.).  These allegations independently support the causes of action pled in the Complaint.

## RELEVANT FACTUAL BACKGROUND

### A.   The Parties

Heidi Seekamp (hereinafter "Seekamp") is an individual residing in Latham, a hamlet in upstate New York. (Compl. ¶ 11.)

Defendant Fuccillo Auto is a New York corporation with its principal place of business in the Town of Adams, New York. (Compl. ¶ 12.) (Def.s' Mem. Mot. Dismiss at 2.)[5]  Fuccillo Hyundai, is a New York corporation with a principal place of business also in the Town of Adams,

---

[5]      The moving papers suggest that "It's Huge, Inc.," rather than Fuccillo Auto, is the parent corporation of Fuccillo Hyundai and other Fuccillo-owned dealerships.  Defendants' counsel has indicated his willingness to substitute It's Huge in place of Fuccillo Auto.

New York. (Compl. ¶ 13.) Fuccillo Hyundai is a subsidiary of non-party parent corporation "It's

Huge, Inc.," and does business as an automotive dealership at its retail location 4101 State Street,

Schenectady, New York under its trade name "Fuccillo Hyundai." (Testone Aff. ¶ 3.) (Compl.

¶ 13.) (Def.s' Mot. Dismiss, Exhibit A.)[6]

Defendant Universal is an entity incorporated in New Jersey. (Compl. ¶ 15.) (Def.s' Mem.

Mot. Dismiss at 2.) Universal is not a licensed insurance provider in the state of New York.

(Compl. ¶ 4.)  However, that does not stop Universal from acting as an insurer; as noted, when

Fuccillo is required to pay a customer under the ATSD agreement, Universal indemnifies Fuccillo.

(Def.s' Mem. Mot. Dismiss at 2, 19.)  Universal has defaulted in this case. (*filed* Req. for Entry of

Default, April 10, 2009,  Docket No. 11)

## ARGUMENT

### POINT I
### THE COURT CANNOT NOW MAKE A
### DETERMINATION WHETHER ATSD IS INSURANCE

**A.**   **Legal Standard for a 12(b)(6) Motion to Dismiss**

The complaint far exceeds what is necessary to survive a motion to dismiss.  To survive a

12(b)(6) motion, a complaint must include "a short and plain statement of the claim showing that

the pleader is entitled to relief." Swierkiewicz, 534 U.S. at 512. The statement must give the

defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Id. In

reviewing the motion the court must accept as true all the factual allegations in the complaint.

Leatherman, 507 U.S. at 164.

---

[6]      The Complaint sufficiently alleged facts to support holding parent corporation of Fuccillo Hyundai liable. As a matter of law the complaint must allege such facts which show the pleader is entitled to relief. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 152 L. Ed. 2d 1 (2002). On a 12(b)(6) motion to dismiss, all allegations in the complaint must be accepted as true. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164, 122 L. Ed. 2d 517 (1993). The Complaint states that the parent corporation "owns and controls Fuccillo Hyundai." (Compl. ¶ 14.) Therefore the complaint sufficiently alleges that Fuccillo Auto is liable for the actions of Fuccillo Hyundai.

Dismissal pursuant to a Rule 12(b)(6) motion is proper only if it is clear that the plaintiff has not provided grounds upon which their claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." <u>Camarillo v. Carrols Corp.</u>, 518 F.3d 153, 156 (2d Cir. 2008). Plaintiff's factual allegations "must be enough to give defendant fair notice of what the claim is and the grounds upon which it rests." <u>Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.</u>, 507 F.3d 117, 121 (2d Cir. 2007).

**B.    The Court Cannot Make a *Sue Generis* Determination that ATSD is Not Insurance Without Prematurely Converting This Motion Into a Motion for Summary Judgment**

The Court should deny the Motion to Dismiss rather than convert it into a summary judgment motion. Defendants' proposal that the Court make a *sue generis* determination that the ATSD is not insurance simply is not tenable. Nor can there be sufficient development of the case without discovery. Therefore, the instant motion cannot be turned into a motion for summary judgment.

Rule 12(d) states that "[i]f ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." <u>Amaker v. Weiner</u>, 179 F.3d 48, 50 (2d Cir. 1999). In <u>Global Network Commc'ns., Inc. v. City of New York</u>, 458 F.3d 150, 155 (2d Cir. 2006), a case cited by defendants, the Second Circuit confirms that the word "shall" means that the conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is "strictly enforce[d]" and "mandatory." (citations omitted)

This Court, in denying the motion to dismiss, may not consider Insurance Department private letters attached by the movant without converting the instant motion into a motion for summary judgment. In certain circumstances courts may consider public records (Def.s' Mem. Mot. Dismiss at 9.) without converting a Rule 12(b)(6) motion into a Rule 56 motion, but those

circumstances are absent here.  The documents attached to the moving papers are not public documents.  There are two private letters attached to the Testone Affidavit, one dated November 18, 2004, addressed to Virginia Surety Company, Inc., and the other dated June 22, 1999, addressed to Nick Souris at Universal.  Neither is public, because neither is publicly available on the Insurance Department's website, unlike the public Insurance Department Opinions cited *supra* and *infra*.  Moreover, neither opinion is helpful to the defense.  The November 18, 2004, opinion is irrelevant, because it appears to approve a VIN Etch policy for Virginia Surety Company under Section 3446.  Section 3446 is one of the two exceptions to the New York rule that etch programs are insurance.  As set forth *infra* (Point II, Subsection B), Fuccillo Defendants make no claim under Section 3446.

