UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HEIDI SEEKAMP, On Behalf of Herself and
All Others Similarly Situated,

                              Plaintiff,

    -against-                                                1:09-CV-00018 (LEK/DRH)

FUCCILLO AUTOMOTIVE GROUP, INC.
FUCCILLO LINCOLN MERCURY HYUNDAI, INC.,
UNIVERSAL AUTOMOTIVE SERVICES, INC.

                              Defendants.
_____

**MEMORANDUM-DECISION AND ORDER**

       Plaintiff Heidi Seekamp ("Plaintiff") commenced this action under Federal Rule of Civil Procedure 23 on behalf of herself and all others similarly situated, alleging a violation of the Insurance Law of the State of New York, Federal Truth in Lending Act ("TILA"), New York General Business Law § 349(a), and common law. Compl. (Dkt. No. 1). Defendants are Fuccillo Automotive Group, Inc., a New York corporation with its principal place of business in Adams, New York; Fuccillo Lincoln Mercury Hyundai, Inc., an automotive dealership incorporated in New York with its principal place of business in Adams, New York; and Universal Automotive Services, Inc., a New Jersey corporation ( collectively, "Defendants").

       Presently before this Court is a Motion to dismiss filed by Fuccillo Automotive Group,

1

Inc. and Fuccillo Lincoln Mercury Hyundai, Inc.[1]  Defs.' Mot. (Dkt.  No. 5).  For the reasons discussed below, Defendants' Motion to dismiss is denied.

I.    BACKGROUND

On or about June 12, 2007, Plaintiff entered into a purchase and sales agreement with Defendant, Fuccillo Lincoln Mercury, Inc. ("Fuccillo Hyundai") for the purchase of a 2007 Hyundai Elantra.  Compl. (Dkt. No. 1, Attach. 2, Ex. A); Defs.' Mot. at 2.  As part of the transaction, Plaintiff enrolled in an Auto Theft Security Discount Guarantee program ("ATSD").  Compl. ¶ 16.  The ATSD cost the Plaintiff $295.  Compl. (Dkt. No. 1, Attach. 3, Ex. B).  The ATSD involved a form of "window etching" in which the vehicle's identification number ("VIN") was permanently engraved into its window.  Compl. ¶ 2.  Advertised as a theft deterrent, a VIN is traceable to a specific vehicle, making it more difficult to sell car parts etched with the number.  Compl. ¶ 2.  Defendant Fuccillo Automotive is purported to have sold ATSD policies to consumers through Fuccillo Hyundai and its subsidiaries.  Compl. ¶ 14.[2]  The ATSD policies were issued by Defendant Universal Automotive Services, Inc. ("Universal").  Defs.' Mot. at 2.  Under the policy, Defendant Universal would indemnify Defendant Fuccillo Hyundai if the dealer had to issue a credit towards a new vehicle purchase due to theft.  Defs.' Mot. at 2.  Under the terms of the ATSD, if the Plaintiff's car was declared a total loss, due to unrecovered theft, or

---

[1]Defendants Fuccillo Automotive Group, Inc. and Fuccillo Lincoln Mercury Hyundai are herein collectively referred to as "Fuccillo."

[2]The relationship between Defendants Fuccillo Automotive and Fuccillo Hyundai is unclear.  The Complaint states that Fuccillo Automotive owns and controls the operations of Fuccillo Hyundai.  Compl. ¶ 14.  The Answer does not specifically refute this, though it states that Fuccillo is a subsidiary of a non-party parent corporation, "It's Huge, Inc."  The Affidavit of John Testone specifically states that Fuccillo Automotive does not own Fuccillo Hyundai.  Aff. of John Testone (Dkt. No. 5, Attach. 1).

if it was recovered but still considered a total loss by Plaintiff's insurance company, the authorized dealer (Fuccillo Hyundai) would provide Plaintiff with a 10% discount towards the purchase of a replacement vehicle, in an amount up to $2000. Compl. (Dkt. No. 1, Attach. 3, Ex. B).

