UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

HEIDI SEEKAMP, On Behalf of Herself and all
Others Similarly Situated,

                                    *Plaintiff,*

      - against -

IT'S HUGE, INC., FUCCILLO LINCOLN
MERCURY HYUNDAI, INC., UNIVERSAL
AUTOMOTIVE SERVICES, INC.,

                            *Defendants.*

**Civil Action No. 1:09-CV-00018
(LEK/DRH)**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF HEIDI R. SEEKAMP'S MOTION FOR LEAVE TO AMEND THE COMPLAINT AND FOR JOINDER

GREENBERG TRAURIG, LLP
54 State Street, 6th Floor
Albany, New York 12207
Tel:  (518) 689-1400
Fax:  (518) 689-1499
Email:  hurstw@gtlaw.com

ROEMER WALLENS GOLD
  & MINEAUX, LLP
13 Columbia Circle
Albany, New York 12203
Tel:  (518) 464-1300
Fax:  (518) 464-1010
jkelly@rgwmlaw.com
awtwinam@rgwmlaw.com

*Attorneys for Defendants
It's Huge, Inc. and Fuccillo Lincoln
Mercury, Inc., d/b/a Fuccillo Hyundai*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT

I.   THE MOTION FOR LEAVE TO AMEND THE COMPLAINT SHOULD
     BE DENIED BECAUSE THE AMENDED COMPLAINT CANNOT
     WITHSTAND A MOTION TO DISMISS UNDER RULE 12(B) OF THE
     FEDERAL RULES OF CIVIL PROCEDURE ................................................... 1

     A. Applicable Legal Standard ......................................................................... 1

     B. Plaintiff's Proposed Truth-in-Lending Act Claim is Time-Barred
        by the Applicable One-Year Statute of Limitations ................................. 2

          1.   Plaintiff has not Pleaded -- and Cannot Prove -- any
               Ground for Equitable Tolling of the One-Year
               Limitations Period ......................................................................... 3

     C. Plaintiff's Proposed RICO Claim (Count VIII) Fails to State a
        Cause of Action .......................................................................................... 7

          1.   Plaintiff cannot state a cause of action under RICO
               because she has not alleged a violation of 19 U.S.C. §
               1962 ................................................................................................. 8

               a.   18 U.S.C. § 1962(a) ................................................................. 8

               b.   18 U.S.C. § 1962(b) ................................................................. 9

               c.   18 U.S.C. § 1962(c) ............................................................... 10

               d.   18 U.S.C. § 1962(d) ............................................................... 11

     D. Absent her TILA and RICO claims, Plaintiff Cannot Establish
        Diversity Jurisdiction Over Her Remaining State Law Claims ............... 11

          1.   The PAC Does Not Satisfy the $75,000 Amount in
               Controversy Requirement ............................................................. 12

     E. In Any Event, the PAC Fails to State a Cause of Action for
        Violation of N.Y. *General Business Law* § 349, Breach of

Contract, Rescission or Unjust Enrichment Because There Has
Been No Breach and Plaintiff has Suffered No Damages ........................................ 14

II.  THE MOTION TO AMEND SHOULD BE DENIED BECAUSE
PLAINTIFF WILL BE UNABLE TO CERTIFY A CLASS ................................................ 16

A.  The PAC Does Not Satisfy the Requirements of Rule 23(b)(2) .............................. 16

B.  The PAC Does Not Satisfy the Requirements of Rule 23(b)(3) .............................. 18

C.  Plaintiff's Claims Fail Under the Commonality, Typicality and
Predominance Tests Due to the Existence of Defenses Unique to
Her ................................................................................................................................ 22

CONCLUSION ................................................................................................................ 25

## TABLE OF AUTHORITIES

### CASES

Page(s)

*Abrego Abrego v. The Dow Chemical Co.,*
    443 F.3d 676 (9th Cir. 2006) ...................................................................................... 13

*Al Barnett & Son, Inc. v. Outboard Marine Corp.,*
    64 F.R.D. 43 (D. Del. 1974) ...................................................................................... 18

*Allen v. Divine,*
    No. 09-688 (ADS)(MCO), 2010 U.S. Dist. LEXIS 74495 (E.D.N.Y. Jul. 24, 2010) ........ 9

*Amchem Productions, Inc. v. Windsor,*
    521 U.S. 591 (1997) .................................................................................................. 23

*Anza v. Ideal Steel Supply Corp.,*
    547 U.S. 451 (2006) .................................................................................................... 9

*Ashcroft v. Iqbal,*
    129 S.Ct. 1937 (2009) ............................................................................................. 2, 7

*Barrus v. Dick's Sporting Goods, Inc.,*
    No. 05-6253, 2010 U.S. Dist. LEXIS 79014 (W.D.N.Y. Aug. 4, 2010) ........................ 8

*Baskin v. G. Fox & Co.,*
    550 F.Supp. 64 (D. Conn. 1982) ................................................................................. 2

*Bates v. United Parcel Service, Inc.,*
    511 F.3d 974 (9th Cir. 2007) ...................................................................................... 18

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................. 2, 8

*Bennett v. Unites States Trust Co.,*
    770 F.2d 308 (2d Cir. 1985) ...................................................................................... 10

*Bolin v. Sears Roebuck & Co.,*
    231 F.3d 970 (5th Cir. 2000) ...................................................................................... 17

*Campbell v. Chandler Associates, Inc.,*
    No. 05-1770 (RSP), 1997 U.S. Dist. LEXIS 3998 (N.D.N.Y. Mar. 28, 1997) .............. 3, 4

*Cappuccitti v. DirectTV, Inc.,*
    611 F.3d 1252 (11th Cir. 2010) ...................................................................... 12, 13, 14

*Cardiello v. The Money Store, Inc.,*
   No. 00-7332 (NRB), 2001 U.S. Dist. LEXIS 7107 (S.D.N.Y. Jun. 1, 2001)..............3, 4, 5

*Cedric Kushner Promotions Ltd. v. King,*
   533 U.S. 158 (2001) ...............................................................................................10

*Cerbone v. International Ladies' Garment Workers' Union,*
   768 F.2d 45 (2d Cir. 1985) .......................................................................................4

*Commercial Cleaning Services v. Colin Service System,*
   271 F.3d 374 (2d Cir. 2001) .....................................................................................8

*Conley v. Gibson,*
   355 U.S. 41 (1957) ...................................................................................................2

*DeAngelis v. Timberpeg East, Inc.,*
   51 A.D.3d 1175 (3d Dep't  2008).............................................................................21

*Diaz v. Paragon Motors of Woodside, Inc.,*
   424 F. Supp. 2d 519 (E.D.N.Y. 2007) .....................................................................15

*Discon, Inc. v. NYNEX Corp.,*
   93 F.3d 1055 (2d Cir. 1996) ....................................................................................11

*Doe v. Guardian Life Insurance Co. of America,*
   145 F.R.D. 66 (N.D. Ill. 1992) ................................................................................17

*Dougherty v. North Hempstead Board of Zoning Appeals,*
   282 F.3d 83 (2d Cir. 2002) .......................................................................................2

*Dungan v. The Academy at Ivy Ridge,*
   249 F.R.D. 13 (N.D.N.Y.) ..................................................................................20, 21

*Elizabeth v. Montanez,*
   458 F.3d 779 (8th Cir. 2006) ..................................................................................18

*Feldman v. Lifton,*
   64 F.R.D. 539 (S.D.N.Y. 1974).................................................................................12

*Foman v. Davis,*
   371 U.S. 178 (1962) ..................................................................................................2

*Gale v. IBM Corp.,*
   9 A.D.3d 446 (2d Dep't 2004)..................................................................................22

*Garay v. United States Bancorp,*
   303 F. Supp. 2d 299 (E.D.N.Y. 2004) ......................................................................8

iv

*Great Rivers Cooperative of S.E. Iowa v. Farmland Industry, Inc.*,
    120 F.3d 893 (8th Cir. 1997) .................................................................................23

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009) ...................................................................8

*Harris v. Buffardi*,
    No. 08-1322 (GLS/DRH), 2009 U.S. Dist. LEXIS 96704 (Oct. 19, 2009)..........6

*Hughes v. Cardinal Federal Savings & Loan Association*,
    566 F. Supp. 834 (S.D. Ohio 1983) .......................................................................5

