**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HEIDI SEEKAMP, *On Behalf of Herself and* *All Others Similarly Situated,* : | |
| : | |
| Plaintiff, : | |
| : | |
| vs. : | |
| : | |
| IT'S HUGE, INC., : | Civil Action No.: |
| FUCCILLO LINCOLN MERCURY,  INC. d/b/a : | 09-cv-00018-LEK-DRH |
|    FUCCILLO HYUNDAI, : | |
| FUCCILLO CHRYSLER JEEP DODGE OF : | |
|    AMSTERDAM, INC., : | |
| FUCCILLO FORD, INC., : | |
| FUCCILLO DODGE CHRYSLER JEEP, INC., : | |
| FUCCILLO IMPORTS, INC., : | |
| FUCCILLO AUTO WORLD, INC., : | |
| FUCCILLO BUICK PONTIAC GMC, INC., : | |
| FUCCILLO CHEVROLET OF NELLISTON, INC., : | |
| FUCCILLO HYUNDAI OF SYRACUSE, INC., : | |
| FUCCILLO HYUNDAI OF GREECE, INC., : | |
| FUCCILLO FORD OF SENECA FALLS, INC., : | |
| FUCCILLO CHEVROLET OLDS PONTIAC BUICK, INC., : | |
| FUCCILLO CHEVROLET, INC., : | |
| FUCCILLO CHRYSLER OF NELLISTON, INC., : | |
| FUCCILLO ENTERPRISES OF EAST GREENBUSH, INC., : | |
| FUCCILLO ENTERPRISES, INC., : | |
| FUCCILLO FORD OF EAST GREENBUSH, INC., : | |
| FUCCILLO FORD OF NELLISTON, INC., : | |
| FUCCILLO PONTIAC BUICK, INC., : | |
| and : | |
| UNIVERSAL AUTOMOTIVE SERVICES, INC., : | |
| : | |
| Defendants. : | |
| : | |
| Defendants. : | |
| : | |

**MEMORANDUM OF LAW IN**
**SUPPORT OF PLAINTIFF'S MOTION FOR**
**CLASS CERTIFICATION**

# Table of Contents

Table of Authorities ...................................................................................................................ii

Preliminary Statement ..............................................................................................................1

Summary of the Case ................................................................................................................1

      A.  ATSD "Certificates" ...............................................................................................1

      B.  The Indemnity and Insurance Law .......................................................................4

      C.  Class Definition .....................................................................................................5

      D.  Truth-in-Lending Claims .......................................................................................5

Legal Analysis and Argument ...................................................................................................6

      A.  Legal Standard For Class Certification.................................................................6

POINT I - Plaintiff Satisfies her Burden of Establishing the Fed. R. Civ. P. 23(a)
           Requirements ........................................................................................................8

      A.  Numerosity – Fed. R. Civ. P. 23(a)(1)..................................................................8

      B.  Commonality – Fed. R. Civ. P. Rule 23(a)(2) ......................................................9

      C.  Typicality – Fed. R. Civ. P. 23(a)(3) ..................................................................11

      D.  Adequacy of Representation– Fed. R. Civ. P. 23(a)(4) .......................................11

POINT II - A Class Should be Certified Under Fed. R. Civ. P. 23(b)(2) ............................12

POINT III - A Class Should be Certified Under Fed. R. Civ. P. 23(b)(3)...........................13

Conclusion ..............................................................................................................................17

**Table of Authorities**

## Cases

Amchem Prods. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ......... 7, 13

American Pipe and Constr. Co. v. Utah, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed.2 d 713 (1974) ... 6

Caridad v. Metro North Commuter R.R., 191 F.3d 283 (2d Cir. 1999) ........................................ 9

Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473 (2d Cir. 1995) ............................... 8

Eldred v. Comforce Corp., 2010 WL 812698 (N.D.N.Y., March 2, 2010) ........................... 14, 15

First Federal of Michigan v. Barrow, 878 F.2d 912 (6th Cir. 1989) ........................................... 7

Flanagan v. Allstate Ins. Co., 242 F.R.D. 421 (N.D. Ill. 2007) ..................................................... 9

General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed. 2d

    740 (1982) ........................................................................................................................... 14

Gilmore v. Shearson/American Express, 811 F.2d 108 (2d Cir. 1987) ........................................ 6

Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968) ........................................................................ 7

Haroco, Inc. v. Am. Nat'l Bank & Trust Co., 121 F.R.D. 664 (N.D. Ill. 1988) .......................... 10

In re "Agent Orange" Prod. Liability Litigation, 818 F.2d 145 (2d Cir. 1987) ........................... 9

In re Drexel Burnham Lambert, 960 F.2d 285 (2d Cir. 1992) ............................................... 11, 12

