UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HEIDI SEEKAMP, On Behalf of Herself and all Others Similarly Situated,<br><br>                               Plaintiff,<br>    - against -<br><br>IT'S HUGE, INC., *et. al.*<br><br>                              Defendants. | **AFFIDAVIT**<br><br>**Civil Action No. 1:09-CV-00018 (LEK/DRH)** |

STATE OF NEW YORK    )
                                  ): ss:
COUNTY OF SCHENECTADY  )

    Bruce W. Lewis, Jr., being duly sworn, deposes and says that:

    1. I am the Chief Financial Officer for Fuccillo Automotive Group headquartered in Adams, New York. I have served in that capacity since May 2002. I understand that I have been identified as one of the Fuccillo Defendants' "Rule 30(b)(6)" witnesses in this case, based on my knowledge and understanding of the practices and policies implemented by the Defendants.

    2. I make this affidavit in opposition to Plaintiff's motion seeking class certification and in support of Defendants' cross-motion for summary judgment.

    3. As the Court is aware, this case centers around the etch sales transactions at Defendants' dealerships. The etch program was a theft-protection program. An individualized serial number would be engraved on each window of a vehicle as well as on the front and back windshields. The terms and conditions of the program, which was discontinued at all Fuccillo-

1

branded dealerships in 2007, are set forth on the pre-printed Auto Theft Security Discount ("ATSD") enrollment form.

4. I have reviewed a "Dealer's Agreement" dated May 14, 1998, between "Fuccillo Chevy, Olds, Pontiac, Buick, Geo, Inc." (defined therein as "Dealer"), acting for several other Fuccillo-branded dealerships and Richard Crosley/Universal (defined therein as "Company") concerning the sale and administration of the ATSD after-market program. It's Huge, Inc., a holding company, had absolutely nothing to do with this agreement, because, among other reasons, it does not sell cars and it was not formed until December 15, 2004. As we do with all of our contracts and agreements, we maintain this document as one of our routine business records made in the normal course of our business. A true and correct copy of the Dealer's Agreement is annexed hereto as Exhibit "A."

5. We at all times understood Universal to be the "Administrator" of the ATSD program. In other words, they were responsible for handling the claims-end of the process, and were expected to tell us if and when one of our customers qualified for the discount available under the ATSD.

6. Annexed hereto as Exhibit "B," is certain correspondence between Fuccillo and Universal (which includes correspondence between Universal and the State Insurance Department), which were obtained from Fuccillo's business records. This correspondence would have been created and maintained in the normal course of Fuccillo's business. To the best of my knowledge and understanding, Fuccillo conducted the ATSD discount program in accordance with these guidelines.

7. I am familiar with the transaction between Fuccillo Lincoln Mercury, Inc. d/b/a Fuccillo Hyundai, and Heidi R. Seekamp, concerning her 2007 Hyundai Elantra. That deal closed at the dealership on June 12, 2007. As part of every new vehicle transaction, we require our staff to compile and prepare a "deal jacket" for our internal use and reference, which usually consists of the customers' initial financing application, notes of conversations between our sales staff and the customer, and the financing documents and disclosures we are required to use at the point of sale (they also contain proprietary information concerning the vehicle's cost). These deal jackets are prepared and kept in the ordinary course of our business. Annexed hereto as Exhibit "C", is a true and correct copy of each document signed by Heidi Seekamp as part of the June 12, 2007 transaction, which were obtained directly from her deal jacket, which is kept and maintained in the ordinary course of our business.

8. As part of the discovery in this case, I participated in the production of reports and the gathering and sorting of Fuccillo's business records pertaining to ATSD transactions that I understand were produced in this case. In order to identify transactions that involved ATSD, we used Fuccillo's main computer operating system. This operating system is the Reynolds & Reynolds dealer management system and is used to record the operational activity for all the Fuccillo dealerships. All sales transactions are recorded into the system and can be accessed for inquiry and reporting purposes.

9. In order to identify and create reports for ATSD transactions more efficiently, I worked with Donna Marcello, an IT staff member for Fuccillo, to formulate a customized query program within the Reynolds & Reynolds system. Using Report Generator, a report

programming function, we developed customized reports that listed all ATSD transactions by year and provided each transaction's customer name and address.

10. Our initial use of the reports was to identify the ATSD transactions at Fuccillo Lincoln Mercury in Schenectady, NY. Using the reports as a basis, we pulled the actual deal jacket for each ATSD transaction to fulfill the discovery request. This effort required our attorney, Matthew J. Kelly, and myself, along with several Fuccillo staff, to spend several days manually pulling deal jackets, organizing and copying the contents. Ultimately, we provided copies of the deal records for over 600 ATSD transactions for 2006 and 2007 from that dealership, but the process was incredibly burdensome.

11. We used the customized report program to produce ATSD transactions reports for the other named Fuccillo dealerships for the years of 2006 and 2007. I personally reviewed these reports and highlighted every out-of-state customer to determine how many ATSD transactions were made to purchasers living outside of New York State. I then compared those numbers to the number of transactions involving New York State purchasers. I also compared the makeup of the ATSD transaction populations to the makeup of all retail transactions for the same years.

12. The results of this analysis are set forth in the spreadsheet attached hereto as Exhibit "D." I personally prepared this spreadsheet using the information obtained from the dealer operating system. I believe this information is complete and accurate.

