**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

HEIDI SEEKAMP, *On Behalf of Herself and*
 *All Others Similarly Situated,*

       Plaintiff,

      vs.

IT'S HUGE, INC.,
FUCCILLO LINCOLN MERCURY,  INC. d/b/a
  FUCCILLO HYUNDAI,
FUCCILLO CHRYSLER JEEP DODGE OF
   AMSTERDAM, INC.,
FUCCILLO FORD, INC.,
FUCCILLO DODGE CHRYSLER JEEP, INC.,
FUCCILLO IMPORTS, INC.,
FUCCILLO AUTO WORLD, INC.,
FUCCILLO BUICK PONTIAC GMC, INC.,
FUCCILLO CHEVROLET OF NELLISTON, INC.,
FUCCILLO HYUNDAI OF SYRACUSE, INC.,
FUCCILLO HYUNDAI OF GREECE, INC.,
FUCCILLO FORD OF SENECA FALLS, INC.,
FUCCILLO CHEVROLET OLDS PONTIAC BUICK, INC.,
FUCCILLO CHEVROLET, INC.,
FUCCILLO CHRYSLER OF NELLISTON, INC.,
FUCCILLO ENTERPRISES OF EAST GREENBUSH, INC.,
FUCCILLO ENTERPRISES, INC.,
FUCCILLO FORD OF EAST GREENBUSH, INC.,
FUCCILLO FORD OF NELLISTON, INC.,
FUCCILLO PONTIAC BUICK, INC.,
and
UNIVERSAL AUTOMOTIVE SERVICES, INC.,

       Defendants.[1]

      Defendants.

Civil Action No.:
09-cv-00018-LEK-DRH

**PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF CLASS CERTIFICATION AND IN**
**OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT**[2]

---

[1] The term "Fuccillo Defendants," as used herein, refers to each of the defendants, jointly and severally, excluding defendant Universal Automotive Services, Inc.

[2] The Fuccillo Defendants improperly "cross-moved" herein, seeking relief different from the relief sought Plaintiff's moving brief, in violation of LR 7.1. Horton v. Williams, 2010 WL 3338920 fn. 2 (N.D.N.Y. 2010) (Suddaby, J.)

# TABLE OF CONTENTS

**Preliminary Statement**……………………………………………………..   1

**Legal Analysis and Argument** ………………………………………….   2

**I. CLASS CERITIFICATION UNDER *FALCON*** …………………………..   2

**II. SEEKAMP'S CLAIMS WITHSTAND "RIGOROUS ANALYSIS"**………   3

    **A. The Fuccillo Defendants Sold Insurance
Without Being Licensed**………………………………………………….   3

    **B. "Typicality" and "Commonality" Withstand "Rigorous Analysis"**…   4

    **C.  Certification Under Fed.R.Civ.P. Rule 23(b)(2)
Withstands "Rigorous Analysis"**…………………………………………   7

    **D.  Certification Under Fed.R.Civ.P. Rule 23(b)(3)
Withstands "Rigorous Analysis"**…………………………………………   9

        **i.  Count I (GBL §349)** …………………………………………..   10

        **ii.  Count II (Common Law Fraud)** ………………………………..   12

        **iii. Count III (Breach of Fiduciary Duty)** …………………………..   13

        **iv.  Count IV (Breach of Contract)**…………………………………..   14

        **v.  Count V (Unjust Enrichment)**. …………………………………   14

**III. THE FUCCILLO DEFENDANTS ARE NOT ENTITLED
TO SUMMARY JUDGMENT ON ANY OF PLAINTIFF'S CLAIMS** ……….   15

    **A. The Summary Judgment Standard** …………………………………….   15

    **B. Counts I and II (GBL §349 and Common Law Fraud)** …………………..   16

    **C.  Counts IV and V (Breach of Contract and Unjust Enrichment)** ………   19

**Conclusion** ………………………………………………………………   20

## Preliminary Statement

Nothing in the papers submitted by the Fuccillo Defendants in opposition to class certification or in support of summary judgment alters the suitability of this case for class certification. Instead, the Fuccillo Defendants confirm that each factual predicate for the class certification is easily resolved in Plaintiff's favor and that Plaintiff, individually and as class representative, alleges meritorious claims under several legal theories.  The salient points extracted from Defendants' papers include the following key concessions:

- Class Members purchased from the Fuccillo Defendants identical, form Etch Auto Theft Security Discount Certificates ("ATSD") [DSF[3]-4; PRS[4]-4, 4.1].

- The Fuccillo Defendants sold ATSD in conjunction with automobile sales. [DSF2; DSF-16,17].

- The ATSD 'certificates' sold to Plaintiff and other Class Members were 'administered' by and through Defendant Universal Automotive Services, Inc. ("Universal"). [DSF1; DSF-4; PRS-4.1].

- A key element of their ATSD program was indemnification of Fuccillo by Universal for any monetary benefits conferred upon Class Members [PRS-4.1, 12.2].

- The Fuccillo Defendants are not now and were never licensed to conduct an insurance business in the State of New York.  [PRS-12.3].