Defendants bet all of their chips on the June 22, 1999, Insurance Department private opinion, addressed to Universal, though it is not clear why.  Fuccillo Defendants admit not once but twice in the moving papers to violating the terms of that very opinion in that Universal agreed to indemnify Fuccillo Defendants against losses. (Def.s' Mem. Mot. Dismiss at 2, 19.) Moreover, the letter refers to a proposal which was supplied by Universal and formed the basis of its agreement with Fuccillo Defendants. (Def.s' Mem. Mot. Dismiss at 12, 13.) Universal did not supply that agreement to the Insurance Department, nor are the Fuccillo Defendants supplying it to this Court (perhaps because doing so would require conversion of the motion into one for summary judgment).  The Insurance Department assumed for purposes of its opinion that the proposal reviewed would be used by Universal in its dealing with dealerships in accordance with the Department's guidance.  That hardly binds this Court.  The agreement between the Fuccillo Defendants and Universal cannot be claimed to be a "public" document.  Finally, the opinion is outdated, as it pre-dates the enactment of Section 3446 by six months.  In short, far from

7

supporting their position, the June 22, 1999, letter damns the Fuccillo Defendants' entire legal argument.

A dilemma now arises as to what consideration the court can give to the private correspondence – matters outside the pleadings. *See* F.R. Civ. P. 12(d). We agree with the Movants that the motion cannot be turned into a motion for summary judgment but for a different reason; the facts cannot be adequately developed without discovery. Surely the Movants will agree. However, we submit that the correspondence can be viewed as adding material facts adverse to the party submitting them. Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Maryland, 763 F. Supp. 28, 32-33 (S.D.N.Y. 1991) (admission in defendant's Answer was binding for purposes of a motion to dismiss) Here, those facts (the Departments private no-indemnity warning, combined with the Moving Memoranda's statements admitting indemnity) constitute substantial admissions against interest. These cannot be ignored in the 12(b)(6) context. They can be used to deny the motion, but not to punish the Defendants with summary judgment without more exposition. The second sentence of F.R. Civ. P. 12(d) supports that proposition. At this juncture, the Plaintiff does not have access to either (a) the Universal/Fuccillo contracts, or (b) the documents which will show how in fact the ATSD program was administered. All we know is the deal was indemnity. Discovery is needed. Even without consideration of the private correspondence, the admissions in the Defendants' memoranda defeat the motion.[7]

Similarly, the Court must reject the Fuccillo Defendants' attempt to establish, relying on the Testone Affidavit, that the ATSD program was properly administered under the Cost of Replacement exception. A court may only consider non-public documents on a Rule 12(b)(6)

---

[7]      The conversion requirement of Rule 12(b) ... deters trial courts from engaging in fact finding when ruling on a motion to dismiss and ensures that when a trial judge considers evidence [outside] the complaint, a plaintiff will have an opportunity to contest defendant's relied-upon evidence by submitting material that controverts it. Global Network Commc'ns. Inc., 458 F.3d at 155.

motion if both parties have notice of them. Cortec Indus., v. Sum Holding, L.P., 949 F.2d 42, 48

(2d Cir. 1991). Fuccillo Defendants' argument appears to flip the 12(b)(6) standard on its head –

rather than accepting as true what is plead in the Complaint, as this Court must do, Defendants ask

the Court to determine as a matter of law that the facts pled in the Complaint are false based on

documents only they possess.  The Court is not in the position to do that.  Except for the

allegations in the Complaint, which the court must accept as true, and the self-serving statements

made by the Fuccillo Defendants, the Court lacks information as to whether the Universal/Fuccillo

ATSD program is administered in compliance with the Cost of Replacement exception, though it

appears not to be.  The Court simply cannot determine whether the ATSD was a fraud on

consumers, as pled in the Complaint, nor what, if anything, happened to the identifying numbers

once they were etched on a vehicle.

If, in considering the outside materials in the context of a 12(b)(6) motion, the Court finds

irrefutable Defendants' admissions that they were indemnified, than the Court must find for the

Plaintiffs and dismiss the motion as clearly a claim has been stated.  Alternatively, if the court

finds that Defendants may refute their own admissions, than there is an issue of material fact as to

how the ATSD was managed, making summary judgment inappropriate.

## POINT II
### THE COMPLAINT ADEQUATELY PLEADS
### THAT ATSD IS ILLEGAL INSURANCE

**A.   Under a Plain Meaning Reading of the Relevant Statutes, the Complaint Adequately
Pleads ATSD is an Insurance Contract**

VIN etching theft-deterrent systems (hereinafter "Etch"), in which a seller purports to

"guarantee" or "warrant" their product by providing a discount on a replacement vehicle, are

insurance contracts.  Under New York law, analyzing whether a particular set of facts falls within

the definition of an insurance contract must begin with the definition of insurance itself.  New York Insurance Law defines an insurance contract as:

> "Insurance contract" means any agreement or other transaction whereby one party, the "insurer", is obligated to confer benefit of pecuniary value upon another party, the "insured" or "beneficiary", dependent upon the happening of a fortuitous event in which the insured or beneficiary has, or is expected to have at the time of such happening, a material interest which will be adversely affected by the happening of such event. N.Y. Ins. Law § 1101(a)(1).