Plaintiff alleges that Defendants misrepresented the ATSD agreement as a warranty when it was in fact an insurance policy. Compl. ¶ 5. Plaintiff claims that because none of the Defendants are licensed insurance companies, brokers, or agents in New York, they are not authorized to engage in the sale of the ATSD insurance policy. Compl. ¶ 37. Plaintiff further claims that Defendant's sale of the policy is deceptive and in violation of N.Y. GBL § 349. Compl. ¶¶ 46–47.

Plaintiff further alleges that by misrepresenting the ATSD agreement as a warranty, Defendants engaged in deceptive consumer practices and conspiracy to commit consumer fraud. Compl. ¶¶ 59–60. Plaintiff alleges that such deceptive consumer practices include:

> a) Selling the ATSD without having a license to do so; b) Failing to submit the ATSD to the Insurance Department for approval; c) Installing the "Etch Number" on all vehicles prior to the sale of the ATSD; d) Failing to state the charge for the ATSD on the Registration Form; e) Failing to submit the rate for the ATSD to the Insurance Department for approval; f) Failing to obtain a license as insurance carriers from the Department of Insurance to sell ATSD; g) Failing to obtain a license as insurance brokers or agents from the Department of Insurance; h) As to Fuccillo Hyundai and Fuccillo Automotive, receiving a commission from Universal on sales of the ATSD.

Compl. ¶ 60.

Plaintiff also claims that Defendants breached their contract by (1) misrepresenting the ATSD as an anti-theft system when it is an insurance policy; (2) asserting that the $2,000

indemnity benefit is not a guarantee of the anti-theft system, but rather an indemnity benefit payable contingent on Plaintiff's loss of vehicle; (3) deceptively printing on the ATSD agreement that it is "not an insurance policy;" (4) not including the premium for the ATSD on the consumer's retail installment contracts under the amount "Paid to insurance companies;" (5) overcharging the Plaintiff and others similarly situated for an illegal insurance contract.  Compl. ¶ 60.

Plaintiff alleges that Defendants knowingly breached their fiduciary duties by accepting payment for the unlicensed ATSD insurance policy and not disclosing their commission earned from the sale of the ATSD.  Compl. ¶ 73.  Plaintiff further alleges that she and those similarly situated have suffered damages as a result of the Defendants' breach and monetary benefit.  Compl. ¶ 74.

Plaintiff claims that Defendants intended to misrepresent the ATSD insurance agreement and have profited from its illegal sale.  Compl. ¶ 76.  Plaintiff further claims that Defendants have been unjustly enriched by the sale of the ATSD.  Compl. ¶ 78.

Plaintiff also alleges that Defendants violated the Truth in Lending Act, 15 U.S.C. § 1601, *et seq*., by not including the ATSD insurance in the "finance charge" but rather in the "amount financed" portion of the sales agreement.  Compl. (Dkt. No. 1, Attach. 2, Ex. A). Consequently, Plaintiff alleges that the Defendants failed to accurately disclose the finance charge, in violation of 15 U.S.C. § 1638(a)(3) and 12 C.F.R. §§ 226.18(d) and 226.4; failed to accurately disclose the APR, in violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 226.18(e); and failed to accurately disclose the amount financed, in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 226.18(b).  Compl. ¶ 84.

## II.     STANDARD OF REVIEW

Rule 12(b) of the Federal Rules of Civil Procedure requires that if matters "outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P 12(b).  There are, however, exceptions to the general rule, when a plaintiff "[c]hooses not to attach to the complaint or incorporate by reference a [document] . . . which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim." Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 47 (2d Cir. 1991) (citing Meyer Pincus & Assoc. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991)).  The court may invoke this exception whenever "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason . . . was not attached to the complaint."  Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006).  Judicial review of matters outside the pleadings further extends to matters "of which judicial notice may be taken."  Leonard F. v. Israel Discount Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999) (quoting Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991)).  The extent to which judicial notice may be taken is dictated in part by Rule 201 of the Federal Rules of Evidence.  See FED. R. EVID. 201 (stating "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is . . . (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.").  See also Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).  A court may take judicial notice of [relevant] public disclosure documents.  Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67,

75 (2d Cir. 1998) (citing Kramer, 937 F.2d at 774).[3]  Judicial notice may be taken on a motion to dismiss "only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion."  Global Network Commc'ns, Inc., 458 F.3d at 157 (quoting Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004)).  See Kramer, 937 F.2d at 774 (permitting consideration of extraneous documents where they "are relevant not to prove the truth of their contents but only to determine what the documents stated.").