*In re "Agent Orange" Product Liability Litigation*,
    818 D.2d 145 (2d Cir. 1987)................................................................................12

*In re Allstate Inurance Co.*,
    400 F.3d 505 (7th Cir. 2005) ...............................................................................17

*In re Initial Public Offering Security Litigation*,
    471 F.3d 24 (2d Cir. 2006)...................................................................................21

*In re Methyl Tertiary Butyl Ether Products Liability Litigation*,
    209 F.R.D. 323 (S.D.N.Y. 2002)..........................................................................23

*Institute for the Development of Earth Awareness v. People for the Ethical Treatment of Animals*,
    No. 08-6195 (PKC), 2009 U.S. Dist. LEXIS 78220 (S.D.N.Y. Aug. 28, 2009)................7

*Jacobs v. CitiBank, N.A.*,
    No. 01-8436 (JSR)(KNF), 2005 U.S. Dist. LEXIS 17495 (S.D.N.Y. Aug. 4, 2005)..........4

*J.A.O. Acquisition Corp. v. Stavitsky*,
    8 N.Y.3d 144 (2007).............................................................................................21

*J.H. Cohn & Co., v. American Appraisal Association, Inc.*,
    628 F.2d 994 (7th Cir. 1980) ...............................................................................23

*Kline v. Wolf*,
    702 F.2d 400 (2d Cir. 1983) ................................................................................23

*Knoll v. Schectman*,
    275 Fed. App'x  50 (2d Cir. 2008) ......................................................................11

*Lama Holding Co. v. Smith Barney  Inc.*,
    88 N.Y.2d 413 (1996)...........................................................................................20

*Lieb v. Am. Motors Corp.*,
    95 F.R.D. 507 (S.D.N.Y. 1982)............................................................................23

*Lucente v. International Business Machines Corp.,*
 310 F.3d 243 (2d Cir. 2002) ................................................................... 1, 2

*Maltezos v. Marine Terrace Apartments,*
 No. 87-7347 (KMW), 1990 U.S. Dist. LEXIS 4331 (S.D.N.Y. Apr. 13, 1990) ................ 7

*Mason v. Town of New Paltz Police Department,*
 103 F. Supp. 2d 562 (N.D.N.Y. 2000) ........................................................... 6

*Maurizio v. Goldsmith,*
 230 F.3d 518 (2d Cir. 2000) ..................................................................... 15

*McAnaney v. Astoria Financial Corp.,*
 No. 04-1101 (JFB/WDW), 2008 U.S. Dist. LEXIS 5535 (E.D.N.Y. Jan. 25, 2008) ...... 3, 4

*McLaughlin v. American Tobacco Co.,*
 522 F.3d 215 (2d Cir. 2008) ............................................................... 19, 20

*McLaughlin v. Anderson,*
 962 F.2d 187 (2d Cir. 1992) ...................................................................... 8

*Mehrkar v. Schulmann,*
 No. 99-10974 (DC), 2001 U.S. Dist. LEXIS 65069 (S.D.N.Y. Jan. 29, 2001) .................. 9

*Moore v. PaineWebber, Inc.,*
 306 F.3d 1247 (2d Cir. 2002) ............................................................... 18, 19

*Ouaknine v. MacFarlane,*
 897 F.2d 75 (2d Cir.1990) ......................................................................... 9

*Perrone v. General Motors Acceptance Corp.,*
 232 F.3d 433 (5th Cir. 2000) .................................................................... 21

*Piazza v. Ebsco Industry, Inc.,*
 273 F.3d 1341 (11th Cir. 2001) ................................................................. 23

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.,*
 507 F.3d 117 (2d Cir. 2007) ...................................................................... 2

*Poulous v. Ceaser's World, Inc.,*
 379 F.3d 654 (9th Cir. 2004) .................................................................... 22

*Richards v. Kaskel,*
 32 N.Y.2d 524 (1973) ............................................................................ 21

vi

*Robinson v. City of Chicago,*
    868 F.2d 959 (7th Cir. 1989) ........................................................................16, 18

*Robinson v. Metro-North Commuter Railroad,*
    267 F.3d 147 (2d Cir. 2001) ................................................................................17

*Simer v. Rios,*
    661 F.2d 655 (7th Cir. 1981) ..............................................................................18

*Supreme Tribe of Ben-Hur v. Cauble,*
    255 U.S. 356 (1921) ............................................................................................12

*Tuscano v. Tuscano,*
    403 F. Supp. 2d 214 (E.D.N.Y. 2005) ................................................................19

*United Republic Insurance Co. v. Chase Manhattan Bank,*
    168 F. Supp. 2d 8 (N.D.N.Y. 2001)......................................................................7

*Upshaw v. Georgia Catalog Sales, Inc.,*
    206 F.R.D. 694 (M.D. Ga. 2002)..........................................................................2

*Willey v. J.P. Morgan Chase, N.A.,*
    No. 09-1397 (CM), 2009 U.S. Dist. LEXIS 57826 (S.D.N.Y. Jul. 7, 2009)...................7, 8

*Williams v. Aries Financial, LLC,*
    No. 09-1816 (JG/RML), 2009 U.S. Dist. LEXIS 107812 (E.D.N.Y. Nov. 18, 2009) ........4

*Wood v. Carpenter,*
    101 U.S. 135 (1879) ..............................................................................................4

*Wooden v. Board of Regents of University System of Georgia,*
    247 F.3d 1262 (11th Cir. 2001) ..........................................................................18

*Zamito v. Patrick Pontiac, Inc.,*
    No. 07-6241 (CJS), 2008 U.S. Dist. LEXIS 65069 (W.D.N.Y. Aug. 21, 2008).............3, 5

*Zito v. Leasecomm Corp.,*
    No. 02-8074 (GEL), 2003 U.S. Dist. LEXIS 17236 (S.D.N.Y. Sept. 30, 2003)...............10

## STATUTES

15 U.S.C § 1640 ....................................................................................................2

18 U.S.C § 1341 ....................................................................................................8

18 U.S.C § 1343 ....................................................................................................8

18 U.S.C § 1962 ...................................................................................................*passim*

18 U.S.C § 1964(c) ...............................................................................................8

28 U.S.C § 1331 ...................................................................................................11, 12

28 U.S.C § 1332 ...................................................................................................*passim*

## RULES

Fed. R. Civ. P. 9.....................................................................................................4, 8

Fed. R. Civ. P. 12...................................................................................................2, 11

Fed. R. Civ. P. 15...................................................................................................2

Fed. R. Civ. P. 23...................................................................................................*passim*

N.Y. Gen. Bus. Law §§ 349 ....................................................................................*passim*

## PRELIMINARY STATEMENT

Defendants It's Huge, Inc. and Fuccillo Lincoln Mercury, Inc., d/b/a Fuccillo Hyundai (collectively, "FLM"), respectfully submit the following memorandum of law in opposition to plaintiff Heidi R. Seekamp's motion for leave to amend the Complaint in this putative class action. [Dkt. 41]   The Court should deny leave because, as detailed below, the proposed amendments do not cure the fatal deficiencies in plaintiffs common law and statutory claims, or in her attempt to parlay those claims, which reduce to a dispute over the characterization of an automobile after-market product called the Auto Theft Security Discount ("ATSD"), into a federal class action lawsuit.   In short, plaintiff, a New York resident seeking joinder of 10 New York corporations as additional dealership-defendants in this inherently local action, is attempting to assert statutory claims that are untimely and/or fail to state a cause of action, and is attempting to assert state law claims over which she cannot establish subject-matter jurisdiction, and that are, in any event, sufficiently flawed to preclude certification of this case as a class action.