In re Initial Public Offering Securities Litigation, 471 F.3d 24 (2d Cir. 2007) ............. 7, 8, 13, 14

In re Nassau Country Strip Search Cases, 461 F.3d 219 (2d Cir. 2006) ..................................... 14

In re Tri-State Crematory Litigation, 215 F.R.D. 660 (N.D. Ga. 2003) ........................................ 9

In re Universal Serv. Fund Tel. Billing Practices Litigation, 219 F.R.D. 661 (D. Kan. 2004) ...... 9

In re WorldCom, Inc. Securities Litigation, 219 F.R.D. 267 (S.D.N.Y. 2003) ............................ 14

Jones v. Am. Gen. Life & Acc. Ins. Co., 213 F.R.D. 689 (S.D. Ga. 2002) ................................... 9

LaFlamme v. Carpenters Local No. 370 Pension Plan, 212 F.R.D. 448 (N.D.N.Y. 2003) ...... 8, 16

Macarz v. Transworld Systems, Inc., 193 F.R.D. 46 (D. Conn. 2000) ........................................ 16

ii

Mace v. Van Ru Credit Corp., 109 F.3d 338 (7th Cir. 1997) ...................................................... 16

Marisol A. v. Giuliani, 126 F.3d 372 (2d Cir. 1997) .............................................................. 9, 12

Moore v. PaineWebber, Inc., 306 F.3d 1247 (2d Cir. 2002) ....................................................... 14

Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2nd 628 (1985)......... 7

Pyke v. Cuomo, 209 F.R.D. 33 (N.D.N.Y. 2002)......................................................................... 11

Robidoux v. Celani, 987 F.2d 931 (2d Cir. 1993) .................................................................. 8, 11

Robinson v. Metro-North Commuter Railroad Co., 267 F.3d 147 (2d Cir. 2001) ...................... 12

Sears Petroleum & Transport Corp., 217 F.R.D. 305 (N.D.N.Y. 2003)........................................ 6

Seekamp v. Fuccillo Automotive Group, Inc., 2010 WL 980581 (N.D.N.Y., March 15, 2010) ... 4

Steinberg v. Nationwide Mut. Ins. Co., 224 F.R.D. 67 (E.D.N.Y. 2004)....................................... 9

Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196

  (2d Cir. 2008).................................................................................................................... 14

Thompson v. Linvatec Corp., 2007 WL 1526418 (N.D.N.Y., May 22, 2007)............................... 9

Veal v. Crown Auto Dealerships, Inc., 236 F.R.D. 572 (M.D. Fla. 2006) .................... 6, 8, 15, 16

Violette v. P.A. Days, Inc., 214 F.R.D. 207 (S.D. Ohio 2003)............................................... 8, 15

**Statutes**

Fed. R. Civ. P. 23(a) ................................................................................................ 7

Fed. R. Civ. P. 23(a)(1) ........................................................................................... 9

Fed. R. Civ. P. 23(a)(2) ........................................................................................... 10

Fed. R. Civ. P. 23(a)(3) ........................................................................................... 13

Fed. R. Civ. P. 23(b) ................................................................................................ 8

Fed. R. Civ. P. 23(b)(2) ........................................................................................... 14

Fed. R. Civ. P. 23(b)(3) ........................................................................................ 16, 19

N.Y. GBL § 349 ........................................................................................................ 1

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff Heidi Seekamp ("Seekamp" or Plaintiff) moves this Court for class action certification pursuant to Fed. R. Civ. P. 23.   This case is particularly well-suited for class certification because Class Members purchased from Defendants identical, form Etch Auto Theft Security Discount Certificates ("ATSDs").[1] The ATSD program was orchestrated by Defendants pursuant to a unified scheme and course of conduct.   Plaintiff aims to obtain, on behalf of herself and the prospective Class Members, money damages and a judgment declaring that all ATSD sales constituted an unlawful sale of insurance under New York's Insurance Law and a deceptive practice within the meaning of the New York Consumer Protection Act, N.Y. GBL § 349, and New York common law.   Whether the ATSDs are denominated as insurance, warranties or guaranties, the evidence will show that Defendants broke their contracts with purchasing consumers by selling lifeless pieces of paper with no value whatsoever.