13. At the top of the spreadsheet is a list of dealerships that sold etch in 2006 and/or 2007. The final dealership listed at the far right of the spreadsheet – Chrysler Jeep Dodge of Amsterdam – did not begin operating until after 2007. By 2007, we had discontinued offering

4

the etch program at any dealerships. As a result, Fuccillo Chrysler Jeep Dodge never sold etch, and information regarding transactions at that dealership is irrelevant to this matter.

14. The remaining results show that only a tiny percentage of etch sales involved out-of-state purchasers. At Fuccillo Lincoln Mercury in Schenectady, where plaintiff purchased her vehicle, there were 439 etch transactions in 2006 and 197 transactions in 2007. Of those, 7 transactions in 2006 and 4 transactions in 2007 involved out-of-state purchasers, for an in-state sales percentage of 98.4% and 98.0% respectively.

15. At Fuccillo Chevrolet Pontiac Buick in Adams (sued as Fuccillo Chevrolet Olds Pontiac Buick, Inc.), 13 etch transactions occurred in 2006 and 6 etch transactions occurred in 2007. One hundred percent of these transactions were with customers from New York State.

16. There was only one etch transaction made at Fuccillo Ford in Adams in 2006 and 2007, and it was made to a New York State resident. No etch transactions occurred at Fuccillo Dodge Chrysler Jeep in either 2006 or 2007.

17. At Fuccillo Imports in Watertown, there were 534 etch transactions in 2006 and 286 etch transactions in 2007. Of those, 16 in 2006 and 4 in 2007 were made to out-of-state residents, for an in-state etch transaction percentage of 97.0% and 98.6% respectively.

18. Similar numbers were found at Auto World in Watertown. Of the 161 etch transactions made in 2006, only 5 were made to out-of-state residents. 96.9% of the etch transactions that year were to New York State residents. In 2007, 4 of 98 etch transactions involved out-of-state residents, for an in-state etch transaction percentage of 95.9%.

19. Only 7 total etch transactions occurred in 2006 and 2007 at Fuccillo Buick Pontiac GMC in Latham, and none of those involved out-of-state customers.

20. At Fuccillo Chevrolet in Nelliston, a total of 46 etch transactions were made in 2006 and 2007, and, again, none of those involved out-of-state customers.

21. At Fuccillo Chrysler in Nelliston, 343 etch transactions occurred in 2006 and 181 occurred in 2007. None involved an out-of-state customer.

22. At Fuccillo Ford in Nelliston, 82 etch transactions occurred in 2006 and 102 occurred in 2007. One out-of-state transaction occurred each year, for an in-state sales percentage of 98.8% and 99.0% respectively.

23. The numbers were similar at Fuccillo Ford of East Greenbush, where 3 out of 108 transactions in 2006 and 1 out of 72 transactions in 2007 were with out-of-state customers. The in-state sales percentages were 97.2% in 2006 and 98.6% in 2007.

24. At Fuccillo Chevrolet of East Greenbush (sued as Fuccillo Enterprises of East Greenbush, Inc.), 1 of 69 total transactions in 2006 was with an out-of-state customer, and in 2007, 7 of 57 transactions were with out-of-state customers. The in-state sales percentages were 98.6% and 87.7% respectively.

25. At Fuccillo Hyundai in Syracuse, 175 etch transactions occurred in 2006 and 2007. None of these transactions involved out-of-state customers. The same results were found at Fuccillo Ford of Seneca Falls, where 41 etch transactions occurred in 2006 and 2007, and all of those were with New York State customers. Likewise, Fuccillo Hyundai of Greece did 10 etch transactions in 2006 and 2007, and none of those were made to out-of-state customers.

26. At Fuccillo Chevrolet, located in Grand Island (sued as Fuccillo Chevrolet, Inc.), 4 out of 449 etch transactions in 2006 and 2 out of 98 etch transactions in 2007 involved out-of-state customers, making an in-state percentage of 99.1% and 98.0% respectively.

27. At Fuccillo Toyota of Grand Island (sued as Fuccillo Enterprises, Inc.), only 1 out of 230 transactions in 2006 involved an out-of-state customer, for an in-state percentage of 99.6%. No out-of-state transactions occurred in the 146 etch transaction for 2007.

28. We were unable to generate reports for Fuccillo Pontiac Buick Jeep of Amsterdam because we discontinued those operations in September 2008. As a result, information from PBJ Amsterdam has been removed from our operating system and the data is not easily available. However, I can attest that there is no reason to believe that the number and ratio of in-state and out-of-state etch transactions at this location was materially different from the number of transactions at other locations.

29. Aggregating the numbers from above shows that more than 98% of the etch transactions at the defendant dealerships involved purchasers from New York State.

30. Also included on the attached spreadsheet are the total retail transactions at each dealership, as well as the number of transactions involving in-state and out-of-state purchasers. The percentage of in-state and out-of-state etch transactions is not appreciably different from the percentage of in-state and out-of-state transactions as a whole.

31. All of the Fuccillo defendants in this case are New York corporations, with their principal place of business in New York.

_____
BRUCE W. LEWIS, JR.

Sworn to before me this
29th day of February, 2011.

_____
Notary Public-State of New York

BERNICE R. CLARK
NOTARY PUBLIC, State of New York
No. 01-CL5028983
Qualified In Jefferson County
Commission Expires June 13, 20 14

7