- The Fuccillo Defendants each participated in the ATSD program pursuant to a contract executed in their behalf by William B. Fuccillo, Jr. [DSF-2; PRS-2].

- Each Fuccillo Dealership set a price at which it consistently sold ATSDs to

---

[3] "DSF_" refers to the numbered statements contained in Defendants' Rule 7.1(a)(3) Statement of Undisputed Material Facts.
[4] PRS_" refers to the numbered statements contained in Plaintiff's Responsive Statement Pursuant Rule 7.1(a)(3).

consumers.  In most cases, the price was $295.00. [DSF-20a]

- An ATSD purchaser was provided with a "3-year guarantee" which promised the consumer, in the event that the vehicle was declared a total loss by the primary insurer as a result of theft, to a discount amounting to the lesser of 10% or $2,000.00 off of the purchase price of a replacement vehicle purchased from the same dealership. [PRS-5, 6].

- Since 2003, more than three thousand ATSD 'certificates' labeled as a "guarantees" were sold by Fuccillo Defendants. [DSF-28].

### Legal Analysis and Argument

### I
### CLASS CERITIFICATION
### UNDER *FALCON*

The "rigorous analysis" standard for assessment of class-certification worthiness was set forth by the Supreme Court in General Telephone Co. of Southwest v. Falcon 457 U.S. 147, 102 S.Ct. 2364 (1982).  The Second Circuit Court of Appeals clarified its position concerning application of the "rigorous analysis" standard in In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24 (2d Cir. 2006) (*clarified on denial of reh'g*, 483 F.3d 70, (2d Cir. 2007)).  Accordingly, the District Court must apply the following standards when assessing whether each of the Rule 23 requirements has been met:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a

2

> merits issue that is identical with a Rule 23 requirement; (4) in making such
> determinations, a district judge should not assess any aspect of the merits
> unrelated to a Rule 23 requirement; and (5) a district judge has ample
> discretion to circumscribe both the extent of discovery concerning Rule 23
> requirements and the extent of a hearing to determine whether such
> requirements are met in order to assure that a class certification motion does
> not become a pretext for a partial trial of the merits.

_Id._ at 471 F.3d 41.

"Rigorous analysis" is especially helpful in this case since the Fuccillo Defendants, albeit through procedurally improper means, opted to combine their opposition to class certification with a request for summary judgment.

## II
## SEEKAMP'S CLAIMS
## WITHSTAND "RIGOROUS ANALYSIS"

### A.    The Fuccillo Defendants Sold Insurance Without Being Licensed

The Fuccillo Defendants have abandoned all efforts at contesting that the ATSD policies marketed and sold by the Fuccillo Defendants were "insurance" as defined by the New York legislature and Insurance Department.  Under N.Y. Ins. Law §1101(a)(1), a contract of insurance is "any agreement or other transaction whereby one party, the 'insurer', is obligated to confer benefit of pecuniary value upon another party, the 'insured' or 'beneficiary', dependent upon the happening of a fortuitous event in which the insured or beneficiary has, or is expected to have at the time of such happening, a material interest which will be adversely affected by the happening of such event."   A fortuitous event is defined as "any occurrence or failure to occur which is, or is assumed by the parties to be, to a substantial extent beyond the control of either party."   N.Y. Ins. Law §1101(a)(2).  The Court assesses whether an event is "fortuitous" as a matter of law. Petro, Inc. v. Serio, 9 Misc. 3d 805, 816, 804 N.Y.S.2d 598, 607-08 (N.Y. Sup. Ct. 2005).

3

Since the Fuccillo Defendants' liability for loss under the ATSD program is <u>always</u> triggered by a fortuitous event, *i.e.* vehicle theft beyond the substantial control of either party, the ATSD contracts are "insurance" and are therefore subject to regulation by the NY State Insurance Department.  <u>Id.</u>  This Court's "rigorous analysis" must be conducted in consideration of the fact that the ATSD contracts sold by the Fuccillo Defendants were contracts of insurance sold by entities which were not licensed to conduct an insurance business in the State of New York.

**B.**     <u>**"Typicality" and "Commonality" Withstand "Rigorous Analysis".**</u>

In this Circuit, typicality and commonality are frequently addressed together, since their requirements "tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)."  <u>Marisol A. v. Giuliani</u>, 126 F.3d 372, 376 (2d Cir. 1997) *per curiam.* Citing <u>General Telephone Co. of Southwest v. Falcon</u>, *supra,* the Second Circuit further opined that "[t]he crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  <u>Marisol A. v. Giuliani</u>, *supra* at 126 F.3d 376.

 "Commonality" requires that the named plaintiff's complaints share commons questions of law or fact with the claims of the unnamed class members while "typicality" requires that the named plaintiff's claims be typical of those of the class.  <u>Id.</u>  Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." <u>Id.</u>, *citing* <u>In re Drexel Burnham Lambert Group, Inc.</u>, 960 F.2d 285, 291 (2d Cir. 1992). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be

represented, the typicality requirement is usually met irrespective of minor variations in the fact

patterns underlying individual claims." Jermyn v. Best Buy Stores, L.P., 256 F.R.D. 418

(S.D.N.Y. 2009), *citing* Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993).