Thus, to be considered an "Insurance Contract" under New York law, the insured must be entitled to receive from the insurer a monetary benefit upon the happening of a fortuitous event.

The law defines a fortuitous event as follows:

> "Fortuitous event" means any occurrence or failure to occur which is, or is assumed by the parties to be, to a substantial extent beyond the control of either party. N.Y. Ins. Law § 1101(a)(2).

New York courts have construed the term "fortuitous event" to mean an event "happening by chance or accident." 40 Gardenville, LLC v. Travelers Property Cas. of America, 387 F. Supp. 2d 205, 211 (W.D.N.Y. 2005) citing 80 Broad St. Co. v. United States Fire Ins. Co., 88 Misc. 2d 706, 389 N.Y.S.2d 214, 215 (1975) (internal citations omitted).  Under the "substantial control" test, an event is deemed fortuitous if it is beyond the substantial control of either party.  NY State Elec. & Gas Corp. v. Lexington Ins. Co., 204 A.D.2d 226, 617 N.Y.S.2d 43 (1st Dept. 1994).  Thus, simply put, if party A must pay party B upon the happening of some event whose occurrence is beyond the control of either party, then the two have entered into an insurance contract.

There are no New York cases applying the New York definitions of "insurance contract" and "fortuitous event" in the context of etch programs.  However, in interpreting the plain language of the statute, this Court can come to no conclusion other than that the ATSD is a contract of insurance, as pled in the complaint.  Heidi Seekamp and class members bought ATSD

as a contract that would entitle them to a benefit of "pecuniary value" based on the happening of a fortuitous event.  The theft is unquestionably a fortuitous event beyond the control of anyone except perhaps a potential thief.  Universal agreed to indemnify Fuccillo Defendants against loss. Case closed.

**B.    Defendants Do Not Fall Within Group Policy Exception**

N.Y. Ins. Law § 3446 (McKinney 2000) was enacted in 1999 (six months after the letter on which the Defendants rely) to authorize companies such as the Defendants to obtain a policy of group insurance from an authorized insurer.  Section 3446 was enacted in response to the practice of certain manufacturers, distributors or installers of items such as personal safes, locks and etching systems to offer a guarantee to their customers that their products would remain intact despite attempts at theft or the possibility of a fire. Letter from Senator James S. Alesi, Chairman, Commerce, Econ. Dev. & Small Bus., dated June 25, 1999, Bill Jacket, L. 1999, Ch 187. Such products had been found to constitute illegal insurance, and the law intended to provide a legitimate mechanism for their sale and ensure proper consumer protections. Letter from Gregory V. Serio, First Deputy Superintendent, N.Y. Ins. Dep't, dated July 01, 1999, Bill Jacket, L. 1999, Ch 187. Lest there be any doubt that Fuccillo Defendants ever complied with Section 3446, no claim is made by the Fuccillo Defendants that the Group Policy exception applies to the case at bar.  Universal is not now, nor has it ever been, licensed to write insurance policies in New York, and none of the Defendants has ever been licensed as an insurance agent or broker.  The Defendants did not seek approval of their actual arrangements from the Insurance Department. (Compl. ¶ 60.)

**C.   The Insurance Department Has Uniformly Held Programs Similar to ATSD to Be Insurance**

While Etch programs have come before the Insurance Department dressed in guises of 'warranties' or 'guarantees' of various sorts, the regulators have had no trouble seeing the essences of these and similar deals as insurance contracts.  The New York Court of Appeals has made clear that "the interpretation given to a regulation by the agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational or unreasonable." Brentwood Pain & Rehabilitation Services, P.C. v. Allstate Ins. Co., 508 F. Supp. 2d 278, 290 (S.D.N.Y.  2007).  The interpretations of the Department of Insurance "if not irrational or unreasonable, will be upheld in deference to his special competence and expertise with respect to the insurance industry, unless it runs counter to the clear wording of a statutory provision." State Farm Mut. Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313, 321, 794 N.Y.S.2d 700, 827 N.E.2d 758 (2005). We agree that what is required is that the interpretation by the agency conforms to the statute, (Def.s' Mem. Mot. Dismiss at 14.), which the Department's Public Opinions cited *infra* certainly do.