Here, the parties have submitted additional affidavits and exhibits in support of their pleadings.  Specifically, Fuccillo has submitted two opinion letters from the State of New York Insurance Department.  Defs.' Mot. (Dkt. No. 5, Attach. 3–4, Exs. A–B).  Both letters address issues of Universal's discount credit policy and state that Universal's policy did not the violate insurance laws.  Defs.' Mot. (Dkt. No. 5, Attach. 3–4, Exs. A–B).  However, because these are private letters and not public opinions, the Court has not evaluated them, and has only considered those documents properly considered by a court on a motion to dismiss.[4]  Accordingly, Fuccillo's Motion will not be considered as a motion for summary judgment.

Dismissal of a complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted is proper only if a

---

[3] For example, "where public records that are integral to a fraud complaint are not attached to it, the court, in considering a Rule 12(b)(6) motion, is permitted to take judicial notice of those records."  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).

[4] On a motion to dismiss, a necessary prerequisite to a court's consideration of a document, other than the complaint, is a plaintiff's reliance on the terms and effect of that document in drafting the complaint.  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).  In reaching its decision, the Court only considered the facts as presented in Plaintiff's Complaint, the excerpts of the various agreements at issue, and the Exhibits filed with the Amended Complaint.

plaintiff fails to "allege in its complaint 'enough facts to state a claim to relief that is plausible on its face.'" Smartix Int'l Corp. v. MasterCard Int'l LLC, No. 08-5303, 2009 U.S. App. Lexis 23810, at *2-3 (2d Cir. Oct. 28, 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[A] plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." Leibowitz v. Cornell Univ., 445 F.3d 586, 591 (2d Cir. 2006). A court considering a Rule 12(b)(6) motion "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, at this stage in an action, "'the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'" Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) (quoting Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996).

### III. DISCUSSION

Seekamp asserts that Defendants' ATSD program meets the criteria of insurance under New York State Insurance Law § 1101. See Compl. ¶¶ 20–24. Seekamp argues that she had an agreement with Defendants where, upon the theft of her vehicle, Seekamp would receive a monetary discount towards the purchase of her next vehicle. Compl. ¶ 20. Seekamp relies on New York State Insurance Department Office of General Counsel opinions which have held that programs similar to the ATSD program are considered insurance under New York State law. Compl. Resp. (Dkt. No. 12, Attach. 2). Fuccillo contends that the ATSD program is a warranty and that Plaintiff has failed to plead the existence of facts that would support a conclusion that the ATSD program is insurance. Defs.' Mot. at 10–11. In addition, Fuccillo argues that Seekamp cannot rely on advisory opinions by the New York State Insurance Department Office

of the General Counsel because the Insurance Department has concluded that programs similar to the ATSD program are warranties and do not violate New York State Insurance Law. Defs.' Mot. at 11–12. Fuccillo also asserts that other district courts have held that similar theft-deterrent devices are not insurance, and encourages this Court to do the same. Defs.' Mot. at 11–12.

Because Plaintiff's claims are all contingent on whether ATSD is an insurance policy, before addressing each claim individually, the Court must first determine whether Defendants' ATSD program could constitute an insurance policy.

Federal courts sitting in diversity are bound by the substantive law of the forum state Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir. 1994) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 73 (1938)). There are currently no New York State cases which have applied the New York definition of "insurance contract" in the context of etch programs such as the ATSD. However, the New York Court of Appeals "has made clear [that] the interpretation given to a regulation by the agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational or unreasonable." Brentwood Pain & Rehab. Servs., P.C. v. Allstate Ins. Co., 508 F. Supp. 2d 278, 290 (S.D.N.Y. 2007) (quoting Council of the City of N.Y. v. Pub. Serv. Comm'n, 99 N.Y.2d 64, 74, 781 N.E.2d 886, 890-891, 751 N.Y.S.2d 822, 826 (2002)).