I.     **THE MOTION FOR LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED BECAUSE THE AMENDED COMPLAINT CANNOT WITHSTAND A MOTION TO DISMISS UNDER RULE 12(B) OF THE *FEDERAL RULES OF CIVIL PROCEDURE*.**

    A.     **Applicable Legal Standard**.

A party may amend its pleading by leave of court, which shall be "freely give[n] ... when justice so requires." *Fed. R. Civ. P.* 15(a)(2).[1]   A district court, however, has discretion to deny leave to amend in appropriate circumstances, including where the amendment would be "futile." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  *See also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("One appropriate basis for denying leave to amend is that the

---

[1]      The proposed addition of parties under FRCP 21 is guided by the same liberal standard applicable to a motion to amend under Rule 15.

proposed amendment is futile"). For example, "[A]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Id.* (citing *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). Thus, as with a Rule 12(b)(6) motion to dismiss, the proposed amended complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, the proposed amended complaint "must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Bell Atlantic*, 550 U.S. at 557-58.)[2]

**B.     Plaintiff's Proposed Truth-in-Lending Act Claim is Time-Barred by the Applicable One-Year Statute of Limitations.**

The Truth-in-Lending Act, 15 U.S.C. § 1640(e), instructs that "[a]ny action under this section may be brought . . . within one year from the date of the occurrence of the violation." *Id.*[3] The phrase "occurrence of the violation" means different things depending on whether the violation occurs in the context of a "closed-end" credit transaction or an "open-end" credit plan. A "closed-end" credit transaction is one in which "the finance charge is divided into the term of the loan and incorporated into time payments." *Baskin v. G. Fox & Co.*, 550 F.Supp. 64, 66 (D. Conn. 1982). The automobile loan at issue in the above-captioned case -- payable in equal

---

[2]     Remarkably, plaintiff continues to rely on the now "retired" "prove not set of facts" formulation derived from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), and its progeny. (Pltf. Br., p. 7). *See Bell Atlantic*, 550 U.S. at 562.

[3]     Preliminarily, the class-period for a class action sought to be certified under Rule 23 is limited by the governing statute of limitations. *Upshaw v. Ga. Catalog Sales, Inc.*, 206 F.R.D. 694, 696 n. 2 (M.D. Ga. 2002).

monthly installments -- unquestionably qualifies as an extension of "closed-end" credit under TILA, and is thus subject to the one-year limitations period. *McAnaney v. Astoria Fin. Corp.*, No. 04-1101 (JFB/WDW), 2008 U.S. Dist. LEXIS 5535 (E.D.N.Y. Jan. 25, 2008) ("A 'closed-end credit' transaction . . . includes a completed loan *such as a mortgage or car loan*") (emphasis supplied); *accord Zamito v. Patrick Pontiac, Inc.*, No. 07-6241 (CJS), 2008 U.S. Dist. LEXIS 65069 (W.D.N.Y. Aug. 21, 2008). As to the accrual date of plaintiff's alleged TILA claim, "[I]t is well-settled law that in 'closed-end' credit transactions . . . the 'date of the occurrence of violation' is no later than the date the plaintiff enters the loan agreement [containing the allegedly inadequate disclosures]." *Cardiello v. The Money Store, Inc.*, No. 00-7332 (NRB), 2001 U.S. Dist. LEXIS 7107, *3 (S.D.N.Y. Jun. 1, 2001) (citations omitted); *Campbell v. Chandler Assoc.*, No. 05-1770 (RSP), 1997 U.S. Dist. LEXIS 3998 (N.D.N.Y. Mar. 28, 1997).

The PAC alleges, in pertinent part, "[O]n or about June 12, 2007, Plaintiff entered into a purchase and sale agreement ("PSA") with one of the Fuccillo Dealerships, Fuccillo Lincoln Mercury, Inc. d/b/a Fuccillo Hyundai . . ." (PAC ¶ 25) The "date plaintiff enter[ed] into the loan agreement" (*Cardiello, supra*), *i.e.*, June 12, 2007, thus marks the "date of the occurrence of violation" for accrual purposes. Plaintiff did not file her Complaint until January 7, 2009. [Dkt. 1] Consequently, even assuming, *arguendo,* that the claims in the PAC against the defendants sought to be joined would relate-back to that date (and without conceding that point), her TILA claim is untimely -- the limitations expired approximately seven (7) months before the Complaint was filed.

      (1)    **Plaintiff has not Pleaded -- and Cannot Prove -- any Grounds for Equitable Tolling of the One-Year Limitations Period**.

Plaintiff is unable to show that the doctrine of equitable tolling (a/k/a fraudulent

concealment) has any relevance here, where she had no contact with any FLM representative concerning the ATSD, or her car loan, after she left the dealership with her new car on June 12, 2007.  (Hurst Decl., Ex. 6, pp. 163-70)  *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 50 (2d Cir. 1985).  As this Court has acknowledged:

> The Second Circuit finds equitable tolling on the basis of fraudulent concealment if the plaintiff shows (1) that the defendant concealed from him the existence of his cause of action, (2) that he remained in ignorance of that cause of action until some point within [the applicable statutory period of the commencement of his action], and (3) that his continuing ignorance was not attributable to lack of diligence on his part.

*Campbell,* No. 95-1770, 1997 U.S. Dist. LEXIS 3998, * 6; *Cardiello,* No. 00-7332, 2001 U.S. Dist. LEXIS 7107, *15 ("The *sina qua non* of fraudulent concealment is that the defendant fraudulently concealed from the plaintiff his cause of action *during the time in which plaintiff could have brought that action.*  Absent such allegations, equitable tolling does not apply") (emphasis in original) (citations omitted).[4]

"In cases involving TILA, 'the courts uniformly hold that fraudulent conduct beyond the nondisclosure itself is necessary to equitably toll the running of the statute of limitations.'" *Zamito, supra,* No. 07-6241, 2008 U.S. Dist. LEXIS 65069, *14 (citations omitted); *accord Williams v. Aries Fin., LLC,* No. 09-1816 (JG/RML), 2009 U.S. Dist. LEXIS 107812, *20-21 (E.D.N.Y. Nov. 18, 2009).  Indeed, "the overwhelming weight of authority . . . in this circuit and in courts elsewhere favors the view that, ***absent some affirmative deception by defendants, the mere nondisclosure of fees later charged to plaintiff does not, by itself, justify equitable tolling of the TILA limitations period.***"  *McAnaney, supra,* No. 04-1101, 2008 U.S. Dist. LEXIS 5535,

---

[4]     "A plaintiff alleging fraud must set forth facts with particularity which support that claim of fraud (see Fed. R. Civ. P. 9[b]), and must establish that a defendant engaged in some 'trick or contrivance.'"  *Jacobs v. CitBank, N.A.,* No. 01-8436 (JSR)(KNF), *20-21 (S.D.N.Y. 2005) (citing *Wood v. Carpenter,* 101 U.S. 135, 143 (1879)).  Neither test is satisfied in the PAC.

* 29 (citations omitted; emphasis supplied).[5]  Accordingly, plaintiff is foreclosed from relying on the same mischaracterization which forms the basis of her claim (*i.e.*, the alleged oral and written statements to the effect that the ATSD was not insurance) as the basis for equitable tolling.

In this case, plaintiff explicitly acknowledged her understanding of the ATSD's terms and conditions (3-year coverage period, discount in the amount of the lesser of $2,000.00 or 10% of the cost of qualified replacement in the event vehicle stolen and deemed not recoverable), on both the forms she signed contemporaneously with the sale, and at her recent deposition. (Hurst Decl., Exs. 2,3 & 6, pp. 110-112, 120-21)  The ATSD's $295.00 cost was prominently disclosed and separately identified as "Etch" on all of the pertinent purchase and sale documents, and plaintiff has since testified that she knew exactly how much it cost.[6]  (*Id.*)  Plaintiff was furnished with copies of every document she signed on June 12, 2007, which she reviewed -- not only at the signing table -- but also at home right after the deal was concluded.  (*Id.*, Ex. 6, pp. 146-47)  As to the alleged misrepresentation that is central to plaintiff's claims, the ATSD registration form states, "[ATSD] is not insurance and does not provide general liability coverage or fulfill the requirements of financial responsibility laws.  Such coverages are usually provided

---

[5]      "The holdings make good sense because if the very nondisclosure or misrepresentation that gave rise to the TILA violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified." *Cardiello, supra,* at *16 (citing *Hughes v. Cardinal Fed. Sav. & Loan Ass'n.,* 566 F. Supp. 834, 838 (S.D. Ohio 1983) ("otherwise the one-year statute of limitations would be tolled in almost every TILA action in which a non-disclosure violation was found and the statutory limitations provision would be a nullity")).