<u>**SUMMARY OF THE CASE**</u>

A.      <u>**ATSD "Certificates"**</u>

On or about June 12, 2007, Plaintiff entered into a vehicle purchase agreement (the "Agreement") with Defendant Fuccillo Lincoln Mercury, Inc. d/b/a Fuccillo Hyundai ("Fuccillo Hyundai") for the purchase of a 2007 Hyundai Elantra (the "Vehicle"). [Complaint ¶25; Seekamp Aff. ¶3; Seekamp Aff. <u>Ex. A</u>].[2]   In addition to purchasing the Vehicle, Plaintiff purchased an ATSD 'certificate' for which she was charged $295.00 as an add-on to the purchase price. [Complaint ¶¶ 26 & 29; Seekamp Aff. ¶4; Seekamp Aff. <u>Ex. A</u>].   The ATSD was not disclosed on Plaintiff's financing documents as a policy of insurance and, therefore, was not

---

[1] A copy of the ATSD 'certificate' is attached as <u>Exhibit B</u> to the Affidavit of Heidi Seekamp.
[2]"Complaint" refers to the Plaintiff's Amended Complaint filed January 7, 2011, a copy of which is attached as <u>Exhibit 9</u> to the Affidavit of Sergei Lemberg.  "Seekamp Aff." refers to the Affidavit of Plaintiff Heidi Seekamp in Support of Motion for Class Certification. "Seekamp Aff. <u>Ex. A</u>" refers to a copy of the purchase agreement.

1

disclosed as part of the cost of financing the vehicle. Instead, the price was included as part of the purchase price of the vehicle upon which finance charges were imposed. [Seekamp Aff. <u>Ex. A</u>]

It's Huge Inc. ("It's Huge") was responsible for establishing, overseeing, implementing and perpetuating all aspects of the sale of ATSD's by and through 19 Fuccillo-owned or affiliated dealerships (the "Fuccillo Dealerships"). [Complaint ¶22].[3] Each of the Fuccillo Dealerships sold ATSD in conjunction with automobile sales. [Lemberg Aff. <u>Ex. 5</u> (Def. Res. Int. 7)].[4]

Since 2003, thousands of Class Members, for whom Heidi Seekamp seeks to recover, bought ATSDs. Each 'certificate' was labeled as a "guarantee" by It's Huge and the Fuccillo Dealerships. Under its terms, for roughly $295.00[5] a purchaser was provided with a "3-year guarantee" which promised the consumer, in the event that the vehicle was declared a total loss by the primary insurer as a result of theft, to a discount amounting to the lesser of 10% or $2,000.00 off of the purchase price of a replacement vehicle purchased from the same dealership. [Complaint ¶79; Answer ¶79; Seekamp Aff. <u>Ex. B</u>; Lemberg Aff. <u>Ex. 2</u>].[6]

The ATSD 'certificate' sold to Plaintiff was 'administered' by and through Defendant Universal Automotive Services, Inc. ("Universal"). [Souris Tr. 18:18-19:22; 48:2-17; Lemberg

---

[3] It's Huge and the Fuccillo Dealerships are sometimes referred to herein, collectively, as "Fuccillo."
[4] "Lemberg Aff." refers to the Affidavit of Sergei Lemberg submitted in support of Plaintiff's motion.
 "Def. Res. Int." refers to the Defendants' responses to Plaintiff's First Set of Interrogatories, portions of which are attached to the Lemberg Aff. as <u>Exhibit 5</u>.
[5] Most of the ATSD contracts are believed to have been sold for $295. However, documents reveal that the actual sale prices range from a low of $199.00 to a high of $400.00.
[6] "Seekamp Aff. <u>Ex. B</u>" refers to the ATSD certificate received by the Plaintiff.
"Lemberg Aff. <u>Ex. 2</u>" refers to correspondence between William A. Hurst, counsel for Fuccillo Buick Pontiac GMC, Inc. and Fuccillo Lincoln Mercury Hyundai, and the State of New York Insurance Department.
"Answer" refers to the Defendants' answer to the Amended Complaint a copy of which is attached as <u>Exhibit 10</u> to the Affidavit of Sergei Lemberg.

Aff. Ex. 2].[7] Pursuant to the agreement between It's Huge and Universal, Universal supplied identical, blank ATSD 'certificates,' in bulk. [Souris Tr. 47-48, 112:25-115:1]. Fuccillo Defendants then sold the policies to Ms. Seekamp and similarly situated consumers as part of automobile purchase transactions. [Souris Tr. 47-48].

Each certificate was accompanied by 'DIS Etch' numbers etched onto the windows of Class Members' vehicles and touted to consumers as a "theft-deterrent." [Lemberg Aff. Ex. 5 (Def. Res. Int. 22). A toll-free phone number, 800-411-8470, was listed on the etch itself. Pre-trial discovery revealed that this number contained a service number registered to Universal and answered by an answering service. [Lemberg Aff. Ex. 3]. The answering service, in turn, routes messages to a pager that has been inactive since *at least October 2006*, eight months before it was placed on Ms. Seekamp's car. [Lemberg Aff. Ex. 4].[8] It would shock no one to learn that no claims ever came through. [Souris Tr. 83:23-24]. The work required of Universal to 'administer' the ATSD program "was a very easy business." [Souris Tr. 115:21-116:15].