      In March 2009, Judge McMahon of the Southern District of New York granted class

certification in circumstances remarkably similar to those presented here.  In Jermyn v. Best Buy

Stores, L.P., *supra*, a consumer sought class certification on behalf of himself and thousands of

similarly situated individuals based upon the application of the defendant retailer's "low price

guaranty" policy.  Both injunctive relief and damages were sought on theories of, among other

things, deceptive business practices and unjust enrichment. Finding that commonality was

present, Judge McMahon opined:

> Best Buy also mischaracterizes the nature of plaintiff's lawsuit. Plaintiff's
> lawsuit is not based on a theory of oral misrepresentation by Best Buy
> employees. Rather, he alleges that Best Buy failed to disclose that it had an
> "Anti-Price Matching Policy" to undercut the well-publicized "price match
> guarantee." Whether one employee used technique "X" to reject someone
> while another used technique "Y," the allegations is that Best Buy employees
> acted because defendant had a clandestine policy. Whether for "X" or "Y"
> reason, the member's request was rejected. That satisfies the commonality
> requirement. *See Dupler v. Costco Wholesale Corp.,* 249 F.R.D. 29, 37
> (E.D.N.Y.2008) (noting that commonality is often satisfied when the
> defendants are alleged to have directed standardized conduct toward the
> putative class members).

Id. at 256 F.R.D. 430.

      Here, too, the concepts of typicality and commonality are not defined by reliance or by

particular representations made to or withheld from individual class members.  It is unlikely that

the typical ATSD purchasing consumer placed reliance upon Fuccillo Defendants'

characterization of the nature of the ATSD product, *i.e.* whether the product was insurance or

warranty.  On the other hand, each and every purchaser of an ATSD from Fuccillo Defendants

believed that the product was both legal and beneficial.  Plaintiff asserts for herself and others

that the Fuccillo Defendants sold her a product which, by law, was a policy of insurance and which the seller did not have the legal right or authority to sell.  Therefore, Plaintiff claims, the ATSD policies are voidable as illegal contracts of insurance, the sale of which violates NY-GBL §349.  Finally, Plaintiff concludes that the Defendants were unjustly enriched by having sold the products.

Plaintiff's claims are clearly typical of the claims of the unnamed class members and require application of common questions of law and fact. These include:

(1) Is the ATSD a contract of insurance?

(2) If the ATSD is a contract of insurance, does it qualify for one of the exemptions from registration under the Insurance Law of the State of New York?

(3) Were Universal, It's Huge and Fuccillo required to qualify and register with the New York State Insurance Department prior to sale or distribution of any ATSD?

(4) Are the ATSDs voidable and subject to rescission?

(5) Did the ATSDs confer any benefit upon purchasing consumers?

(6) Did the defendants engage in deceptive practices within the meaning of GBL § 349?

(7) Did the sale of ATSDs give rise to a fiduciary relationship between the Defendants and each purchaser?

(8) Did the defendants breach their fiduciary duties by accepting payment for an unlicensed insurance product and by failing to disclose material information concerning the transaction

(9) Were ATSD contracts breached by Defendants?

(10) Did Plaintiff and the putative class members suffer ascertainable losses by having purchased ATSDs?

**C.**   **Certification Under Fed.R.Civ.P. Rule 23(b)(2) Withstands "Rigorous Analysis"**

Upon granting class certification under Rule 23(b)(2), Judge McMahon in <u>Jermyn v. Best Buy Stores, L.P.</u>, *supra,* provided an insightful analysis of the applicable standards. Rejecting the defendant's argument that certification under Rule 23(b)(2) was inappropriate because the monetary damages demanded were not "merely incidental" to injunctive relief, the Court admonished the defendant for ignoring and misconstruing his earlier decision in <u>DeMarco v. Nat'l Collector's Mint, Inc.</u>, 229 F.R.D. 73, 81, 2005 WL 1606408 (S.D.N.Y. 2005) and the Second Circuit's holding in <u>Robinson v. Metro-North Commuter Railroad Co.</u>, 267 F.3d 147, 162 (2d Cir. 2001). In <u>DeMarco v. Nat'l Collector's Mint, Inc.</u>, *supra,* at 229 F.R.D. 81, the Court opined:

> The fact that the class seeks money damages is not enough to take it out of the ambit of Rule 23(b)(2). In *Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147 (2d Cir.2001), the Second Circuit Court held that classes seeking injunctive relief and *incidental* monetary damages may proceed under Rule 23(b)(2). "Incidental" was defined by the court as having the ability to be "comput[ed] by means of objective standards and not dependent in any significant way on the [class members'] intangible, subjective differences." *Robinson,* 267 F.3d at 164 (citing *Robinson v. Metro-North Commuter R.R. Co.,* 197 F.R.D. 85, 88 (S.D.N.Y.2000)). (quoting *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415. (5th Cir.1998)).