In one of many opinions dealing with a program identical to the one at bar, dated March 25, 2002, the inquirer wanted to know if its proposed etch program, which was to be marketed through automobile dealers was permissible in New York:

> The company markets its program through automobile dealers. A dealer engraves the windows of a vehicle that it sold with a unique identification code and provides anti-theft warning decals that are applied in four places on the vehicle. If the vehicle is stolen and not recovered, or declared a constructive total loss from a collision as a result of the theft, the company issues a "limited warranty" that "guaranties" to pay the customer a monetary benefit. In the example that you provided the benefit was $3,000, and your brochure indicates that the benefit may be up to $5,000 . . . The benefit will be made as a credit to the dealership stated in the "guarantee" towards a

12

replacement vehicle. Ins. Dep't, Opinions of the Office of Gen. Counsel, *Anti-theft program*, No. 02-03-22, issued March 25, 2002.[8]

The Department had no trouble holding this thinly veiled arrangement to be insurance, and

opining:

> Although the agreement alternatively refers to itself as a limited warranty and a guarantee, the nomenclature used in the agreement is irrelevant in determining whether the contract is permissible under the Insurance Law. **Rather, this Department analyzes the actual obligation under the contract to determine whether it constitutes insurance . . .**
>
> The company's "guarantee" or "warranty" is neither a warranty nor a guaranty, but is insurance, within the meaning of the Insurance Law. Whether the vehicle will be stolen is the triggering event under the agreement and the theft is to a substantial extent beyond the control of either the company or the consumer. **By promising to provide a monetary benefit to the consumer upon the unrecovered theft or constructive total loss of the vehicle, the company would be providing to the consumer a benefit of pecuniary value upon the happening of a fortuitous event, and such agreement would constitute a contract of insurance.** Accordingly, under the proposed program, the company would be acting as an insurer without a license and **would be in violation of Section 1102 . . .** (Emphasis added.)
>
> In addition, the dealers would be aiding an unauthorized insurer in violation of N.Y. Ins. Law § 2117 (McKinney 2000)[9] Id.

And Section 3446 is strictly interpreted.  Several months later, in an opinion of April 23,

2002, the inquirer wanted to know whether an automobile dealer could sell an Etch program that

includes insurance as part of the program without becoming licensed as an insurance agent. Ins.

Dep't, Opinions of the Office of Gen. Counsel, *Sale of Etching Program with Insurance*, No. 02-

---

[8]     This opinion and others cited in this brief are accessible through the Insurance Department's website (www.ins.state.ny.us) and are made available for the Court in the Compendium of Unpublished Authorities. We note for the Court that nearly one-quarter of the Fuccillo Defendants' brief is devoted to establishing that public records may be considered on a 12(b)(6) motion, they omit this opinion and others cited *infra* that hold squarely against their position.

[9]     Cited with approval in Ins. Dep't, Opinions of the Office of Gen. Counsel, *Risk Retention and Theft Protection Program, No.* 03-05-18, issued May 20, 2003; Ins. Dep't, Opinions of the Office of Gen. Counsel, *Paintless Dent Repair and other Aftermarket Programs*, No. 08-04-18, issued April 09, 2008.

04-24, issued April 23, 2002. The Department held that (1) § 3446 of the New York insurance law was enacted to authorize group policy insurance to be issued to companies that manufacture, distribute or install a product such as the Etch program, (2) the group policy must be obtained from an authorized insurer, and (3) where an employee or some person acting on behalf of the group policyholder merely supplies a certificate to the group member, the law exempted that person from having to be licensed, assuming compliance with § 3446. Id.

The following year, on December 1, 2003, the Insurance Department was asked to opine on whether the sale of an Etch program, along with which the administrator supplied a certificate of insurance under a group policy purchased by the administrator from an insurance company, constituted the doing of an insurance business in New York. Ins. Dep't, Opinions of the Office of Gen. Counsel, *Non-admitted Insurer's Premium Quotes and Broker of Record Letters*, No. 03-12-01, issued December 01, 2003.  The Department held that (1) the insurance coverage must be provided by a New York authorized insurer; (2) the insurance must be included along with the sale of the product or system; and (3) the premium for the insurance must be paid directly by the group policyholder and not the consumer. Id.  Additionally, the Department stated that the "group insurance policies, and certificates issued thereunder, are subject to approval by the Insurance Department." Id.

Significantly, in an opinion of February 20, 2004, in a case similar to the case at bar, one question, among others, was whether an Etch program violated New York Insurance Law where auto dealers sold the administrator's product or service and were then reimbursed for any cash payments or discounts they provided. Ins. Dep't, Opinions of the Office of Gen. Counsel, *Automobile Tire and Wheel Road Hazard and Other Aftermarket Programs*, No. 04-02-22, issued February 20, 2004. The Department held that (1) the program promised a monetary benefit directly

to the consumer upon the happening of a fortuitous event; (2) therefore the program constituted insurance; and (3) as such the administrator would be acting as an insurer without a license and would be in violation of § 1102 of the insurance law of New York. Id.  Importantly, the Department stated that "by selling the programs, the dealers would be aiding an unauthorized insurer in violation of N.Y. Ins. Law § 2117." Id.

Later in 2004, in an opinion of October 13, 2004, the inquirer, who "'market[ed] and distribute[d] an automobile anti-theft device with a guarantee limited to reimbursement of their auto insurance policy deductible' in the event that an automobile is stolen and not recovered," wished to know if a group policy could be purchased from an excess line broker (a licensed seller of an out of state insurance policy which is not offered in New York State). Ins. Dep't, Opinions of the Office of Gen. Counsel, *Procurement of Product or System Group Insurance by Excess Line Broker*, No. 04-10-09, issued October 13, 2004. The Department held that (1) such a guarantee constitutes insurance in New York because the intervening fortuitous event that causes the loss prevents the agreements from being true guarantees; (2) such coverage cannot be provided directly by the manufacturer, seller or distributor of the product; and (3) coverage must be provided under a group insurance policy purchased from a New York authorized insurer only, therefore, such insurance cannot be procured from an excess line broker. Id.