According to New York Insurance Law, the superintendent "shall have the power to prescribe and from time to time withdraw or amend, in writing, regulations, not inconsistent with the provisions of this chapter: . . . (c) interpreting the provisions of this chapter." NY INS. LAW § 301, 301(c) (McKinney 2005). Further, interpretations of the Department of Insurance, "if not

irrational or unreasonable, will be upheld in deference to [the superintendent's] special competence and expertise with respect to the insurance industry, unless it runs counter to the clear wording of a statutory provision." Brentwood Pain & Rehab Serv., P.C., 508 F. Supp. 2d at 291 (quoting State Farm Mut. Auto Ins. Co. v. Mallela, 4 N.Y.3d 313, 321, 827 N.E.2d 758, 760 794 N.Y.S.2d 700, 702 (2005)). Consequently, this Court may look to the Department's prior decisions regarding the status of "etch" programs.

Using the New York Insurance Department opinions as a basis, there is not insubstantial support for Plaintiff's claims that the ATSD qualifies as an insurance policy under New York State law. New York State Insurance Law § 1101 defines an insurance contract as:

> any agreement or other transaction whereby one party, the 'insurer', is obligated to confer benefit of pecuniary value upon another party, the 'insured' or 'beneficiary', dependent upon the happening of a fortuitous event in which the insured or beneficiary has, or is expected to have at the time of such happening, a material interest which will be adversely affected by the happening of such event.

N.Y. INS. LAW § 1101(a)(1) (McKinney 2005). Further, to be recognized as an insurance contract under New York law, the insured must receive a monetary benefit from the insurer upon the occurrence of a fortuitous event. Id. A "fortuitous event" is defined as "any occurrence or failure to occur which is, or is assumed by the parties to be, to a substantial extent beyond the control of either party." N.Y. INS. LAW § 1101(a)(2).[5]

---

[5] Though New York Insurance Law does not define "warranty," it has been interpreted as relating "in some way to the nature or efficiency of the product sold." Ollendorff Watch Co. v. Pink, 279 N.Y. 32, 36, 17 N.E.2d 676, 677 (1938). "In other words, it is a representation that the product was of a certain make and fitness or that the product will work properly. A warranty does not cover a hazard that has nothing to do with the make or quality of the product." Anti-theft Program, 02-03-22 (New York Ins. Dep't Mar. 25, 2002) (citing Ollendorff Watch Co., 279 N.Y. at 36).

Fuccillo argues that this Court should adopt the conclusion of other district courts that "incidents of non-recovery of a vehicle essentially indicate that there has been a manufacture or design defect with the VIN etching and no fortuitous event has occurred" and that the "objective of the arrangement is simply to warrant PCTG's performance." Moroz v. Alexico Corp., No. 07-3188, 2008 U.S. Dist. LEXIS 1166, at *8-11 (E.D. Pa. Jan. 8, 2008) (referencing a Pennsylvania Insurance Department decision which interpreted the common law definition of insurance because there was no statutory definition under Pennsylvania law); Falkenberg v. Alexico Corp., No. 07-4149, 2008 U.S. Dist. LEXIS 46821, at *7-8 (D.N.J. June 17, 2008) (stating that a vehicle "Theft-Gard" is "intended to function as a theft deterrent and recovery product;" that the "Theft-Gard," as a warranty, provides a monetary benefit if the "Theft-Gard" does not work and the vehicle is stolen; and that this interpretation was supported by holdings from the New Jersey Department of Banking and Insurance).