[6]      To be entirely clear, this is not a case of nondisclosure, it is one of characterization.  Indeed, the ATSD registration form plaintiff signed (a copy of which was obviously integral to the drafting of the Complaint - so much so that it was an exhibit to the original pleading that has now been inexplicably omitted from the PAC), states, "I do choose to register my VEHICLE under the AUTO THEFT SECURITY DISCOUNT. By my signature below, I request to purchase the AUTO THEFT SECURITY DISCOUNT and acknowledge that I have read and fully understand both sides of this agreement." Immediately below that line is another which states, "I do not choose to register my VEHICLE under the AUTO THEFT SECURITY DISCOUNT.  I understand that by not accepting this registration, and, in the event my VEHICLE is stolen and recovered, I am not entitled to any of the AUTO THEFT SECURITY DISCOUNT benefits provided." Similarly, plaintiff was presented with a "menu" of add-on products, including the ATSD. She declined some, and selected others, all of her own volition. Indeed, plaintiff's deposition testimony establishes that no one told her she must purchase the ATSD, no one told her that her purchase of the ATSD was required before should would qualify for, or as a condition of, her financing the purchase and no one forced her to accept the ATSD. (Hurst Decl., Ex. 3)

by the customer's personal automobile insurance carrier." (*Id.*, Ex. 3)  Thus, to the extent plaintiff -- who spent several years reviewing and interpreting health insurance policies as part of her full-time employment -- questioned the veracity of the written, "not insurance" representation, which she did almost immediately, she had every ability to bring it to the attention of, for example, an attorney or consumer protection bureau, without interference by FLM.[7]

Apart from her initial purchase and subsequent consultations and communications concerning unrelated automobile repairs, plaintiff never contacted FLM to inquire further about the alleged "insurance vs. warranty" question (and therefore was never deceived by anyone concerning that issue), and never made any claim for the discount available under the ATSD, because her vehicle, which she still owns, was never stolen. There having been no pertinent communications between plaintiff and FLM during the one-year limitations period, there is obviously no basis upon which to find that FLM fraudulently concealed the existence of her alleged TILA cause of action. Consequently, her attempt to amend the Complaint to assert that untimely claim is futile, and should be rejected.[8]  *See Mason v. Town of New Paltz Police Dep't*, 103 F. Supp. 2d 562, 568 (N.D.N.Y. 2000) (Mordue, J.) ("The Court finds that amendment to assert state law claims . . . would be futile because such claims are [time-]barred"); *Harris v. Buffardi*, No. 08-1322 (GLS/DRH), 2009 WL 3381564 (Oct. 19, 2009) (Homer, M.J.) (denying

---

[7]     As detailed more fully below, plaintiff has since testified that, unlike the allegations in the PAC, her sales representative actually represented orally that the ATSD *was* insurance. (Hurst Decl., Ex. 6, pp. 130-34)  Armed with that conflicting information (*i.e.*, the ATSD form which says "not insurance" and the sales representative's alleged oral statement to the contrary), a significant question arises as to the reasonableness of plaintiff's reliance on the written document - a circumstance, among others, which renders her claim unique and thus unsuitable for class treatment.

[8]     Plaintiff did nothing to investigate her alleged TILA claim until Fall, 2008, when she responded to an internet solicitation sponsored by Lemberg & Associates (www.lemonlaw.com), her current counsel, concerning a potential Lemon Law claim, which was ultimately resolved by the payment of $2,500.00 by Hyundai Motor America to plaintiff and her attorneys without FLM's knowledge or involvement in the claim. (Hurst Decl., Ex. 6, pp. 152-62)

leave to amend where "the fifteenth cause of action would be untimely and, therefore, futile").

### C.    Plaintiff's Proposed RICO Claim (Count VIII) Fails to State a Cause of Action.

Post-*Iqbal*, district courts employ a two-step analysis in evaluating the sufficiency of a proposed amended Complaint. *Ashcroft v. Iqbal*, 129 S.Ct. at 1950. First, the court must "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* In other words, the court properly rejects legal conclusions unsupported by facts. *Id.* Next, the court should "determine whether [the well-pleaded factual allegations] plausibly give rise to an entitlement to relief." *Id.* In doing so, the court is permitted to "draw on its judicial experience and common sense." *Id.*

Utilizing this framework, courts routinely dismiss claims which do nothing more than state legal conclusions or parrot the language of a statute. *See, e.g., Inst. for the Dev. of Earth Awareness v. People for the Ethical Treatment of Animals,* No. 08-6195 (PKC), 2009 U.S. Dist. LEXIS 78220, *3-4 (S.D.N.Y. 2009) (dismissing cause of action that contained only "conclusory assertions[, but] ... no factual allegations," and rather "simply restated the [statutory] language"); *accord Willey v. J.P. Morgan Chase*, N.A., No. 09-1397 (CM), 2009 U.S. Dist. LEXIS 57826, *4 (S.D.N.Y. 2009).[9]

As a threshold matter, plaintiff's RICO claims merely repeat the statutory language concerning mail and wire fraud *verbatim* (PAC, ¶¶ 100(a), (b)), yet nowhere does the Complaint make any factual allegation establishing that *FLM ever used* any mail or any "wire, radio or

---

[9]     Plaintiff's belated attempt to assert a RICO claim raises an additional set of concerns -- "[C]laims under RICO are subject to a high level of scrutiny due to their potential for abuse by civil litigants." *Maltezos v. Marine Terrace Apts.*, No. 87-7347 (KMW), 1990 U.S. Dist. LEXIS 4331 (S.D.N.Y. Apr. 13, 1990) (citation omitted); *accord United Repub. Ins. Co. v. Chase Manhattan Bank*, 168 F. Supp. 2d 8, 18 (N.D.N.Y. 2001) (Hurd, D.J.) ("Because of extensive misuse of the RICO statute for civil claims, specificity in RICO pleading is needed to extinguish superficial claims at the beginning of the suit") (citations omitted). In this case, plaintiff, having previously jettisoned her claim for alleged violation of the *Magnusson-Moss Warranty Act*, and being unable to sustain her untimely TILA claim or establish diversity jurisdiction in this Court for the reasons discussed, *infra*, has asserted a RICO claim as a "hail-Mary" attempt to keep this case pending in this Court.

television communication" to transmit any fraudulent information to plaintiff (or, for that matter, anyone else) concerning the ATSD. Nor do the mail and wire fraud statutes cited, 18 U.S.C. §§ 1341, 1343, furnish any private right of action. *See, e.g., Garay v. U.S. Bancorp*, 303 F. Supp. 2d 299 (E.D.N.Y. 2004) ("[i]t is well-established that there is no private right of action for mail fraud"). Under the authority of the Supreme Court's recent decisions in *Iqbal* and *Twombly*, plaintiff's failure to plead actual *facts* connecting FLM's conduct to any mail and wire fraud is fatal to her attempt to amend the Complaint to assert a RICO-fraud claim.[10]

**(1)     Plaintiff cannot state a cause of action under RICO because
she has not alleged a violation of 18 U.S.C. § 1962.**

RICO grants standing to pursue a civil damages remedy to "any person injured in his business or property by reason of a violation of 18 USC § 1962." 18 USC § 1964(c). "In order to bring suit under § 1964(c), a plaintiff must plead (1) the defendant's violation of § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." *Commer. Cleaning Servs. v. Colin Serv. Sys.*, 271 F.3d 374 (2d Cir. 2001). Here, the PAC fails to allege that FLM violated 18 U.S.C. § 1962 – a fundamental (and fatal) pleading defect. *See Barrus v. Dick's Sporting Goods, Inc.*, No. 05-6253, 2010 U.S. Dist. LEXIS 79014 (W.D.N.Y. 2010) ("To state a civil claim under RICO, a plaintiff must first allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962").

**(a)     18 U.S.C. § 1962(a)**

Next, to state a claim under 18 U.S.C. § 1962(a), the Complaint must "allege that defendants used or invested racketeering income to acquire or maintain an interest in the alleged

---

[10]     Further, "[U]nlike the other criminal offenses the statute enumerates as racketeering, use of the mail or wires is not inherently criminal. . . . For these reasons, RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Gross v. Waywell*, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009) (internal quotations omitted). Such allegations are "scrutini[zed] under the particularity requirements of FRCP 9(b)." *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992).

enterprise, and that [plaintiff] suffered an injury as a result of that use or investment." *Allen v. Divine*, No. 09-688 (ADS)(MCO), 2010 U.S. Dist. LEXIS 74495 (E.D.N.Y. 2010) (holding that to state a claim under 1962(a), a plaintiff must allege "an injury resulting from the investment of racketeering-generated funds") (citing *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990)).[11] Here, the PAC does not even specify who or what constitutes the alleged RICO enterprise, much less identify investments of alleged racketeering income into or derived from it which were made to injure plaintiff.  Plaintiff has thus failed to state a claim under § 1962(a).