Although Universal was 'administering' thousands of ATSD's sold by the Fuccillo Dealerships, Universal had no regular staff, no computer system, no reserves. [Expert Report of David A. Stivers ("Stivers Report"), Lemberg Aff Ex. 8]. Simply put, nothing stood behind the Universal policies. Universal even ignored the instant suit [D-11][9], and its principal officer, Nick Souris, spent many months successfully ducking service of a subpoena in New Jersey before finally being served in Connecticut and compelled to appear for a deposition. [Souris Tr. 3:13-18; 29:8-17].

---

[7] "Souris Tr." refers to the deposition transcript of Nick Souris who was deposed on November 16, 2010, excerpts of which are attached as Exhibit 6 to the Affidavit of Sergei Lemberg.
[8] Lemberg Aff. Ex 3 & 4 refer to documents received by AnswerNet Inc. and USA Mobility in response to subpoena.
[9] "D-__" refers to the numbered entry on the Clerk's docket.

Irrespective of the amount charged by any of the Fuccillo Dealerships to customers, Universal received a flat fee of $25.00 for each ATSD contract sold. From each $25.00 received by Universal, $18.50 was repaid directly to William Fuccillo, Jr., the principal officer of It's Huge and each of the Fuccillo Dealerships. [Souris Tr. 91-92; Souris Ex. 4; Lemberg Aff. Ex. 7].[10] Accordingly, Universal received $6.50 as compensation for its 'administrative services' with respect to each ATSD contract sold by Fuccillo.

## B.     The Indemnity and Insurance Law

Plaintiff asserts on her own behalf an on behalf of the putative class that each and every sale of ATSD by Defendants constituted the illegal sale of insurance, a position this Court recognized even early as having "not insubstantial support." Seekamp v. Fuccillo Automotive Group, Inc., 2010 WL 980581, *5 (N.D.N.Y., March 15, 2010) (the "March 2010 Decision").

Since then the evidence has mounted. Defendants conceded in this Court that they were aware that Universal was cautioned in June 1999 that "there is no kind of insurance that may be sold in New York that would indemnify the dealer for the amount of the discount." [Ex. C to the Affidavit of John Testone (letter of the Dept. of Ins. D. 06-22-99 to Universal) submitted in support of the Motion to Dismiss D-5]. Nonetheless, Fuccillo, through its counsel, admitted to the State of New York Insurance Department that the ATSD program contemplated indemnification by Universal. On March 25, 2009, in response to an inquiry from the Consumer Services Bureau, Fuccillo's attorney described the ATSD program as follows:

> In exchange for payment of the sum of $295.00 to participate in the program, which sum was appropriately disclosed on all purchase and sale documentation, the purchaser (or lessor) of a new vehicle would be entitled to a discount in the

---

[10] Mr. Souris' calculation, that he retained $4.00 and sent back $21.00 was slightly off. The documents produced confirm that $18.50 was returned to Fuccillo and $6.50 was retained by Universal. Exhibit 4 to his deposition transcript contains Universal accounting records.
"Lemberg Aff. Ex. 7" contains secretary of state listings naming Mr. Fuccillo as the Chairman or CEO of the Fuccillo Dealerships and It's Huge.

lesser of 10% of the cost of a new replacement vehicle, or $2,000.00, in the event the original vehicle was stolen and deemed either unrecoverable or a total loss, *i.e.*, in the event the window etch failed to deter theft.

Universal Automotive Services, Inc…. **indemnified Fuccillo in the event that Fuccillo was required to grant the above-referenced discount to a customer after a theft**. [emphasis supplied].

[Lemberg Aff. Ex. 2].

Finally, Mr. Souris described one of the ways Fuccillo kept funds to cover its losses. Mr. Souris believed that Fuccillo used the money remitted to William Fuccillo Jr. to cover "any lost profits." [Souris Tr. 91:4-92:21, 97:25-98:12]. Mr. Souris explained:

You give them a discount and you are taking two thousand dollars off of the car -- I guess it is like having money that you're getting in case somebody does have a loss due to theft.

[Souris Tr. 92:16-19].

Thus the Defendants engaged in wholesale unlicensed sale of insurance.

**C.    Class Definition**

Plaintiff seeks relief in her own behalf and on behalf of the following class, which she asks that this Court certify:

**All Consumers who purchased the ATSD from any of the Fuccillo dealerships from January 7, 2003 to the present. Excluded from the class are any defendants, their respective parents, employees, subsidiaries and affiliates, their alleged co-conspirators and all government entities.**[11]

**D.    Truth-in-Lending Claims**

The Plaintiff's original complaint contained a claim under the Federal Truth-in-Lending Act (Count VII of the original complaint filed January 7, 2009). On February 19, 2009,

---

[11] The breach of contract claims asserted on behalf of the class members encompasses all consumers that were sold and ATSD within the six years prior to the filing of the original Complaint. As such, the class definition encompasses all consumers that purchased ATSD from January 7, 2003, to the present.