> In this case, the damages sought are incidental to the injunctive and declaratory relief. The damages can be easily computed. The FTSD was marketed for $23.45. Everyone who bought the coin from Defendants paid that sum. The number of coins sold is readily ascertainable. Multiplying $23.45 by the number of coins sold yields the damages incidental to the alleged violation. The class meets the requirements of Rule 23(b)(2).

In <u>Jermyn v. v. Best Buy Stores, L.P.</u>, *supra,* Judge McMahon elaborated upon the principle:

> In *DeMarco,* I certified a class pursuant to Rule 23(b)(2)…... The class sought a declaration that the defendants had engaged in unfair trade practices and asked for an injunction against further sales …. The class also sought money damages equal to the amount of each member's purchase,,,, This Court held-based on *Robinson*-that the class met the requirements of Rule

23(b)(2) because the class sought injunctive relief and incidental money damages.

This Court did not, as Best Buy suggests, find that certification of an injunctive relief class pursuant to Rule 23(b)(2) was inappropriate when money damages are not "incidental" to the request for injunctive relief. The Second Circuit expressly rejected such a rule in *Robinson:* Thus, the question we must decide is whether this bright-line bar to (b)(2) class treatment of all claims for compensatory damages and other non-incidental damages (e.g., punitive damages) is appropriate. For the reasons we discuss below, *we believe that it is not and therefore decline to adopt the incidental damages approach* set out by the Fifth Circuit in *Allison[ v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir.1998) ] and followed by the district court below. Rather, we hold that when presented with a motion for (b)(2) class certification of a claim seeking both injunctive relief and non-incidental monetary damages, a district court must consider the evidence presented at a class certification hearing and the arguments of counsel, and then assess whether (b)(2) certification is appropriate in light of the relative importance of the remedies sought, given all of the facts and circumstances of the case. The district court may allow (b)(2) certification if it finds in its informed, sound judicial discretion that (1) *the positive weight or value to the plaintiffs of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed,* and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy. *Robinson,* 267 F.3d at 164 (citations and quotations omitted) (emphasis added). In *DeMarco,* I found that certification of a class that was seeking both injunctive relief and "incidental" damages plainly followed from the holding in *Robinson,* because the Second Circuit had decided that Rule (23)(b)(2) certification was appropriate in the more difficult case where money damages were not incidental to the request for an injunction.

Applying the rule of *Robinson,* this action should be certified under Rule 23(b)(2). If plaintiff's allegations are true, there is overwhelming positive value to the injunctive relief that the class seeks. Such an injunction would prevent Best Buy from continuing to perpetrate its alleged deceptive Anti-Price Matching Policy on all New York consumers in violation of New York law. The state of New York placed a high value on this type of injunctive relief; indeed, section 349 expressly provides for it: "Any person who has been injured by reason of any violation of this section may bring an action in his own name *to enjoin such unlawful act or practice* ...." N.Y. Gen. Bus. Law § 349(b) (emphasis added).

In addition, the availability of injunctive relief in this case gives a plaintiff the type of incentive needed to bring this action. Here, Jermyn complains that he lost $180.00 based on Best Buy's application of its secret Anti-Price Matching Policy. Such damages are insufficient to incent a plaintiff to bring suit; they are exceeded by the filing fee. However, a reasonable plaintiff

aggrieved by Best Buy's policy would want to prevent Best Buy from committing wrongful acts in the future. Accordingly, the class meets the requirements of Rule 23(b)(2).

Jermyn v. Best Buy Stores, L.P., *supra* at 256 F.R.D. 433-434.

Here, Plaintiff's prayer for relief is centered upon a declaratory judgment. Plaintiff seeks, for herself and the putative class, a declaration the each and every ATSD contract is an illegal contract of insurance and is voidable at the option of the purchaser. Damages are incidental to the equitable relief sought. Borrowing from the language of DeMarco v. Nat'l Collector's Mint, Inc., *supra*, the damages sought are incidental to the injunctive and declaratory relief. The damages can be easily computed. The ATSD was marketed for fixed amounts. Everyone who bought the ATSD from a specified Fuccillo Dealership paid the same amount. The number of ATSD's sold by each dealership is readily ascertainable. Multiplying the price by the number of ATSD's sold yields the damages incidental to the alleged violation. The class meets the requirements of Rule 23(b)(2).

**D.      Certification Under Fed.R.Civ.P. Rule 23(b)(3) Withstands "Rigorous Analysis"**

Here again, the Defendants fail to set forth any valid, cogent objection to class certification under Rule 23(b)(3). A review of each of the Causes of Action asserted in the Complaint requires the conclusion that, as to each, class certification under Rule 23(b)(3) is warranted.

The theme behind the Fuccillo Defendants' opposition to class certification is that "reliance" is a critical element of each legal theory upon which relief is demanded. Therefore, the movants postulate, class certification is inappropriate because of individualized questions of reliance and causation. The Fuccillo Defendants misstate both the facts and the law. In fact, each and every claim asserted by Plaintiff may be adjudicated on a class basis without

consideration reliance or causation on an individual basis.