In sum, for more than fifteen years, every time the Insurance Department has analyzed a window etching program which purports to be "guaranteed" or a "warranty" such that the consumer receives a discount on a replacement vehicle, it determines the program is insurance and in violation of the law unless it  can meet one of the two exceptions.  The pertinent facts in most of these cases are identical to the ATSD program sold by Fuccillo and Universal: (i) a party markets an Etch program through a dealership; (ii) the dealership engraves a unique identification code in

the consumer's vehicle window; (iii) the process is "guaranteed;" and (iv) upon the theft or total loss of the vehicle the policy is *triggered* and a discount toward a replacement vehicle is supposed to be provided. (Compl. ¶¶ 2, 3, 14, 20.)

The only rational conclusion that can be drawn from a close reading of the public opinions issued by the Department is that Defendants' etch programs are insurance under New York law because they obligate the insurer to provide a benefit through the dealer to the consumer upon the happening of a fortuitous event. Therefore, a marketer of such product and the dealerships which aid them are unlicensed insurance brokers under New York law.  It is unclear how Defendants could have arrived at a contrary conclusion.

**D.    Fuccillo Defendants Have No Defense**

**1.     Defendants Flunk the Replacement Cost Exception**

Fuccillo Defendants bet their chips on the so-called 'replacement cost' or 'cost of rendition' exception but ultimately are out of luck.  The pertinent  elements of the exception are: (i) the dealership itself provides the discount; (ii) the discount price of the new vehicle must cover the cost of the vehicle to the dealer, any labor or material cost borne by the dealer, and reasonable overhead expense (i.e. the dealer must make a profit on the replacement sale, thereby eliminating any risk to the dealership); and (iii) under no circumstances may the dealer be compensated, indemnified or insured against the loss on the replacement transaction. Ins. Dep't, Opinions of the Office of Gen. Counsel, *Theft Protection Program*, No. 01-08-18, issued August 29, 2001; Ins. Dep't, Opinions of the Office of Gen. Counsel, *Anti-theft program*, No. 02-03-22, issued March 25, 2002; Ins. Dep't, Opinions of the Office of Gen. Counsel, *Automobile Tire and Wheel Road Hazard and Other Aftermarket Programs*, No. 04-02-22, issued February 20, 2004.

Defendants seek to persuade the court that the ATSD operated pursuant to some version of the Replacement Cost exception.  However, it is clear as day that the ATSD arrangement flagrantly

16

violates the most important prohibition of the exception – Fuccillo Defendants admit that they are indemnified for any loss on the transaction by Universal. (Def.s' Mem. Mot. Dismiss at 2, 19.) This arrangement is specifically barred by the Department.

If that were not enough to defeat the motion to dismiss, Defendants cannot establish, without turning the instant motion into one for summary judgment, that the price of replacement vehicles provided under the program met the test. The price of the new 'replacement' vehicle must be such that the new vehicle's discount price (including any other discounts that the dealer may provide) must cover the cost of the vehicle to the dealer, any labor or material cost borne by the dealer, and reasonable overhead expense, thus avoiding assumption of a risk of loss. Ins. Dep't, Opinions of the Office of Gen. Counsel, *Anti-theft program*, No. 02-03-22, issued March 25, 2002. The Testone Affidavit offers blanket assertions, but nothing to support them.  There is not a single transaction detailed in the moving papers that would establish that the Defendants actually complied with the onerous requirement that they make money on each transaction notwithstanding the heavy discount provided under the ATSD.

In sum, the Replacement Cost exception upon which Defendants so heavily rely does them no good, mostly because they openly admit to violating its very terms.

**2.      June 22, 1999, Letter Is Old News**

Defendants rely on a June 22, 1999, letter from the Insurance Department to establish that (i) the ATSD was specifically reviewed by the Department; (ii) it was specifically approved by the Department; and (iii) what was approved was subsequently proffered to the public. (Def.s' Mem. Mot. Dismiss at 12-14.) Defendants' quotation of that correspondence in their motion contains many of the pertinent elements detailed *supra* in describing the Replacement Cost exception. However, Defendants do not mention or include anywhere in their motion the requirement, which

is clearly laid out in that letter, admonishing that "that there is no kind of insurance that may be sold in New York that would indemnify the dealer for the amount of the discount." (Def.s' Mot. Dismiss, Exhibit C.) Although the Court and counsel have not been supplied with copies of the Universal/Fuccillo agreement, we chose to accept the admissions in the Motion as providing for indemnification.