However, the New York Insurance Department has interpreted a "fortuitous event" to be the theft or non-recovery of a vehicle, which is the triggering event under the "etch" theft-deterrent agreement. See Auto. Tire & Wheel Road Hazard & Other Aftermarket Programs, 04-02-22 (New York Ins. Dep't Feb. 20, 2004); Anti-theft Program, 02-03-22. Further, the New York Insurance Department has found that by offering a discount on a vehicle purchase following an unrecovered theft or total loss, the consumer would ultimately be provided with a "benefit of pecuniary value upon the happening of a fortuitous event." Anti-Theft Program, 02-03-22; Auto. Tire & Wheel Road Hazard & Other Aftermarket Programs, 04-02-22 (stating that the theft of the vehicle is, to a "substantial extent," beyond the control of the parties. By promising a monetary benefit to the consumer upon the unrecovered theft or total loss of the

vehicle, the consumer would be provided a benefit of pecuniary value upon the happening of a fortuitous event. Such an agreement would constitute insurance).

Here, under the terms of the agreement, if Seekamp's vehicle were declared a total loss due to unrecovered theft, or if it were recovered but still considered a total loss by Seekamp's insurance company, the authorized dealer, Fuccillo Hyundai, would provide Seekamp with the pecuniary benefit of a 10% discount towards the purchase of a replacement vehicle in an amount up to $2000. Compl. (Dkt. No. 1, Attach. 3, Ex. B).

Fuccillo argues that this Court should recognize the findings of the New York Insurance Department that "a motor vehicle dealer providing a discount on a replacement vehicle dependent upon the total loss of a prior purchase would not be doing an insurance business within the meaning of N.Y. Ins. Law § 1101(b) (McKinney 2000) so long as the discount price of the new vehicle (including any other discounts that the dealer may provide) covers the cost of the vehicle to the dealer, any labor or material cost borne by the dealer, and reasonable overhead expense, thus avoiding assumption of a risk of loss."[6] Theft Deterrent Disc. Program, 01-08-18 (New York Ins. Dep't Aug. 29, 2001). See Auto. Tire & Wheel Road Hazard & Other Aftermarket Programs, 04-02-22. However, the New York Insurance Department has also opined that insurance that "would indemnify the dealer or the administrator for the amount of the discount is not included among the kinds of insurance authorized in New York under N.Y. Ins. Law § 1113 (McKinney 2000)." Theft Deterrent Disc. Program, 01-08-18; Revised Disc. "Total Loss Prot." Program, 01-09-07 (New York Ins. Dep't Sept. 21, 2001). See Auto. Tire & Wheel

---

[6] "In other words, a dealer may agree in the discount to reduce its profit margin on a new vehicle but may not agree to sell the vehicle at a break-even or lower point." Id.

Road Hazard & Other Aftermarket Programs, 04-02-22 (stating that a dealer may not be compensated for a vehicle discount nor is there insurance available in New York that can "reimburse the dealer for its waiver of the full purchase price."). See also, N.Y. INS. LAW § 1113 (McKinney 2005).

Here, Fuccillo argues that the ATSD contract specifically states "[n]o discount will be given that will eliminate dealer profit on replacement vehicle." Defs.' Mot. (Dkt. No. 5, Attach. 2, Ex. A). However, Seekamp has asserted, and Fuccillo has acknowledged that upon issuing a credit to a consumer towards a new vehicle purchase, Fuccillo would then be "indemnified" by Universal. Compl. Resp. at 2–4; Defs.' Mot. at 2. No further information was provided about the "insurance that would be obtained by the company or the certificates that the company would provide to the dealers." Anti-Theft Program, 02-03-22. Consequently, "such program may constitute an illegal . . . insurance policy." Id.

Though none of the aforementioned decisions or opinions are binding on this Court, in this case, Plaintiff has adequately alleged facts that Defendants' ATSD program may be considered insurance to survive Fuccillo's Motion to dismiss. Seekamp's allegations, which the Court must accept as true at this stage of the litigation, suggest that Plaintiff could prevail on this cause of action, and is therefore entitled to gather and present related evidence.

In light of the discussion above, and the Fuccillo Defendants' failure to move to dismiss Plaintiff's individual claims, this Court need not address Plaintiff's individual causes of action at this time.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that Fuccillo's Motion to dismiss (Dkt. No. 05) is **DENIED**; and it is further

**ORDERED**, that Plaintiff file a Motion for certification pursuant to N.D.N.Y. L. R. 23.2; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:       March 15, 2010
             Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

14