### (b)    18 U.S.C. § 1962(b)

"To state a claim under Section 1962(b), the plaintiff must allege that: (1) the purpose of the defendants racketeering activity was to acquire an interest or to maintain control of the enterprise; (2) that the defendants in fact acquired an interest or maintained control of the enterprise through their pattern of racketeering activity; and (3) that the plaintiff suffered injury as a result of the acquisition of the enterprise." *Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 228 (E.D.N.Y. 2005).  "As with § 1962(a), § 1962(b) requires allegations of an injury that is distinct from the racketeering activity itself." *Mehrkar v. Schulmann*, 99-10974 (DC), 2001 U.S. Dist. LEXIS 717(Jan. 29, 2001), *15.

The PAC does not allege that the purpose of FLM's sale of ATSD was to acquire an interest in or maintain control over any of the defendant companies. The PAC does not allege that any of the defendant companies (existing or proposed) acquired an interest in any other company through a pattern of racketeering activity.  The PAC does not allege that plaintiff was injured as the result of one of the defendant companies acquiring another defendant company.  In

---

[11]     *cf. Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 455 (2006) (noting that in support of the allegation under 1962(a), the plaintiff claimed that the defendant "used funds generated by their fraudulent tax scheme to open [defendant's] Bronx location" and "[t]he opening of this new facility caused [the plaintiff] to lose significant business and market share").

sum, the PAC utterly fails to meet the applicable pleading requirements and therefore fails to state a cause of action under 18 U.S.C. § 1962(b).

### (c)     18 U.S.C. § 1962(c)

According to the United States Supreme Court, "[t]o establish liability under § 1962(c), one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 161 (2001). A corporation itself may constitute an enterprise, but the corporation "cannot itself be both the enterprise and a defendant charged with operating the enterprise." *Zito v. Leasecomm Corp.*, No. 02-8074 (GEL), 2003 U.S. Dist. LEXIS 17236 (S.D.N.Y. 2003); *accord Bennett v. Unites States Trust Co.*, 770 F.2d 308, 315 (2d Cir. 1985).

As previously noted, the PAC fails to specify the alleged RICO enterprise, and does not identify which defendant was allegedly operating it. However, the PAC does allege that "each of the Fuccillo Dealerships is owned and controlled by It's Huge," (PAC ¶ 21) and that "It's Huge was responsible at all relevant times for establishing, overseeing, implementing and perpetuating all aspects of the sale of ETCH ATSD's by and through the Fuccillo Dealerships." (PAC ¶ 22) Again, even assuming *arguendo* that those allegations could be proven, "[a] corporation and its wholly-owned subsidiary[ies] are not 'distinct' for the purposes of RICO when they are allegedly acting 'within the scope of a single corporate structure, guided by a single corporate consciousness.'" *Zito*, *supra* at *17 (quoting *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir. 1996)). Thus, the allegations of the PAC *legally preclude* the assertion of a RICO claim under § 1962(c).

### (d)     18 U.S.C. § 1962(d)

18 U.S.C. Section 1962(d) makes it illegal to conspire to violate the first three subsections of section 1962.  As established above, the PAC makes no allegation as to any specific violation of any of those subsections.  Absent such allegations, the PAC fails to state a cause of action for conspiracy to engage in prohibited conduct under RICO.  *See, e.g. Knoll v. Schectman*, 275 Fed. App'x 50 (2d Cir. 2008) (holding "[a]ny claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient") (internal quotations omitted).

**D.      Absent her TILA and RICO Claims, Plaintiff Cannot Establish Diversity Jurisdiction Over Her Remaining State Law Claims.**

Having established that the instant motion should be denied as to plaintiff's proposed TILA and RICO claims -- the sole basis for Federal Question jurisdiction -- plaintiffs proposed remaining state law claims are subject to dismissal under Rule 12(b)(1) or Rule 12(c) for lack of subject-matter jurisdiction.  As pertinent here, the *Class Action Fairness Act* ("CAFA"),[12] which amended 28 U.S.C. 1332, liberalized, but did not eviscerate, the requirements of diversity jurisdiction: "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest or costs, and is a class action in which -- (A) *any member of a class of plaintiffs is a citizen of a State different from any defendant*."  28 U.S.C. 1332(d)(2) (emphasis supplied).  "Thus, § 1332(d)(2) provides two of the requirements for original CAFA jurisdiction: an amount in controversy over $5,000,000 (obtained by aggregating the claims of the individual class members, (id. §

---

[12]      Principally codified at 28 U.S.C. 1332(d).

1332(d)(6)), and minimal diversity." *Cappuccitti v. DirectTV, Inc.*, 611 F.3d 1252, 1256 (11th Cir. 2010).[13]

As a threshold and dispositive matter, the PAC does not even meet CAFA's standard of "minimal" diversity, *i.e.*, one plaintiff and one defendant from different states. Indeed, the PAC alleges, "Plaintiff is a natural person who resides at in [*sic*] Latham, New York 12110." (PAC ¶ 18). The PAC then pleads that "Defendant It's Huge, Inc is a New York Corporation [sic] whose principal place of business is located at . . . Adams, New York, 13605." (PAC ¶ 19) Paragraph 20 of the PAC alleges "[T]he principle office of each of the FLM Dealerships is located at . . . Adams, New York 13605" (PAC ¶ 20). The same is true with respect to the existing Fuccillo defendants, It's Huge, Inc. and Fuccillo Lincoln Mercury, Inc. Although the Complaint baldly pleads that "members of the proposed classes are citizens of States other than any defendant," the status of unnamed plaintiffs is utterly irrelevant to the jurisdictional analysis. *See Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 365 (1921); *accord In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 162 (2d Cir. 1987) ("It is hornbook law . . .that complete diversity is required only between the named plaintiffs and named defendants in a federal class action") Accordingly, leave should be denied because, as plaintiff concedes in her brief (Pltf. Br., pp. 7-8), it is "futile for a plaintiff . . . to amend the complaint such that the proposed amendment would, on its face, violate class action requirements, ***and . . . in such a case, leave to amend should be denied***." *Feldman v. Lifton*, 64 F.R.D. 539, 543 (S.D.N.Y. 1974) (emphasis supplied).

### (1)    The PAC Does Not Satisfy the $75,000 Amount in Controversy Requirement

---

[13]    As detailed more fully below, under the Eleventh Circuit's recent holding in *Cappuccitti*, CAFA requires the following showing to establish diversity jurisdiction: (i) at least one plaintiff with a claim in excess of $75,000; (ii) an aggregate of all claims exceeding $5,000,000; (iii) minimal diversity (*i.e.*, at least one plaintiff and one defendant from different states); (iii) a putative class in excess of 100 persons; and (v) that the action be commenced under Rule 23. 611 F.3d 1256-58.

On July 19, 2010, the United States Court of Appeals for the Eleventh Circuit joined the Court of Appeals for the Ninth Circuit in holding that the claim of at least one member of a proposed class in a case filed in or removed to federal court under CAFA must exceed $75,000 in order to satisfy the diversity jurisdiction threshold of 28 U.S.C. § 1332(a). *Cappuccitti*, 611 F.3d at 1256-57. ("We hold that in a CAFA action originally filed in federal court, at least one of the plaintiffs must allege an amount in controversy that satisfies the current congressional requirement for diversity jurisdiction provided in 28 U.S.C. § 1332(a)"). *See also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 689 (9th Cir. 2006) (stating on a motion for remand, "[D]ow, however, has not established that even one plaintiff satisfies the $75,000 jurisdictional amount requirement of § 1332(a), applicable to mass actions by virtue of § 1332(d)(11)(B)(i)"). The *Cappuccitti* court observed:

> If we held that § 1332(a)'s $75,000 requirement for an individual defendant did not apply to § 1332(d)(2) cases, we would be expanding federal court jurisdiction beyond Congress's authorization. We would essentially transform federal courts hearing originally-filed CAFA cases into small claims courts, where plaintiffs could bring five-dollar claims by alleging gargantuan class sizes to meet the $5,000,000 aggregate amount requirement. While Congress intended to expand federal jurisdiction over class actions when it enacted CAFA, surely this could not have been the result it intended.