Defendants filed their Motion to Dismiss the original complaint.  At the time, they recognized

that the original complaint contained a TILA Claim, stating on p.7 of the Motion: "Plaintiff

further alleges that because the charge for the ATSD was not identified as "property insurance"

in the loan documentation, the disclosed APR was inaccurate, in violation of the TILA.

(Complaint, ¶ 84)."  The Court denied the Motion to Dismiss by Memorandum and Order dated

March 15, 2010. [D-20].

On September 2, 2010, Plaintiff filed a motion to amend the complaint that sought to add

certain additional Fuccillo dealerships, assert a claim under the Federal RICO Act, and clarify

certain violations previously stated in the Complaint.  The Amended Complaint did not seek to

alter or amend any of the TILA allegations.  Seeking a second bite at the apple, Defendants

sought dismissal of the TILA claim on the ground that Plaintiff failed to plead entitlement to

equitable tolling. [D-45, Opp. Mot. Amend. pg. 3)].  However, such an effort is prohibited.  *See*

Sears Petroleum & Transport Corp., 217 F.R.D. 305, 307 (N.D.N.Y. 2003) (*citing* Gilmore v.

Shearson/American Express, 811 F.2d 108, 112 (2d Cir.  1987).  By decision dated December

22, 2010, Magistrate Judge Homer granted the motion to amend but struck the TILA claim.

Plaintiff has filed a Motion for Reconsideration of Magistrate Homer's order dismissing

the TILA Claim.  If Magistrate Homer reconsiders his decision and restores the TILA Claim, as

is hoped, Plaintiff reserves her right to amend this motion for class certification to include a

*subclass* of all purchasers of vehicles from Defendants on credit.  *See* Veal v. Crown Auto

Dealerships, Inc., 236 F.R.D. 572 (M.D. Fla. 2006).

## LEGAL ANALYSIS AND ARGUMENT

A.     **Legal Standard For Class Certification**

Class actions serve three essential purposes: (1) they facilitate judicial economy by the

avoidance of multiple suits on the same subject matter, <u>American Pipe and Constr. Co. v. Utah</u>, 414 U.S. 538, 551, 94 S. Ct. 756, 764-65, 38 L. Ed.2 d 713 (1974); (2) they provide a feasible means for asserting the rights of those who "would have no realistic day in court if a class action were not available," <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 809, 105 S. Ct. 2965, 2973, 86 L. Ed. 2nd 628 (1985); and (3) they deter inconsistent results, assuring a uniform, singular determination of rights and liabilities. <u>First Federal of Michigan v. Barrow</u>, 878 F.2d 912, 919 (6th Cir. 1989).

Fed. R. Civ. P. 23(a) identifies four prerequisites to class certification that must be met by all proposed class actions: (1) the class must be so numerous that joinder of all members is impracticable, (2) there must be questions of law or fact which are common to the class members, (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class members, and (4) the representative parties must be expected to fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4). In addition to satisfying the Rule 23(a) prerequisites, a plaintiff must demonstrate that the proposed class action falls within one of the three categories set forth in Fed. R. Civ. P. 23(b). <u>Green v. Wolf Corp.</u>, 406 F.2d 291, 298 (2d Cir. 1968); *see also* <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 614, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

The district judge may certify a class only after determining that each of the Rule 23 requirements has been met. Assessment of the underlying merits is appropriate only to the extent necessary to decide whether Rule 23 has been satisfied; class certification proceedings should not be transformed "into a protracted mini-trial of substantial portions of the underlying litigation." <u>In re Initial Public Offering Securities Litigation</u>, 471 F.3d 24, 41 (2d Cir. 2007).

The District Judge must "assess all of the relevant evidence admitted at the class

certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." _Id._ at 42. At the same time, "courts are implored to construe liberally the Rule 23 requirements." LaFlamme v. Carpenters Local No. 370 Pension Plan, 212 F.R.D. 448, 452 (N.D.N.Y. 2003).

The legality of the Defendants' sale of ATSD is ideally suited to be determined via class action. The sale of an illegal aftermarket automobile product necessarily raises questions which are common to all its purchasers and involve such a high volume of sales that joinder of all parties becomes impractical. _See_ Veal, _supra_, 236 F.R.D. at 575-78 (court certified class of all purchasers of a window etch product that allegedly conferred no benefit and whose certificates did not contain insurance disclosures); Violette v. P.A. Days, Inc., 214 F.R.D. 207 (S.D. Ohio 2003) (court certified class of all purchasers of a window etch product that was allegedly insurance under Ohio law).