### i. **Count I (GBL §349)**

Reliance is not required to prove a claim under GBL §349. In <u>Pelman v. McDonald's</u>

<u>Corpoation</u>, 396 F.3d 508, 511 (2d Cir. 2005), the Second Circuit described the elements of a

claim under GBL §349:

> Section 349 of the New York General Business Law… makes unlawful
> "[d]eceptive acts or practices in the conduct of any business, trade or
> commerce or in the furnishing of any service in this state." Unlike a private
> action brought under § 350, a private action brought under § 349 does not
> require proof of actual reliance. See Stutman v. Chem. Bank, 95 N.Y.2d 24,
> 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000).  Additionally, because § 349
> extends well beyond common-law fraud to cover a broad range of deceptive
> practices, *see Gaidon,* 94 N.Y.2d at 343, 704 N.Y.S.2d 177, 725 N.E.2d 598,
> and because a private action under § 349 does not require proof of the same
> essential elements (such as reliance) as common-law fraud, an action under §
> 349 is not subject to the pleading-with-particularity requirements of Rule
> 9(b), Fed.R.Civ.P., but need only meet the [less stringent] requirements of
> Rule 8(a)…

In <u>Jermyn v. Best Buy Stores, L.P.</u>, *supra*, Judge McMahon analyzed class certification

in the context of claim arising under GBL§349 based upon allegations of a deceptive corporate

policy or practice.  There, it was alleged that defendant Best Buy Stores implemented a policy

pursuant to which consumers were routinely denied coverage under the company's publicly

advertised "price match guaranty."  The Court rejected the defendant's assertion that class

treatment was inappropriate since representations made to individual consumers were not

uniform.  Instead, it was found that "Plaintiff's section 349 claim is about defendant's omission to

disclose its real policy to him… that same omission is the gravamen of every class member's

claim, and so may be proven on a class-wide level…" <u>*Id.*</u> at 256 F.R.D. 435.  Determining that

the elements of the cause of action were met, Judge McMahon opined:

> Courts have repeatedly held that that section 349 claims based upon
> omissions, non-disclosures and deceptive corporate policy are well suited to

class certification. *See, e.g., Dupler,* 249 F.R.D. at 44 (citing cases).

To state a claim under section 349, a plaintiff must allege "(1) the act or practice was consumer-oriented, (2) the act or practice was misleading in a material respect, and (3) the plaintiff was injured as a result." *Id.* at 43 (citation omitted). For a section 349 claim, the plaintiff "need not show" that he relied on the misrepresentation in order to have a valid claim, *id.* (citation omitted) and an "omission" is actionable as well. *Id.* at 43-44 ("courts have certified Section 349 where the claim is based on an omission, rather than an actual misrepresentation") (citations omitted).

Applying these standards, it is abundantly clear that common issues "predominate" over any individual issues with respect to the section 349 claim. The plaintiff alleges that Best Buy violated section 349 by failing to disclose its internal Anti-Price Matching Policy, which was enforced against all class members and denied them the benefit of the company's publicly disclosed price match guarantee. Plaintiff's section 349 claim is about defendant's omission to disclose its real policy to him, but that same omission is the gravamen of every class member's claim, and so may be proven on a class-wide level, based on evidence from Best Buy's records and testimony from past and present employees

<u>*Id.*</u>

Throughout their brief, the Fuccillo Defendants rely extensively and primarily upon a group of cases in which class treatment of claims by smokers against tobacco companies (the "Cigarette Cases") were assessed, principally as to the question of RICO satisfaction. For a variety of reasons, reliance upon the Cigarette Cases and similar authorities is misplaced. In each of those cases, the complaining plaintiffs asserted that false claims induced them to purchase certain products. For example, in <u>McLaughlin v. American Tobacco Co.</u>, 522 F.3d 215 (2d Cir. 2008), the plaintiffs claimed that they purchased "light" cigarettes in reliance upon the representation that "lights" were healthier than regular strength cigarettes. This, the plaintiffs argued, resulted in artificially inflated prices for "light" cigarettes. The Court reasoned, however, that individual plaintiffs may have smoked light cigarettes for any one of a number of reasons, so that this sort of generalized proof is insufficient.

Here, contrary to the Fuccillo Defendants' assertion, Seekamp does not claim that any

representations set forth either in the ATSD certificates or verbally, by car salesmen, induced them to purchase the policies. Rather, Plaintiff asserts that the contract was illegal to begin with; that by offering it to the public the Fuccillo Defendants necessarily represented that they had the legal right to sell it.  This case therefore bears no resemblance to the Cigarette Cases.

### ii.   Count II (Common Law Fraud)

Where, as here, allegations of fraud arise from dissemination of form contracts, courts recognize that no showing of individualized reliance is required.   Generally, "the elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage." Van Kleeck v. Hammond, 25 A.D.3d 941, 811 N.Y.S.2d 452, 454 (1st Dep't, 2006) (citation omitted).   It is well established that an insured is entitled to seek rescission of an insurance policy based upon fraud.  Dornberger v. Metro. Life Ins. Co., 961 F. Supp. 506, 540 (S.D.N.Y. 1997)(*citing,* Robinson v. Mutual Reserve Life Ins. Co., 182 F. 850, at 858 (2d Cir. 1910) and Moore v. Mutual Reserve Fund Life Ass'n 121 A.D. 335, 106 N.Y.S. 255 (3d Dep't 1907) .