Therefore, Defendant's claim that "the Insurance Department has considered – and flatly rejected – the very claim raised by Plaintiff here" (Def.s' Mem. Mot. Dismiss at 14.) is wholly without merit as the ATSD as described by the Defendants as including the indemnity was never submitted to the Department for approval and has been explicitly rejected in the June 22, 1999, correspondence and elsewhere. This glaring defect in the ATSD forms the basis of Plaintiffs' claim for relief - that the ATSD constituted an insurance contract under New York law and Universal and Fuccillo were therefore carrying on an insurance business without a license in violation of N.Y. Ins. Law § 1102(a).

E.   **Cases from Other Jurisdictions Are Irrelevant**

While an interesting read, out-of-state cases cited by Fuccillo Defendants offer no guidance for this Court.  Defendants cite to <u>Pope v. TT of Lake Norman, LLC d/b/a Lake Norman Dodge</u>, 505 F. Supp. 2d 309 (W.D.N.C. 2007), a North Carolina case, which deferred to an advisory letter-opinion from the North Carolina Attorney General and found an etch program not to be insurance under that state's law.  The present case is distinguishable, because the New York statutes differ from North Carolina's, and also because the North Carolina Attorney General's advisory letter is diametrically opposed to letters issued by the New York Insurance Department.  <u>Moroz v. Alexico Corp.</u>, 2008 WL 109675 (E.D. Pa. Jan. 7, 2008) is equally inapposite, because its holding was based on Pennsylvania law, and <u>Falkenberg v. Alexico Corp.</u>, 2008 WL 2478384 (D.N.J. June 17,

2008) relied on New Jersey precedent and regulatory determinations.  The New York Insurance Department has deemed etch programs to be insurance, and it is those determinations that must guide the Court, not cases from other states.

Decisions regarding interpretations of laws of other states simply do not apply where the laws are not uniform and the New York Insurance Department's position is in conflict with those decisions.  Such an analysis can only be done by looking at the facts as stated in the complaint and applying the applicable law, the law of New York.  That is the approach taken by Justice Ramos of the Commercial Division of the NY Supreme Court, New York County in <u>Petro Inc. v. Serio</u>, 9 Misc. 3d 805, 804 N.Y.S. 598, 2005 N.Y. Slip Op. 25310 (Sup. Ct. N.Y. County 2005). In that case the contest was whether a contract to provide "service" was exempt from regulation as an insurance contract.  The Court fully analyzed the statute, the regulations of the Department, the language of the contracts and declared the contract was one of insurance.  This Court must eventually do the same.

**POINT III**

**COMPLAINT'S FIRST, SECOND, THIRD, FIFTH, SIXTH AND SEVENTH CAUSES OF ACTION STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED** [10]

**A.   Count I of the Complaint Sufficiently Alleges a Violation of N.Y. GBL § 349**

Count I of the complaint is not subject to dismissal. Section 349(a) of the New York General Business Law prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." Section 349 aims "to provide consumers with a means of redress for injuries caused by unlawfully deceptive acts and practices." <u>Goshen v. Mutual Life Ins. Co. of New York</u>, 98 N.Y.2d 314, 323 (2002). To state a claim under § 349(a), the

---

[10]      The Plaintiff concedes that Count IV of the Complaint for Defendants' alleged violations of the Magnuson-Moss Warranty Act is subject to dismissal, because that law applies to sales of goods, rather than services.

Complaint must allege that the challenged act was: consumer-oriented; deceptive or misleading in a material way; and that the plaintiff has suffered injury. Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust, No. 1:06-CV-871, 2007 WL 951565, *8 (N.D.N.Y. March 27, 2007).

Whether or not the Court holds that ATSD is insurance, it cannot dismiss the Section 349(a) count. The Complaint alleges that on or about June 12, 2007, Seekamp entered into a purchase and sale agreement with Fuccillo Hyundai which included the sale of the ATSD program to the consumer Seekamp. (Compl. ¶ 16.) Furthermore, the Complaint alleges that the ATSD was specifically consumer-oriented and affected the public, which was impacted as a result of its "exorbitant cost" (Compl. ¶ 54.) Therefore, the Complaint alleges that the act in question was consumer-oriented.

The Complaint alleges that the sale of the ATSD was deceptive or misleading in a material way and that Defendants' actions caused Plaintiff and members of the class to suffer injury. The Complaint alleges that the Defendants misrepresented the ATSD as a warranty, when it was a contract of insurance; this misrepresentation went to the very nature of the ATSD contract. (Compl. ¶¶ 25, 56.) Independently of the insurance allegations, the Complaint alleges that the Defendants misled consumers as to the actual worth and value of the product by pricing the ATSD well in excess of the product's actual worth. (Compl. ¶ 56.) The Complaint alleges that the actual cost of "window etching" is between $20.00 and $30.00 and the charge of $295.00 represents a substantial mark-up at the expense of the consumer. (Compl. ¶ 31.) Furthermore, it is alleged that few, if any, of consumers' claims have been paid in connection with the purchase of the ATSD. (Compl. ¶ 33.) Also, it is alleged that had the Insurance Department approved the ATSD for sale as insurance, the premium charged for this coverage would be well below the $295.00 charge. (Compl. ¶ 52.) Finally, the Complaint alleges that Defendants have denied Plaintiff and class

members the mandatory protections afforded other purchasers of insurance in New York by illegally selling the ATSD insurance product. (Compl. ¶ 53.) Hence, all elements of a § 349(a) claim are adequately pled.