*Cappuccitti*, 611 F.3d at 1257.

First, the Complaint's sole jurisdictional allegation (apart from federal question jurisdiction under 28 U.S.C. § 1331, which is discredited above) is that the Court has jurisdiction pursuant to "28 U.S.C. § 1332(d), since it is brought as a class action under Rule 23 of the [FRCP], the amount in controversy exceeds $5,000,000 and members of the proposed class are citizens of States other than any defendant." (PAC, ¶ 16(a)). While that allegation may suffice as to "two of the requirements for original CAFA jurisdiction:  an amount in controversy over

13

$5,000,000 (obtained by aggregating the claims of the individual class members, id. § 1332(d)96)), and minimal diversity," (*Cappuccitti*, 611 F.3d at 1256), the Complaint is deficient absent an allegation that at least one plaintiff has an amount in controversy of at lest $75,000.00. *Id.* at 1257 ("there is no evidence of congressional intent in § 1332(D) to obviate § 1332(a)'s $75,000 requirement as to at least one plaintiff.")[14] Here, notwithstanding months of discovery, there is but a single representative plaintiff who paid $295.00 for the ATSD and has never had her vehicle stolen. She does not and cannot establish the $75,000 amount in controversy in this case, which reduces to an overblown small-claims action. *Id.* at 1258 ("Nowhere in his complaint does Cappuccitti make [an adequate jurisdictional allegation]. Nor could he-- he alleges that the maximum early cancellation penalty suffered by any individual plaintiff was $480"). Thus, as in *Cappuccitti*, "[T]here is simply nothing in the complaint to satisfy this essential [amount in controversy] requirement of CAFA actions filed originally in federal court." *Id.* at 1258.[15]

**E.    In Any Event, the PAC Fails to State a Cause of Action for Violation of N.Y. *General Business Law* § 349, Breach of Contract, Rescission or Unjust Enrichment Because There Has Been No Breach and Plaintiff has Suffered No Damages.**

In terms of any contractual relationship, the only promises made by FLM in the ATSD were that for three years following the sale: (i) "the system installed will be effective deterrent

---

[14]    The *Cappuccitti* court further observed, "[M]oreover, the $75,000 requirement expressly applies in actions removed under CAFA, 28 U.S.C. § 1332(d)(11)(B)(i), and we can think of no reason why Congress would have intended the requirement in the context of CAFA removal jurisdiction but not CAFA original jurisdiction." *Id.*

[15]    It is also obvious that this case falls within the "Local Controversy" exception to CAFA, codified at 28 U.S.C. § 1332(d)(4). Under that section, a district court must decline jurisdiction in any case where more than two-thirds of all class members are citizens of the original forum state (here, New York), and (i) at least one defendant from whom "significant relief is sought" and whose alleged conduct forms a "significant basis for the claims" lives in that state; (ii) the "principal injuries" were suffered in that state; and (iii) no other class action has been filed by anyone in the prior three years asserting "the same or similar factual allegations against any of the defendants." *Id.* *See also Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364, 370-71 (E.D. La. 2007). Here, discovery to date shows, not unexpectedly, that new car purchasers generally do not travel out-of-state to purchase their vehicles. Indeed, more than 98% of the purchasers already disclosed reside in New York, as does every defendant, existing and proposed. (Hurst Decl., Ex. 7; supporting documentation omitted) There have never been any putative class actions against FLM (or any other Fuccillo dealership) arising out of the ATSD, apart from the instant one.

against Vehicle theft," and (ii) in the event the vehicle is stolen and not recovered (or recovered after theft and deemed a total loss), "the Authorized Dealer will provide You with 10% discount towards the purchase of a Replacement Vehicle in the amount of up to $2,000." (Hurst Decl., Ex. 3) The PAC does not allege that plaintiff's (or any other unnamed class member's) vehicle was stolen and not recovered or deemed a total loss -- the prerequisites to coverage under the ATSD. Similarly, the PAC does not allege that plaintiff (or any other unnamed class member) has actually asserted a claim under the ATSD which was never paid, but instead relies on pure speculation that had a claim ever been asserted, it likely would not have been paid.[16] Based on that thin speculation, she seeks expansive fraud-based relief.

A claim for breach of contract obviously requires a breach, and a claim for alleged violation of GBL § 349 requires a consumer to demonstrate: "(1) the defendant's act was misleading in a material way; (2) the act was directed at consumers; and (3) the plaintiff has been injured as a result". *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 542 (E.D.N.Y. 2007) (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). The PAC fails to allege how the alleged *mischaracterization* in the ATSD caused her any harm or how FLM was unjustly enriched by its sale -- her vehicle was inscribed with the promised etch numbers and was never stolen. At her deposition, plaintiff admitted that she could not foreclose the possibility that the Etch had proven to be an effective deterrent with respect to her vehicle.

Similarly, plaintiff cannot state a claim for unjust enrichment because no benefit or obligation due to her from FLM has ever been withheld. She purchased a theft deterrent for the disclosed sum of $295.00, which offered a discount on the purchase of a new vehicle in the event

---

[16]     On the contrary, plaintiff admits that her vehicle bearing the etch numbers was never stolen, and that she never made any claim for benefits under the ATSD which she now complains was fraudulent. (Hurst Decl., Ex. 5) Her standing to maintain any claim under those circumstances, much less represent a class of plaintiffs, is seriously in doubt.

the etched numbers failed to deter theft. Again, her vehicle was etched and never stolen and so she never asserted a claim using a 1-800 number or anything else, and cannot identify any putative plaintiff who ever did. Her attempt now to re-frame her allegations concerning the functionality (or lack thereof) of the 1-800 number maintained and administered by defaulting co-defendant *Universal* thus misses the mark entirely -- FLM was the only "Authorized Dealer" and was the party required to grant a discount on the cost of a replacement vehicle if the etch failed to deter theft.  No claim in that regard was ever raised by plaintiff or anyone else.  In short, plaintiff lacks standing to claim that ATSD was fraudulent or that FLM was unjustly enriched by its sale.

## II.   THE MOTION TO AMEND SHOULD BE DENIED BECAUSE PLAINTIFF WILL BE UNABLE TO CERTIFY A CLASS

Under Rule 23(a) of the FRCP, "one or more members of a class may sue . . . as representative parties on behalf of all if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims of defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Fed. R. Civ. P.* 23(a).  Once all of the requirements of Rule 23(a) are satisfied, plaintiff bears the additional burden of showing that her claim falls within at least one subsection of Rule 23(b).  In the instant matter, plaintiff seeks certification of her class under Rule 23(b)(2) and (b)(3).

### A.   The PAC Does Not Satisfy the Requirements of Rule 23(b)(2)

Rule 23(b)(2) provides that certification is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Fed. R. Civ.* P. 23(b)(2).  However, it is only "[W]hen the main relief sought is injunctive or declaratory, and the

damages are only 'incidental,' [that] the suit can be maintained under Rule 23(b)(2)." *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005); *Robinson v. Metro-North Comm. R.R.*, 267 F.3d 147, 162 (2d Cir. 2001) (Rule 23 "is intended for cases when broad, class-wide injunctive relief or declaratory judgment is necessary to redress a group-wide injury"). Therefore, "the primary limitation on the use of Rule 23(b)(2) is the requirement that injunctive or declaratory relief be the ***predominant remedy*** requested for the class members." *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 66, 477 (N.D. Ill. 1992) (emphasis supplied).

As evidenced by the allegations in the PAC, the "predominant remedy" requested here is money. (*See, e.g.*, PAC ¶¶ 63, 70, 76, 81, 84, 88, 98 and 102) *Bolin v. Sears Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000) (holding that plaintiffs may not "shoehorn damages actions into the Rule 23(b)(2) framework"). Indeed, monetary damages predominate even in the single paragraph which mentions injunctive relief:

> Plaintiff, in her own behalf and on behalf of those similarly situated, seeks to enjoin the practices complained of herein, asks that the Court order the Defendant to refund to all Class members, including plaintiff, all premiums and charges paid in connection with the sale of ETCH ATSDS and asks that the Court further order disgorgement by the Defendants of all profits and benefits unlawfully obtained from the unauthorized sale of insurance, together with treble damages, and all attorneys' fees and costs.