## POINT I
### PLAINTIFF SATISFIES HER BURDEN OF ESTABLISHING THE FED. R. CIV. P. 23(a) REQUIREMENTS

**A.** **Numerosity – Fed. R. Civ. P. 23(a)(1)**

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impractical." A plaintiff need not precisely quantify the prospective class so long as reasonable estimates are provided. Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993). As a general rule, a prospective class of forty or more raises a presumption of numerosity. _E.g._ Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

Here, Fuccillo concedes that during 2006 and 2007, Fuccillo Lincoln Mercury, alone, sold 636 ATSD's. [Lemberg Aff. Ex. 5 (Def. Res. Int. 5)]. Records provided by Universal and

identified by Mr. Souris disclose other Fuccillo Dealerships sold at least 2,159 ATSD's during the same period, for a total of 2,795 during 2006 and 2007 alone. [Souris Tr. 53:8-54:8; Souris Ex. 4].  Defendants produced additional documents showing sales of thousands of additional ATSDs between 2003 and 2009.  Thus, the numerosity requirement has been satisfied.

**B.      Commonality – Fed. R. Civ. P. Rule 23(a)(2)**

Satisfaction of the commonality requirement entails demonstrating that the claims of the putative class members share common questions of law and/or fact. Fed. R. Civ. P. 23(a)(2). The class members' claims need not be identical. Caridad v. Metro North Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999) *overruled on other grounds*; *see also* In re "Agent Orange" Prod. Liability Litigation, 818 F.2d 145, 166-67 (2d Cir. 1987).  That the class members' individual circumstances differ is of no moment, provided that "their injuries derive from a unitary course of conduct by a single system." Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997) *(per curiam)*. "[T]here is no requirement that the claims of all the potential class members ... have every issue of law and fact in common. An alleged common course of conduct is sufficient to satisfy the common question requirements." Thompson v. Linvatec Corp., 2007 WL 1526418, *5 (N.D.N.Y., May 22, 2007).

Typically, claims arising from conduct associated with form contracts are particularly appropriate for class action treatment. *E.g.*, Steinberg v. Nationwide Mut. Ins. Co., 224 F.R.D. 67, 74 (E.D.N.Y. 2004);  Flanagan v. Allstate Ins. Co., 242 F.R.D. 421, 428 (N.D. Ill. 2007); In re Universal Serv. Fund Tel. Billing Practices Litigation, 219 F.R.D. 661, 667 (D. Kan. 2004); In re Tri-State Crematory Litigation, 215 F.R.D. 660, 692 (N.D. Ga. 2003); Jones v. Am. Gen. Life & Acc. Ins. Co., 213 F.R.D. 689, 694-95 (S.D. Ga. 2002); Haroco, Inc. v. Am. Nat'l Bank & Trust Co., 121 F.R.D. 664, 669 (N.D. Ill. 1988).  Here, the Defendants engaged in a common

course of conduct by selling the same ATSD to each member of the proposed class.  As to each

putative class member, an identical policy was issued by Fuccillo and administered by Universal.

The common questions of law and/or fact include:

- Is the ATSD a contract of insurance?

- If the ATSD is a contract of insurance, does it qualify for one of the exemptions from registration under the Insurance Law of the State of New York?

- Was Universal It's Huge and the Fuccillo Defendants required to qualify and register with the New York State Insurance Department prior to sale or distribution of any ATSD?

- Did It's Huge and the Fuccillo Dealerships sell contracts of insurance without being licensed as insurance agents or brokers?

- Did the ATSD confer any benefit upon purchasing consumers?

- Did the defendants engage in deceptive practices within the meaning of N.Y. Ins. Law § 2401?

- Did the defendants engage in deceptive practices within the meaning of N.Y. GBL § 349?

- Did the sale of ATSD's give rise to a fiduciary relationship between the Defendants and each purchaser?

- Did the defendants breach their fiduciary duties by accepting payment for an unlicensed insurance product and by failing to disclose material information concerning the transaction.

- Are the ATSD contracts void or voidable?

- Were ATSD contracts breached by Defendants?

- Did Plaintiff and the putative class members suffer ascertainable losses by having purchased ATSDs.

## C.     Typicality – Fed. R. Civ. P. 23(a)(3)

The claims or defenses of the representative party or parties must be "typical" of those of the members of the prospective class. Fed. R. Civ. P. 23(a)(3).  The requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability irrespective of minor variations in the fact patterns underlying individual claims." Robidoux v. Celani, *supra,* 987 F.2d at 936-37; *quoting* In re Drexel Burnham Lambert, 960 F.2d 285, 291 (2d Cir.  1992). "In short, the test for typicality is not demanding." Pyke v. Cuomo, 209 F.R.D. 33, 42 (N.D.N.Y. 2002) (quotations and citations omitted).