Judge Janet C. Hall of the Connecticut District Court recently presented a cogent discussion of whether reliance is a required element for fraud claims arising from identical form contracts.  In Spencer v. Hartford Financial Services Group, Inc., 256 F.R.D. 284 (D.Conn. 2009), Judge Hall recognized that the Second Circuit discussed the possibility of proving reliance using class-wide proof in McLaughlin and Moore v. PaineWebber, Inc.,306 F.3d 1247 (2d Cir. 2002).  *Id.*.  Under Second Circuit caselaw, where misrepresentations are "materially uniform," "an individual plaintiff's receipt of and reliance upon the misrepresentation may then be simpler matters to determine." Moore v. PaineWebber, Inc., at 306 F.3d 1255.  Judge Hall e

noted that "Moore therefore suggests that a finding of uniformity facilitates a finding of reliance."

Where, as here, each class member was provided with a standard, form contract, reliance upon the legality of the transaction must be self-proving. Here, the fraud is premised upon the sale of identical ATSD policies to thousands of consumers. Each of those consumers justifiably relied upon the representation that the ATSD policy was (1) legal and (2) beneficial. Each of the Class Members should be entitled to rescind their ATSD contracts on account of the fraud upon which the sale was based. Plaintiff expects to succeed in establishing that the ATSD was neither legal nor beneficial. Accordingly, this fraud cause of action is well suited to class treatment.

### iii.   Count III (Breach of Fiduciary Duty)

Defendants point to no authority for the proposition that an individualized showing of reliance is an element of a breach of fiduciary duty claim. Rather, the only elements of a claim for breach of fiduciary duty under New York law are (i) existence of a fiduciary relationship, (ii) breach by the fiduciary of a duty owed to plaintiff, (iii) defendant's knowing participation in the breach and (iv) damages. SCS Commc'ns., Inc. v. Herrick Co., 360 F.3d 329, 342 (2d Cir.2004).

A fiduciary relationship may arise where the parties to a contract specifically agree to such a relationship, or if "one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party." Calvin Klein Trademark Trust v. Wachner, 123 F.Supp.2d 731, 733-34 (S.D.N.Y. 2000). The plaintiff must demonstrate that the defendant was "under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 599 (2d Cir.1991) (quoting Mandelblatt v. Devon Stores, Inc., 132 A.D.2d 162, 521 N.Y.S.2d 672, 676 (1st Dep't 1987).

13

### iv.  __Count IV (Breach of Contract)__

A breach of contract claim does not require proof of reliance.  Under New York law, the elements of a cause of action for breach of contract are: "(1) a valid contract; (2) plaintiff's performance; (3) defendant's failure to perform; and (4) damages resulting from the breach." Furia v. Furia, 116 A.D.2d 694,  498 N.Y.S.2d 12, 13 (2d Dep't 1986)).  The alleged breach of a standard-form contract is particularly appropriate for class action treatment.  Dupler v. Costco Wholesale Corp., *supra* at 249 F.R.D. 37, *citing* Steinberg v. Nationwide Mut. Ins. Co., 224 F.R.D. 67, 74 (E.D.N.Y.2004) ("[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class, and breach of contract cases are routinely certified as such.") (citations omitted).

### v.  __Count V (Unjust Enrichment)__.

In New York, a successful claim sounding in unjust enrichment requires "proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir.2004).  Unjust enrichment is based on "'an obligation which the law creates, in the absence of any agreement', when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex aequo et bono* belongs to another." In re Chateaugay Corp., 10 F.3d 944, 957-58 (2d Cir.1993) (quoting Miller v. Schloss, 218 N.Y. 400, 407, 113 N.E. 337, 339 (1916)).

Here, as in Dupler and Jermyn, Plaintiff alleges that Defendants were unjustly enriched by accepting money from Class Members in payment for worthless ATSD policies.  Here, as in Dupler,  Defendant makes unsubstantiated claims that class certification should be precluded

because an individualized determination will necessarily be required to determine whether each plaintiff 'relied' on misrepresentations. We submit that he conclusion here must be identical to the conclusions of Judges McMahon and Bianco, that "common questions of law and fact will continue to predominate because it does not appear that any such [individual] issues would be unique to each plaintiff <u>Jermyn v. Best Buy Stores, L.P.</u>, *supra* at 256 F.R.D. 436, *citing* <u>Dupler v. Costco Wholesale Corp.</u>, 249 F.R.D. 29, 47 (E.D.N.Y. 2008).

**III**
**THE FUCCILLO DEFENDANTS ARE NOT ENTITLED**
**TO SUMMARY JUDGMENT ON ANY OF PLAINTIFF'S CLAIMS**

**A.  <u>The Summary Judgment Standard</u>**

The legal standard applied in assessing entitlement to Summary Judgment under Fed.R.Civ.P. Rule 56(c) is not subject to meaningful or serious dispute.  Summary Judgment is appropriate whenever "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).  Material facts are those necessary to the proof or defense of a claim, and are determined by reference to the substantive law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

> … the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.  Material facts are those necessary to the proof or defense of a claim, and are determined by reference to the substantive law.