### B. Count II of the Complaint Sufficiently Alleges a Conspiracy to Commit Consumer Fraud

Count II of the Complaint is not subject to dismissal.  Under New York Law, a *prima facie* case for civil conspiracy requires an allegation of an underlying tort plus four additional elements: 1) a corrupt agreement between two or more parties; 2) an overt act in furtherance of the agreement; 3) the parties' intentional participation in the furtherance of a plan or purpose; and 4) resulting damage or injury. Best Cellars Inc. v. Grape Finds at Dupont, Inc., 90 F. Supp. 2d 431, 446 (S.D.N.Y. 1980); Lewis v. Rosenfeld, 138 F. Supp. 2d 466, 479 (S.D.N.Y. 2001).

The Complaint adequately pleads all five elements of the claim.  The underlying tort being consumer fraud under N.Y. GBL § 349(a) or, alternatively, violations of TILA as discussed *infra*. (Compl. ¶¶ 47, 58, 79, 82.)

The Complaint alleges that there was a corrupt agreement. The Complaint alleges that Fuccillo Auto and Fuccillo Hyundai agreed to sell the ATSD, which was issued by Universal, and labeled as a warranty, not insurance. (Compl. ¶¶ 14, 18.) The Complaint further alleges that at no point did any of the parties seek to be licensed as an insurer in New York. (Compl. ¶¶ 19, 60.)

The Complaint alleges the parties made overt acts in furtherance of their agreement to sell the illegal ATSD.  The Complaint alleges that the Defendants sold the ATSD without being licensed to do so, that they failed to submit the ATSD to the Department for approval, that they failed to submit the rate for the ATSD to the Department for approval, that they failed to obtain a license as insurance carriers from the Department, and that they failed to obtain a license as insurance brokers or agents from the Department. (Compl. ¶¶ 16, 60.) Furthermore, the Complaint

alleges that Fuccillo and Universal affirmatively represented the ATSD to consumers as a "warranty" and "not an insurance policy." (Compl. ¶ 25.)

The Complaint alleges that Fuccillo Hyundai and Fuccillo Automotive sold the ATSD, a product administered and distributed by Universal. (Compl. ¶ 18.) Therefore, the Complaint alleges the parties intentionally participated in the operation of selling the ATSD to consumers.

The Complaint alleges that because of the conspiracy to commit consumer fraud and the commission of that fraud, the Plaintiff and members of the Class suffered multiple distinct injuries as shown *supra*. (Compl. ¶¶ 31, 33, 52, 53.) Therefore, Count II is not subject to dismissal. Furthermore, these allegations were also pled independently of any insurance fraud pursuant to violations of the Truth in Lending Act discussed *infra*. (Compl. ¶ 60 § d.)

### C.   Count III of the Complaint Sufficiently Alleges a Breach of Contract

Count III of the Complaint is not subject to dismissal.  A *prima facie* case for breach of contract requires plaintiff to plead: 1) existence of a contract; 2) a breach of that contract; and 3) damages resulting from that breach. Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank, 392 F.3d 520, 525 (2d Cir. 2004).

The Complaint alleges that a contract was formed between the parties for the ATSD. The Complaint alleges that Plaintiff and Defendants entered into a sales agreement for the purchase of an automobile which included the ATSD program. (Compl. ¶ 16.) Under the terms of the ATSD the Plaintiff was purportedly supplied a guarantee for $2,000.00. (Compl. ¶ 64.)  The Complaint alleges that the Defendants breached their contract because the ATSD is an invalid contract in New York and its sale by Defendants is prohibited. Id. The Complaint alleges that Defendants actually sold Plaintiff an insurance contract and not a guarantee. Id.  Furthermore, it is alleged that this was an affirmative misrepresentation which was deceptively printed on the face of the agreement. Id.

Finally, Defendants failed to include the premium for the ATSD on the consumer's retail installment contracts under amounts "Paid to insurance companies." Id. The Complaint alleges that the Defendants' breach of contract caused the Plaintiff and members of the class to suffer multiple distinct injuries as shown *supra*. (Compl. ¶¶ 31, 33, 52, 53, 64.) The Complaint alleges that a contract existed between the parties which the Defendants breached, causing injury to the Plaintiff.

Fuccillo Defendants argue in their motion that Count III should be dismissed because Plaintiff was never denied the discount under the ATSD. (Def.s' Mem. Mot. Dismiss at 6.) Defendants misunderstand the grounds for the breach of contract claim.  It is not that Defendants violated the ATSD program as sold; it is that as sold, the ATSD program i) is insurance; and, therefore, ii) violated its own claims to be a warranty. Therefore Count III is not subject to dismissal.

### D.    Count V of the Complaint Sufficiently Alleges a Breach of Fiduciary Duty Against Fuccillo Automotive and Fuccillo Hyundai

Count V of the Complaint is not subject to dismissal. A *prima facie* case for breach of fiduciary duty in the State of New York requires plaintiff to plead that: (1) a fiduciary relationship existed between the two parties; and (2) that there was a breach of this relationship. *See* Henneberry v. Sumitomo Corp. of Am., 415 F. Supp. 2d 423, 459 (S.D.N.Y. 2006) (citations omitted). Insurance sellers act in a fiduciary capacity with respect to all funds received or collected from the insurer on the policy. Diesel Motors Co., Inc. v. Kaye, 345 N.Y.S.2d 870, 874 (N.Y. Co. Ct. 1973).