(PAC ¶ 15) Moreover, plaintiff seeks declaratory relief only with respect to two of her eight putative claims -- the proposed cause of action for alleged violation of GBL § 349, and her proposed fifth cause of action for unjust enrichment. Finally, the Complaint, which identifies a single completed transaction which occurred on June 12, 2007, is framed in the past tense and makes no allegation which establishes that the conduct sought to be enjoined or declared unlawful is ongoing. Nor could it -- the unrefuted discovery in this case establishes that the

allegedly deceptive conduct was discontinued in its entirety as to all dealerships in late-2007. (Hurst Decl., Ex. 7)

In *Simer v. Rios*, 661 F.2d 655 (7th Cir. 1981), as here, plaintiffs "attempt[ed] to characterize their complaint as one for declaratory and injunctive relief," but it was "clear that the final form of the relief obtained would be monetary in nature." *Id.* at 669. The Court of Appeals for the Seventh Circuit concluded, "[C]lass certification under (b)(2) is not appropriate where the relief requested (or in this case obtained) is monetary in nature." *Id.* (citing *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 64 F.R.D. 43, 53 (D. Del. 1974), *aff'd.*, 611 F.2d 32 (3d Cir. 1979)); *accord* 3B Moore's Federal Practice P 23.45(1) at 23-322. Here, plaintiff has barely pleaded a request for injunctive or declaratory relief, much less any entitlement thereto, and the final form of relief actually being sought is purely and patently monetary in nature. [17] Accordingly, the PAC does not state a cause of action for class certification under Rule 23(b)(2).

**B.     The PAC Does Not Satisfy the Requirements of Rule 23(b)(3).**

Under Rule 23(b)(3), "[a] class action may be maintained if .. . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members," and that a class action is superior to other methods of adjudication for fairness and efficiency. *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class members' case as a genuine controversy can be achieved through generalized proof, ***and*** if these particular issues are more substantial than the issues subject only to individualized

---

[17]     Nor is her claim for injunctive relief, to the extent one is asserted, suitable for class treatment because (i) she purchased her vehicle in 2007 and (ii) cannot show that she, herself, would again be injured by the challenged conduct. *Robinson v. City of Chicago*, 868 F.2d 959, 967-68 (7th Cir. 1989); *Elizabeth v. Montanez*, 458 F.3d 779, 784-85 (8th Cir. 2006); *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007); *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001) ("to have standing to obtain forward looking relief, a plaintiff must show a sufficient likelihood that he will be affected by the allegedly wrongful conduct in the future"). In any event, her request for injunctive relief is moot

proof." *Id.* at 1252 (emphasis supplied).[18]  Here, individualized issues of reliance, causation and damages permeate plaintiff's RICO and state-law claims, thus rendering this case ill-suited to certification under Rule 23(b)(3).

In *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), the plaintiffs sued under 18 U.S.C. § 1962(c) (RICO) claiming that they were deceived by defendants' marketing activities. *Id.* at 220.  "The gravamen of plaintiffs' complaint [was] that defendants' implicit representation that Lights were healthier led them to buy Lights in greater quantity than they otherwise would have and at an artificially high price, resulting in plaintiffs' overpayment for cigarettes." *Id.*  Similarly, the "gravamen" of plaintiff's complaint here is that FLM's representation that the ATSD was a theft deterrent and not insurance led members of the putative class to buy the ATSD, presumably at a higher price than would have been available from a licensed insurer.

The Court of Appeals for the Second Circuit held that reliance on a misrepresentation made as part of a nationwide marketing strategy "cannot be the subject of general proof." *Id.* at 223.  In so doing, the Court rejected plaintiff's claim that common issues predominated because defendant's alleged fraud resulted from a common course of conduct, reasoning:

> proof of misrepresentation -- even widespread and uniform misrepresentation -- only satisfies half of the equation; the other half, reliance on the misrepresentation, cannot be the subject of general proof. Individualized proof is needed to overcome the possibility that a member of the purported class purchased Lights for some reason other than the

---

[18]  Rule 23(b) sets out certain guidelines for measuring predominance and superiority.  It specifies that a court, in determining whether to certify a class under the Rule, should consider:

- The interests of the class members in individually controlling their own litigation;
- The nature and extent of any relevant, pending litigation brought by or against members of the class;
- The desirability of concentrating the litigation in the particular forum; and,
- Difficulties likely to arise in managing the class action.

FRCP 23(b)(3)(A)-(D).

> belief that Lights were a healthier alternative -- for example, if a Lights
> smoker was unaware of that representation, preferred the taste of Lights,
> or chose Lights as an expression of personal style.

*Id. See also Moore*, 306 F.3d at 1253 ("[o]n the other hand, although having some common core,

a fraud case may be unsuited for treatment as a class action if there was material variation . . . in

the kinds or degrees of reliance by the persons to whom they were addressed").

In this case, while proof that FLM used a standardized document to register the ATSD

might suffice to show an alleged misrepresentation, it is insufficient to show causation, *i.e.*, "to

overcome the possibility that a member of the purported class purchased" the ATSD for some

reason other than their allegedly erroneous belief that it was not insurance, as, for example, for

safety reasons, or, as with plaintiff here, because they were indifferent to the purchase and a

companion recommended it - a circumstance which breaks the chain of causation between the

alleged misrepresentation and the purchase. (Hurst Decl., Ex. 6, pp. 131, 186-87).

This Court recently applied *McLaughlin*'s holding in *Dungan v. The Academy at Ivy*

*Ridge*, 249 F.R.D. 13 (N.D.N.Y.) (McAvoy, D.J.), *aff'd.*, 344 Fed. App'x 645 (2009), where the

putative class plaintiffs "alleged that defendants misrepresented Ivy Ridge's accreditation status

and authorization to issue diplomas and credits in order to induce parents to send their children to

Ivy Ridge." *Dungan*, 344 Fed. App'x at 647.    In denying class certification, Justice McAvoy

held:

> This case is predominately a fraud case. Plaintiff asserts causes of action
> under 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d) (fraud-base RICO
> claims), and claims for rescission of contract based on fraud, fraud in the
> inducement, and common law fraud. Plaintiffs also assert claims of unjust
> enrichment, breach of contract, negligent misrepresentation, negligence
> and violations of N.Y. General Business Law §§ 349 and 350, and for a
> fraudulent conveyance. Seven of these causes of action (the RICO claims,
> the fraud claims, the rescission claims, the negligent misrepresentation
> claims, and the General Business Law § 350 claims) require proof of
> reliance, causation and damages. See *McLaughlin*, 522 F.3d at 222 (noting

that proof of reliance is necessary in RICO cases); *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996) ("In an action to recover damages for fraud, the plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."); *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007) ("A claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."); *Richards v. Kaskel*, 32 N.Y.2d 524, 536 n. 6 (1973) (noting that, in actions for fraud or damages or rescission, reliance is a predicate to recovery); *DeAngelis v. Timberpeg East, Inc.*, 51 A.D.3d 1175 (3d Dep't 2008) (noting justifiable reliance is a requirement of a claim under General Business Law § 350). These issues of reliance and causation are the main focus of Plaintiffs claims and . . . the Court finds that the issues of reliance and causation will predominate over this case and that certification, or issue certification, will not reduce the range of issues in dispute and promote judicial economy. *See, e.g., In re Initial Public Offering Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006) ("The predominance requirement fails initially with respect to the issue of reliance.").

The same concerns pertain here and should compel finding that plaintiff's attempt to certify a class based on the PAC is futile. As in *Ivy Ridge*, reliance is an element of plaintiff's "Consumer Fraud" claim (Count II of the PAC), yet is not even alleged (an independent and sufficient reason not to grant leave to amend as that claim), and is an element of plaintiff's "Breach of Fiduciary Duty" claim (Count III of the PAC), which specifically alleges that "[defendants] rendered a promise in reliance upon which the consumer transferred money and the Defendants were unjustly enriched" (PAC ¶ 74). Reliance is also an element of plaintiff's "Rescission" claim (Count VI of the PAC), and an element of plaintiff's newly- minted RICO claim (Count VII of the PAC).[19]   And as to plaintiff's GBL § 349 claim (assuming it is not a

---

[19]     Individual reliance is also necessary to prove actual damages under TILA (15 U.S.C. § 1640). *See Perrone v. Gen. Motors Acceptance Corp.*, 232 F.3d 433, 438-440 (5th Cir. 2000) (noting, *inter alia*, that "the overwhelming majority of district courts to address this issue have held that detrimental reliance is an element of actual damages [under TILA]," and refusing to certify class).