Here, Plaintiff and each class member purchased an ATSD from a Fuccillo Dealership. Plaintiff's claims typify those of the putative class members, each asserting that he or she was sold an illegal insurance product, and/or a piece of paper from which no benefit was derived by the consumer.  As to each Class Member, the Defendants are expected to assert identical defenses, *i.e.* that the ATSDs were warranties and not insurance, that the etch policy program was not deceptive, and that consumers benefitted from the products.  As such, the typicality requirement is satisfied.

## D.     Adequacy of Representation– Fed. R. Civ. P. 23(a)(4)

The final prerequisite to class certification is demonstrating that the representative plaintiffs and their chosen counsel are adequate to represent the class.  It must be shown that the named plaintiff will fairly and adequately represent the interests of class and that class counsel is "qualified, experienced, and generally able to conduct the litigation." Marisol A. v. Giuliani, 126

F .3d 372, 378 (2d Cir. 1997), *quoting* In re Drexel Burnham Lambert Group, Inc., *supra,* 960 F.2d at 291.

The affidavits submitted by Sergei Lemberg and Heidi Seekamp establish that the proposed class will be adequately represented by both counsel and class representative.

## POINT II

### A CLASS SHOULD BE CERTIFIED UNDER FED. R. CIV. P. 23(b)(2)

Having satisfied the four requirements of Rule 23(a), the Plaintiff must also demonstrate that the proposed class action fits within one of the three types identified in Fed. R. Civ. P. 23(b).

Certification under Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). In other words, a class will be certified if "broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury." Robinson v. Metro-North Commuter Railroad Co., 267 F.3d 147, 162 (2d Cir. 2001):

> [W]here class-wide injunctive or declaratory relief is sought in a (b)(2) class action for an alleged group harm, there is a presumption of cohesion and unity between absent class members and the class representatives such that adequate representation will generally safeguard absent class members' interests and thereby satisfy the strictures of due process. This presumption of cohesion and unity continues where incidental damages are also sought because entitlement to such damages does not vary based on the subjective considerations of each class member's claim, but flows directly from a finding of liability on the claims for class-wide injunctive and declaratory relief.

*Id.* at 267 F.3d 165 (internal quotations and citations omitted).

Here, Plaintiff is suing to secure, in part, declaratory relief.[12] A declaratory judgment is sought ruling that (i) the subject ATSD is an illegal contract of insurance, (ii) sales of the ATSD

---

[12] Since the defendants no longer sell the subject ATSD product, an injunction is not required.

by Defendants was prohibited under the laws of New York, and (iii) each and every ATSD sold by Defendants and administered through Universal is either void as a matter of law or voidable and subject to rescission. Although monetary damages are sought, the monetary relief is associated with return of the consideration paid by each class member upon rescission of their ATSD contracts. In other words, the monetary damages flow "directly from a finding of liability on the claims for class-wide …declaratory relief" and do not "vary based on the subjective considerations of each class member's claim." *Id.*

Accordingly, this Court should certify this class action under Fed. R. Civ. P. 23(b)(2).

## POINT III

## A CLASS SHOULD BE CERTIFIED UNDER FED. R. CIV. P. 23(b)(3)

The proposed class should be certified pursuant to Rule 23(b)(3), which requires that (1) common questions of law or fact predominate over any questions affecting only individual members and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *see also* Amchem Prods. v. Windsor, 521 U.S. 591, 615, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997); In re Initial Public Offerings Securities Litigation, 471 F.3d 24, 41 (2d Cir. 2006).

The predominance requirement is a measure of the cohesiveness of the class, and "will be established if 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" In re WorldCom, Inc. Securities Litigation, 219 F.R.D. 267, 288 (S.D.N.Y. 2003) (*quoting* Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002)). In determining whether the class action structure is "superior to other available method" of adjudication, the Court must consider

the interests of individual members of the class in controlling their own individual litigation, the nature and extent of any existing parallel litigation, the desirability of concentrating the litigation in one forum and the manageability of the class action. In re Initial Public Offerings Securities Litigation, *supra,* 471 F.3d at 41. Thus, the requirement insures that the purpose of of Rule 23, to achieve "greater efficiency via collective adjudication and, relatedly, greater uniformity of decision as to similarly situated parties" is achieved. Eldred v. Comforce Corp., 2010 WL 812698, *20 (N.D.N.Y., March 2, 2010) (*citing* In re Nassau Country Strip Search Cases, 461 F.3d 219, 228 (2d Cir. 2006). "When plaintiffs are 'allegedly aggrieved by a single policy of defendants,' such as [a] blanket policy ... the case presents 'precisely the type of situation for which the class action device is suited' since many nearly identical litigations can be adjudicated in unison." *Id.*

A district court may only certify a class "after making determinations that each of the Rule 23 requirements has been met." In re Initial Public Offerings Securities Litigation, *supra,* 471 F.3d at 41. The Court is required to undertake a "rigorous analysis," designed to ensure "actual, not presumed conformance," with Fed. R. Civ. P. 23. *Id.* at 33, *quoting* General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 160-61, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). The necessary elements must be established by a preponderance of the evidence. Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008).