<u>Id</u>, at 477 U.S. 248.

A party moving for summary judgment must:

15

> …. inform[] the district court of the basis for its motion, and identify[] those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986).  Only if the moving party meets its initial burden does the burden shift to the opposing party who, to defeat the motion, must establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968).   The Court may not grant summary judgment if there is evidence sufficient to allow a reasonable jury to return a verdict for the Plaintiff, or if the factual dispute is material, i.e. one "that might affect the outcome of the suit under the governing law . . ." Anderson v. Liberty Lobby, Inc., *supra* at 477 U.S. 248.

Here, the Fuccillo Defendants have not met their initial burden of establishing entitlement to relief with respect to any of Plaintiff's claims.

## B.  Counts I and II (GBL §349 and Common Law Fraud)

The Fuccillo Defendants assert that they are entitled to summary dismissal of Counts I and II of the Complaint since, they allege, Plaintiff cannot establish damage or injury.  However, the Fuccillo Defendants provided no evidence to counter the report of Plaintiff's expert, in which Mr. Stivers opines that each class member sustained actual damage and injury [PRS-20a-1, 22]. The movants' election to ignore this proof is fatal to their motion.

In addition, the Fuccillo Defendants again place inappropriate reliance upon the rationale of "cigarette cases," missing the mark.  In an effort to demonstrate that Seekamp and the Class Members were neither "injured" nor "damaged" the Fuccillo Defendants' analogize this case to Small v. Lorillard Tobacco Co., Inc., 94 N.Y.2d 43, 720 N.E.2d 892, 698 N.Y.S.2d 615 (1999).

16

Their effort is both flawed and misleading.  Contrary to the summary of  Small offered by the

Fuccillo Defendants, the New York Court of Appeals ruled as follows:

> According to plaintiffs, addiction is not the injury; rather, plaintiffs assert that defendants' deception prevented them from making free and informed choices as consumers. Plaintiffs add that had they known that nicotine was addictive, they never would have purchased cigarettes. They posit that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349. We disagree.
>
> Plaintiffs' definition of injury is legally flawed. Their theory contains no manifestation of either pecuniary or "actual" harm; plaintiffs do not allege that the cost of cigarettes was affected by the alleged misrepresentation, nor do they seek recovery for injury to their health as a result of their ensuing addiction (General Business Law § 349 [h]; *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, supra,* at 26). Indeed, they chose expressly to confine the relief sought solely to monetary recoupment of the purchase price of the cigarettes. Plaintiffs' cause of action under this statute, as redefined by the trial court and as embraced by them, thus sets forth deception as both act and injury.
>
> In rejecting plaintiffs' flawed "deception as injury" theory, the Appellate Division correctly pinpointed that addiction is inescapably the cornerstone of plaintiffs' legal claims. Because plaintiffs abandoned the addiction component of the legal theory of their cases, they therefore fail to demonstrate that they were "actually harmed" or suffered pecuniary injury by reason of any alleged deception within the meaning of the statute. They cannot have it both ways. Without addiction as part of the injury claim, there is no connection between the misrepresentation and any harm from, or failure of, the product

*Id.* at 94 N.Y.2d 43.

Here, the "cornerstone of plaintiffs' legal claims" is the illegal sale of insurance.  In

Dornberger v. Metro. Life Ins. Co., 961 F. Supp. 506 (S.D.N.Y.  1997), the Court reviewed the

availability of damages based upon rescission in the context of insurance policies sold in

violation of licensing requirements under the Insurance Law.  In Dornberger Judge Sand, who

later granted certification to the putative class (Dornberger v. Metropolitan Life Ins. Co., 182

F.R.D. 72 (S.D.N.Y. 1998)), found that a claim for rescission lies in the case of sale of insurance

by unlicensed entities:

Courts have long recognized that agreements made in violation of law are unenforceable. *See Benjamin v. Koeppel,* 85 N.Y.2d 549, 626 N.Y.S.2d 982, 983, 650 N.E.2d 829, 830 (1995); *Lloyd Capital Corp. v. Pat Henchar, Inc.,* 80 N.Y.2d 124, 589 N.Y.S.2d 396, 397, 603 N.E.2d 246, 247 (1992); 22 N.Y. Jur.2d *Contracts* § 195 (1996)… However, where one of the parties to an illegal contract is innocent of wrongdoing, courts have allowed such party to seek relief in the form of rescission based on the illegal conduct of the other party to the agreement. *See. e.g., Robinson v. Mutual Reserve Life Ins. Co.,* 182 F. 850, 857 (S.D.N.Y.1910) (permitting insureds to rescind policies on ground that insurer violated New Jersey law), *aff'd,* 189 F. 347 (2d Cir.1911); *Atkin v. Hill, Darlington & Grimm,* 15 A.D.2d 362, 224 N.Y.S.2d 553, 554-58 (1962) (permitting stock purchaser to rescind purchase on ground that seller violated New York law), *aff'd,* 12 N.Y.2d 940, 238 N.Y.S.2d 516, 188 N.E.2d 790 (1963); *Barna v. Clifford Country Estates, Inc.,* 143 Misc. 813, 258 N.Y.S. 671, 674-75 (City Ct.1932) (permitting insurance purchaser to rescind policy on ground that seller violated New York law); *see also* 22 N.Y. Jur.2d *Contracts* § 209 …The reasoning of these authorities was set forth as follows in *Barna*:

> The parties in this case are not in pari delicto. The [defendant] is the party responsible for the contract. It must be conclusively presumed to know that it was doing an illegal act, and it induced the [plaintiff] to enter into the contract of insurance in ignorance of its illegality. The [plaintiff] had a right to presume that the [defendant] had qualified itself to do an insurance business in this state. The guilt of the plaintiff is less culpable than that of the defendant, and, where such fact appears, the courts will aid the injured party and restore him as far as possible to his original position.

*Barna,* 258 N.Y.S. at 675 (citation omitted).

Dornberger v. Metro. Life Ins. Co., *supra* at 961 F. Supp. 532.

Moreover, where, as here, the "insurer" has not been required to pay out on any of the policies, the class members cannot be found to have received the full benefit of the policies.  *Id.* at 961 F.Supp 537.  The Dornberger decision expressly rejects the defendant's argument that the "Plaintiff received the full benefit of the policies because MetLife was at all times bound to pay out in the event that Plaintiff made a claim."  Instead, the Court ruled that "this does not change the fact that MetLife was not in fact called upon to carry out its contractual duty to pay out-thus, the policies were still executory in a major sense."  *Id.,*  and cases cited therein.  Therefore, the Court opined, "[i]t is by no means unfeasible or impossible to unwind the policy transaction at

18

this point in time, nor is it against "good conscience" to permit Plaintiff to maintain an action for rescission." *Id.*

### C.  **Counts IV and V (Breach of Contract and Unjust Enrichment)**

The Fuccillo Defendants mistakenly conclude that their contractual obligations to Plaintiff and the Class were satisfied simply by inscribing the ETCH numbers on car windows and by standing ready to provide any earned discount.  Similarly, they assert that, since no benefits were withheld, they could not have been unjustly enriched.  Again, the essence of Plaintiff's claims is mischaracterized.  As set forth above, these claims are legally unsupportable and insufficient.  Moreover, the Complaint and the evidence presented raise critical questions concerning the Fuccillo Defendants' performance under the ATSD contracts.

For example, the Fuccillo Defendants cannot explain the absence of theft claims when other, similar programs resulted in at least some claims.  Nor is there any explanation for the apparent absence of ATSD monitoring or administration, two promises contained in the ATSD enrollment certificates.  Similarly, there is no evidence that that any data base of Etch ATSD numbers was maintained by any Defendant.

Plaintiff alleges that Defendants were unjustly enriched by accepting money from Class Members in payment for worthless ATSD policies.  Here, as in Dupler,  Defendant makes unsubstantiated claims that class certification should be precluded because an individualized determination will necessarily be required to determine whether each plaintiff 'relied' on misrepresentations. We submit that he conclusion here must be identical to the conclusions of Judges McMahon and Bianco, that "common questions of law and fact will continue to predominate because it does not appear that any such [individual] issues would be unique to each plaintiff Jermyn v. Best Buy Stores, L.P., *supra* at 256 F.R.D. 436, *citing* Dupler v. Costco

Wholesale Corp., 249 F.R.D. 29, 47 (E.D.N.Y. 2008).

## <u>Conclusion</u>

For all of the above-stated reasons, this Court should find that Plaintiff has met the burden of establishing each of the class action prerequisites identified in Fed. R. Civ. P. 23(a) have been established and certification of a class under Fed. R. Civ. P. 23 (b)(2) and (b)(3) is warranted.  Accordingly, Plaintiff requests the relief requested herein be granted in all respects, that the Plaintiff be appointed as class representative and her counsel as class counsel.


Dated: April 4, 2011

Respectfully submitted,

By: _/s/ Sergei Lemberg_____
Sergei Lemberg
Lemberg & Associates, L.L.C.
1100 Summer Street, 3rd Floor
Stamford, CT 06905
Telephone: (203) 653-2250
Facsimile: (877) 795-3666

<u>Co-Counsel</u>
Martin Mushkin, Esq.
Law Offices of Martin Mushkin
1100 Summer Street, 3rd Floor
Stamford, CT 06905

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY that on April 4, 2011,  copy of the foregoing was mailed, first class mail to the following counsel and then filed with the Court via the CM/ECF system which sent notice of such filing to the following:

*Attorneys for Defendants*
William A. Hurst, Esq.
Greenberg, Traurig Law Firm
54 State Street, 6th Floor
Albany, NY 12207

Matthew J. Kelly
Roemer, Wallens Law Firm
13 Columbia Circle
Albany, NY 12203

   /s/ Sergei Lemberg   
Sergei Lemberg