The Complaint alleges that Plaintiff paid a premium to Defendants for a contract of insurance which Defendants termed a warranty for their ATSD product. (Compl. ¶¶ 72, 16.) Therefore, the Complaint alleges a fiduciary relationship was created between the Defendants and the Plaintiff as to the sums received as payment for the insurance contract.

The Complaint alleges that Defendants breached their fiduciary duty to Plaintiff by failing to disclose to the Department the structure of their insurance plan and the relationship between the premiums charged and the payments to purchasers. (Compl. ¶ 30.) Furthermore, it is alleged that Defendants knowingly breached their fiduciary duties by accepting payment for an unlicensed insurance product.  (Compl. ¶ 73.) *see* East Coast Mgmt. Ltd. V. Genatt Assocs., Inc., 9 Misc. 3d 440, 445 (N.Y. Sup. Ct. 2005) (breach of fiduciary duty where insurance broker places insurance coverage for consumer with a non-admitted and unlicensed insurance company). Therefore, the Complaint sufficiently alleges Defendants breached a fiduciary duty to Plaintiff.

The Complaint sufficiently alleges a breach of fiduciary duty.  Fuccillo Defendants do not address the elements of a fiduciary duty in their motion to dismiss.  They simply state the ATSD is not insurance, therefore the Count should fail. (Def.s' Mem. Mot. Dismiss at 20.) This, as shown *supra*, is a gross misunderstanding of New York law.  Therefore, Count V is not subject to dismissal.

**E.    Count VI of the Complaint Sufficiently Alleges Unjust Enrichment**

Count VI of the Complaint is not subject to dismissal.  To sustain a claim for unjust enrichment, a plaintiff must allege "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 375 F. Supp. 2d 141, 154 (E.D.N.Y. 2005).

The Complaint alleges that Defendants charged Plaintiff and the members of the class for an insurance contract, the ATSD, in the amount of $295.00 which Plaintiff and members of the class paid. (Compl. ¶ 16.) Therefore the Complaint alleges that the Defendants were enriched at the Plaintiff's expense.   The Complaint alleges that the Defendants were at all times aware that the

monies paid by Plaintiff and the class members were as a result of Defendants' deception and that they were not entitled to retain those benefits. (Compl. ¶ 77.) As such, the circumstances are such that in equity and good conscience the Fuccillo Defendants should return the monies to the Plaintiff and Class members.

**F.   Count VII of the Complaint Sufficiently Alleges a Violation of the Truth in Lending Act**

Count VII of the Complaint is not subject to dismissal.  The Complaint alleges that by not disclosing the premiums for property insurance, such as the ATSD, in the finance charge, the Defendants violated TILA Treasury Regulation Z. (Compl. ¶ 83.)  Treasury Regulation Z states that such premiums may be excluded from disclosure requirements if the consumer is informed (1) that the insurance coverage may be obtained from a person of the consumer's choice; and, for insurance obtained through the creditor, the consumer is notified of (2) the amount of the premium, and (3) the term of the insurance. Lifanda v. Elmhurst Dodge, Inc., 237 F.3d 803, 805 (7th Cir. 2001) (an Etch product is property insurance and its premium is a "finance charge within the meaning of TILA").  Defendants did not inform Plaintiffs that Etch product was insurance, that it may be obtained through another person, or the amount of the premium or the term of the insurance. (Compl. ¶¶ 16, 84, 85.)

Defendants' sole grounds offered for dismissing Count VII is that the ATSD is a warranty, not insurance, under New York law.  As explained *supra,* this is an incorrect analysis of New York law. Therefore, Count VII is not subject to dismissal.

## CONCLUSION

Defendants' 12(b)(6) motion to dismiss woefully misinterprets New York Insurance Law and fails to address the Complaint's allegations based on other grounds.  Therefore the motion should be denied where Plaintiffs' Complaint has alleged violations of Federal and New York

State law sufficient to put Defendants on notice of their claim.  If the Complaint is dismissed, Plaintiffs request permission to replead.

                                    **LEMBERG & ASSOCIATES L.L.C.**

                    By: _____

                        Sergei Lemberg (N.D.N.Y. Bar Roll 51492)
                        *Attorneys for Plaintiff Heidi Seekamp and*
                        *Others Similarly Situated*
                        1100 Summer Street, 3rd Floor
                        Stamford, CT 06905

                        New York Office
                        75 South Broadway, 4th Floor
                        White Plains, NY 10601

                        Telephone: (203) 653-2250
                        Facsimile: (877) 795-3666

                        CO-COUNSEL
                        Martin Mushkin, Esq.
                        Law Offices of Martin Mushkin
                        1100 Summer Street, 3rd Floor
                        Stamford, CT 06905

                        New York Office
                        53 Burd Street
                        Nyack, NY 10960

                        Telephone: (203) 252-2357
                        Facsimile:  (203) 547-7540

26