GBL § 350 false advertising claim that has been re-cast specifically to avoid the reliance requirement attended thereto), while reliance may not be an element of the claim, plaintiff must demonstrate that she, and every member of the putative class, was deceived in a "material" way by the alleged mischaracterization, and that such deception *caused* them to purchase the ATSD. *See Gale v. IBM Corp.*, 9 A.D.3d 446 (2d Dep't 2004). In other words, plaintiff will have to prove that, had the ATSD been "properly" characterized as "insurance," she -- and every other class member -- would not have paid the $295.00 fee therefor. There is just no possible way that can be established through "generalized" proof.[20]  *Poulous v. Ceaser's World, Inc.*, 379 F.3d 654, 664 (9th Cir. 2004) ("[I]ndividualized reliance issues *related to proof of causation* would predominate over common questions") (emphasis supplied). In other words, whether or not the "insurance" vs. "warranty" distinction had any significance to the putative class (*i.e.*, whether they would have declined to purchase ATSD if it had been characterized as insurance), could never reasonably be determined without a plaintiff-by-plaintiff examination (a/k/a a "mini-trial") as to each plaintiff's motivation and understanding, *i.e.*, without individual proof of causation.

**C.   Plaintiff's Claims Fail Under the Commonality, Typicality and Predominance Tests Due to the Existence of Defenses Unique to Her.**

---

[20]   For exactly that reason, Senior District Judge Jack B. Weinstein recently denied a class certification motion filed by Lemberg & Associates in the action titled *Haynes v. Planet AutoMall, Inc.*, No. 09-03880 (E.D.N.Y. Jul. 28, 2010), thus refusing to certify plaintiffs claims for alleged violations of TILA, GBL § 349 and unjust enrichment, which, as here, arose out of alleged misrepresentations made in the context of defendant automobile dealerships' imposition of a processing fee and sale of an extended warranty in connection with new car sales.   As best we can discern, Lemberg & Associates is now 0-2 on contested class certification motions, and neither appeared to be a close case. (Hurst Decl., Exs. 8 & 9) Because of the limited purview of the instant motion, FLM reserves its right to assert that plaintiff is unsuited as a class representative because her chosen counsel is inadequate. For example, this Court ordered that the instant motion be filed by September 1, 2010. It was filed on September 2, 2010. This Court's rules require that the motion be accompanied by an affidavit. It was not. This Court's rules require that the differences between the original pleading and the amended pleading be highlighted, generally by a redline copy. None was submitted. Plaintiff's supporting memorandum of law contains neither a table of contents nor a table of authorities. This Court held a mid-discovery status conference on notice to all parties on August 31, 2010. Plaintiff's counsel never showed. When these foibles are added to counsel's lack of experience in class action litigation, it is clear that plaintiff is an inadequate representative because she cannot satisfy the "adequacy of representation" prong of Rule 23(a).

Whether considered under Rule 23(a)'s requirements of commonality, typicality or adequate representation, or under Rule 23(b)'s "more stringent" requirement that common questions of law or fact predominate (*see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)), where the putative class defendants have unique defenses to the named plaintiff's claims which threaten to dominate the litigation, that plaintiff cannot represent the class. In short, "[A] putative class representatives claims are not typical if that representative is subject to unique defenses." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 338 (S.D.N.Y. 2002); *accord Lieb v. Am. Motors Corp.*, 95 F.R.D. 507, 510 (S.D.N.Y. 1982) ("the availability of defenses peculiar to a proposed representative's claim necessitates denying certification in consideration of due process rights of potential class members").[21]

As previously mentioned, plaintiff's TILA claim is time-barred - a circumstance which some courts have held defeats typicality. *See Piazza v. Ebsco Indust., Inc.*, 273 F.3d 1341, 1349 (11th Cir. 2001) (holding that when named plaintiff lacked standing to bring claim because it was time-barred, district court abused its discretion in certifying class); *Great Rivers Coop. of S.E. Iowa v. Farmland Indus., Inc.*, 120 F.3d 893, 899 (8th Cir. 1997) ("Here, [the class representative] is not and cannot be a class member because his claim is time-barred; consequently, he cannot represent the class.") It will, in any event, lead to the inevitable dismissal of that claim.

Next, the fundamental questions of whether this purportedly representative plaintiff was deceived in a material way, required as part of her GBL § 349 claim, or whether she justifiably relied on the conflicting representations she allegedly received at the point of sale, required for

---

[21]     To preclude class certification, the defendant need not establish that the class representative ultimately would be defeated by the unique defense. Rather, class treatment should be denied if a unique defense is even arguably present, and not completely meritless. *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983) (holding that district court need only make a preliminary finding that named plaintiff's credibility would be subject to attack); *accord J.H. Cohn & Co., v. Am. Appraisal Assoc., Inc.*, 628 F.2d 994, 998-99 (7th Cir. 1980).

her to prevail on her remaining state-law claims, are directly at issue.  The PAC seeks to certify a class of consumers who were allegedly told that the ATSD was not insurance, and who relied on that alleged misrepresentation to their detriment.  This plaintiff, however, testified to the contrary -- she claimed that her sales representative, upon inquiry, stated that the ATSD *was* insurance and that she understood that she was purchasing insurance. She is also an experienced Medical Insurance Coder who knows more about insurance polices than any average person -- a fact pertinent to the "material" deception analysis.

Plaintiff's remarkable deposition testimony leaves just two possibilities:  (i) the oral and written representations she received were *atypical* of any other class plaintiff, which means that litigation concerning her unique situation and whether it precludes her from claiming justifiable reliance threatens to overcome the case; or (ii) the oral and written representations she received were *typical*, which means that a mini-trial must be held as to each class plaintiff to determine what oral communications were made in connection with the sale of the ATSD to determine whether they justifiably relied on the conflicting representations, *i.e.*, the written "not insurance" representation on the pre-printed form. and the alleged oral representation to the contrary.  In other words, plaintiff's testimony implicates the significant issue of whether any person could ever reasonably rely on the written "not insurance" representation when the sales representative responsible for the product is telling them otherwise.  Either possibility is fatal to class certification because plaintiff is unable to demonstrate that her claims (and the defenses thereto) are "typical" of any other claim and/or cannot demonstrate that common questions of law or fact "predominate."[22]

---

[22]     Finally, when plaintiff applied for her new car loan, she was well-aware that her recent bankruptcy filing might color her ability to qualify. (Hurst Decl.,. Ex. 6, pp. 39-41, 57-58, 100-04)  She has since admitted to lying on the financing application she submitted to FLM by exaggerating the duration of her employment at two (2) separate employers, likely in an attempt to influence the decision in her financing application.  (*Id.*) Under these

## CONCLUSION

For the foregoing reasons, defendants It's Huge, Inc. and Fuccillo Lincoln Mercury, Inc.,

d/b/a Fuccillo Hyundai, respectfully request an Order denying leave to amend the Complaint.

Dated: October 4, 2010
      Albany, New York

                                   Respectfully submitted,


                                   **GREENBERG TRAURIG, LLP**


By:         /s/ William A. Hurst
                       William A. Hurst
                       (Bar Roll No.: 510271)
                       54 State Street, 6th Floor
                       Albany, New York 12207
                       Tel: (518) 689-1400
                       Fax: (518) 935-9513
                       hurstw@gtlaw.com

                       **ROEMER WALLENS GOLD**
                            **& MINEAUX, LLP**

                       Matthew J. Kelly
                       Amanda Twinam
                       13 Columbia Circle
                       Albany, New York 12203
                       Tel: (518) 464-1300
                       Fax: (518) 464-1010
                       jkelly@rgwmlaw.com
                       awtwinam@rgwmlaw.com

                       *Attorneys for Defendants*
                       *It's Huge, Inc. and Fuccillo Lincoln*
                       *Mercury, Inc., d/b/a Fuccillo Hyundai*

*1384578v15*

---

circumstances, she may be precluded by the doctrines of estoppel and unclean hands from representing any class seeking equitable relief.