Here, Plaintiff has alleged a uniform practice on behalf of the Defendants. Resolution of the common questions of fact and law, enumerated above, that flow from the sale and "administration" of ATSD predominate over any individual issue. *See* Veal, *supra*, 236 F.R.D. at 581-82 (the "Complaint alleges a common scheme and course of conduct concerning the nature

of the 'Etch' product, its terms and coverage and the manner in which the product was disclosed. Accordingly, the core of this litigation will focus on common factual and legal issues" (certifying a class under Rule 23(b)(3)); <u>Violette v. P.A. Days, Inc.</u>, *supra*, 214 F.R.D. 215-16 (common issues predominated in etch case sufficient to certify class under Rule 23(b)(3)).  While each of the proposed class members claims may entail individual issues of proof (*i.e.* what they were charged), the issues subject to generalized proof, such as whether the ATSD was illegal and whether it conferred any benefit, predominate. *See* <u>Eldred v. Comforce Corp.</u>, *supra*, at *19.

Additionally, proceeding as a class action is superior to other available methods.  The Defendants violated the rights of thousands consumers to such an extent that the cost of pursuing individual litigation to seek recovery against a well-financed adversary is not feasible.  The alternatives to a class action are not acceptable.  Thousands of injured consumers would be left without any recourse. In the unlikely event that the class members each become aware of their rights and could locate counsel, a multiplicity of scattered suits would ensue, resulting in the inefficient administration of litigation.

Fed. R. Civ. P. 23(b)(3) identifies the following relevant factors to determining if the class action is the superior method by which to adjudicate a dispute: (1) "the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of the class action." Fed. R. Civ. P. 23(b)(3).

As to the first and second factors, the Defendants maintain that no other similar suits have been filed [Lemberg Aff. <u>Ex. 5</u> (Def. Res. Int. 22)].  Furthermore, any interest in individual

control of separate actions is negligible where individual claims would involve small amounts and be waged against a well funded statewide enterprise. *See* <u>Veal</u>, *supra*, 236 F.R.D. at 582. As to the third factor, the Fuccillo dealerships and It's Huge's offices are all located in this federal district.

With respect to the fourth factor, any difficulties that may arise are readily manageable. One issue – the legality of ATSD – largely controls the outcome of this litigation. All other issues, in terms of claims and relief sought are dependent upon the resolution of this issue. Individualized proof of damages (the price paid for ATSD) can be determined administratively through records in the possession and control of the defendants. *See* <u>LaFlamme</u>, *supra*, 212 F.R.D. at 458. Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this matter. <u>Macarz v. Transworld Systems, Inc.</u>, 193 F.R.D. 46, 55 (D. Conn. 2000), relying on <u>Mace v. Van Ru Credit Corp.</u>, 109 F.3d 338 (7th Cir. 1997).

## CONCLUSION

For all of the above-stated reasons, this Court should find that Plaintiff has met the burden of establishing each of the class action prerequisites identified in Fed. R. Civ. P. 23(a) have been established and certification of a class under Fed. R. Civ. P. 23 (b)(2) and (b)(3) is warranted. Accordingly, Plaintiff requests the relief requested herein be granted in all respects, that the Plaintiff be appointed as class representative and her counsel as class counsel.

Dated: February 3, 2011

Respectfully submitted,

By:  /s/ Sergei Lemberg
Sergei Lemberg
Lemberg & Associates, L.L.C.
1100 Summer Street, 3rd Floor
Stamford, CT 06905
Telephone: (203) 653-2250
Facsimile: (877) 795-3666

Co-Counsel
Martin Mushkin, Esq.
Law Offices of Martin Mushkin
1100 Summer Street, 3rd Floor
Stamford, CT 06905

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY that on this the third day of February 2011, a copy of the foregoing was filed with the Court via the CM/ECF system which sent notice of such filing to the following:

*Attorneys for Defendants*
William A. Hurst, Esq.
Greenberg, Traurig Law Firm
54 State Street, 6th Floor
Albany, NY 12207

Matthew J. Kelly
Roemer, Wallens Law Firm
13 Columbia Circle
Albany, NY 12203

    /s/ Sergei Lemberg    
Sergei Lemberg